**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------x
In re:                                                           :
                                                                 :
MATTER OF CERTAIN CLAIMS AND          :          Misc. Pro. No. 22-00401 (MG)
NOTICING AGENTS' RECEIPT OF FEES IN   :
CONNECTION WITH UNAUTHORIZED          :
ARRANGEMENTS WITH XCLAIM, INC.        :
                                                                 :
-----------------------------------------------------------------x

**NOTICE AND RESPONSE OF OMNI AGENT SOLUTIONS INC. TO ORDER IN THE**
**MATTER OF CERTAIN CLAIMS AND NOTICING AGENTS' RECEIPT OF FEES IN**
**CONNECTION WITH UNAUTHORIZED ARRANGEMENTS WITH XCLAIM, INC.**

**TO THE HONORABLE MARTIN GLENN,**
**UNITED STATES BANKRUPTCY JUDGE:**

Omni Agent Solutions, Inc. ("**Omni**"), hereby submits this Notice and Response to this

Court's Order in the Matter of Certain Claims and Noticing Agents' Receipt of Fees in Connection

with Unauthorized Arrangements with Xclaim, Inc. ("**Xclaim**"), and respectfully states as follows:

**A description of any current or former business arrangement with Xclaim, the status of any**
**such arrangement, a copy of any and all agreements memorializing any such arrangement,**
**and list of all dates in which the Approved Claims Agent transmitted claims data to Xclaim**
**other than in a format as provided to the public on the Approved Claims Agent's website.**

1. On October 16, 2019, Omni executed a contract with Xclaim whereby Omni agreed to

provide Xclaim with publicly available claims register data in a downloadable format

("**Data**") from cases in which Omni was retained as a claims and noticing agent  (the

"**Agreement**"). A copy of the Agreement is annexed hereto, and made a part hereof, as

**Exhibit A**. Pursuant to the Agreement, Xclaim did not receive from Omni any claims-

related information that was not also available to the general public on Omni's case-

specific websites.

2. Pursuant to the Agreement, the data was used by Xclaim to populate its claims trading platform (the "**Xclaim Platform**"). The Agreement further provided that Omni was entitled to a processing fee from Xclaim if a claim from any of Omni's cases was traded on the Xclaim Platform. This processing fee was calculated at 10% of Xclaim's commission arising from the trading of any such claim.

3. Omni ceased providing services under the Agreement as of June 8, 2022 and terminated its contract with Xclaim on June 9, 2022. Annexed hereto, and made a part hereof, as **Exhibit B** are copies of Omni's June 9, 2022 letter to Xclaim terminating the Agreement, as well as a subsequent email from Xclaim acknowledging the termination of the Agreement.

4. A schedule containing all dates for which Omni transmitted claims data to Xclaim other than in a format as provided to the public on Omni's case-specific website is attached hereto as **Exhibit C.**

**An accounting of any and all fees, costs, and reimbursements received, or to be received, from Xclaim through the date of the filing of the notice including the date, or anticipated date (if payment is expected in the future), of each payment.**

1. Pursuant to the Agreement, Omni was entitled to processing fees in the aggregate amount of $1,062.15 (the "**Fees**"). An accounting of the Fees is annexed hereto, and made a part hereof, as **Exhibit D**.

2. Omni has never received any payment from Xclaim for the Fees or for anything else. As set forth above, the Agreement has been terminated. Omni will not be receiving any sums from Xclaim.

**A list of the bankruptcy cases, with a notation indicating the district in which the case was filed, in which the Approved Claims Agent served as a court-approved claims agent and Xclaim facilitated at least one claims trade from which the Approved Claims Agent received, or will receive, a Fee or any other payment or reimbursement from Xclaim;**

2

1.      As set forth above, Omni has neither received nor will receive any amounts from Xclaim.   **Exhibit D** contains a list of all bankruptcy cases in which Omni served as a court-approved claims agent and Xclaim facilitated at least one trade.

**A description of any other oral or written agreements or arrangements with third parties within five years of the date of this Order in which the Approved Claims Agent, acting in its capacity as a claims agent under 28 U.S.C. § 156(c) as described in the Madison Square Opinion, has performed a task that the Clerk could not perform or has received a fee or reimbursement other than from the bankruptcy estate;**

1.      Omni does not have, nor has it had, any such oral or written agreements or arrangements.

**An accounting of any and all fees, costs, and reimbursements received, or to be received, from such third parties through the date of the filing of the notice including the date, or anticipated date (if payment is expected in the future), of each payment.**

1.      Omni has neither received, nor is it entitled to receive, fees, costs, and/or reimbursements from any such third parties.

**A list of the bankruptcy cases, with a notation indicating the district in which the case was filed, in which the Approved Claims Agent served as a court-approved claims agent and such third parties facilitated at least one claims trade from which the Approved Claims Agent received, or will receive, a fee or any other payment or reimbursement from such third parties.**

2.      Omni has no current or past bankruptcy cases which meet the requested criteria.

Dated:      Woodland Hills, California
            September 15, 2022

                              **OMNI AGENT SOLUTIONS**


                              By:  _/s/ Brian Osborne_____

                                   _President and Chief Executive Officer_

3

# Exhibit A

DocuSign Envelope ID: 02B5243-B924-4988-961F-5BA5478099A5

# EXCLUSIVE ACCESS AGREEMENT

This Exclusive Access Agreement (this "Agreement"), dated as of ___10/16/2019___ (the "Effective Date"), is made by and between Omni Agent Solutions, Inc., a Delaware corporation ("OMNI"), and XClaim Inc., a Delaware corporation ("XCLAIM"). OMNI and XCLAIM may be referred to individually herein as a "Party" or together as the "Parties."

WHEREAS, XCLAIM is in the process of developing an easily accessible electronic platform (the "Platform") to facilitate the purchase and sale of claims that are filed or scheduled (each, a "Claim") in any bankruptcy proceeding (each, a "Bankruptcy Proceeding") filed in the United States pursuant to title 11 of the United States Code (the "Bankruptcy Code"); and

WHEREAS, OMNI is often authorized by the United States Bankruptcy Courts with jurisdiction over such Bankruptcy Proceedings to serve as claims agent (in any such Bankruptcy Proceeding, the "Claims Agent"), which requires OMNI, among other things, to maintain the Bankruptcy Proceeding's official claims register to record all Claims filed against, or scheduled by, the debtor in such Bankruptcy Proceeding (each a "Claims Register" and collectively, the "Claims Registers"); and

WHEREAS, XCLAIM desires to obtain, on an exclusive basis, direct electronic access to the claims and claims-related data maintained by OMNI in connection with and in support of OMNI's Claims Registers (the "Accessible Data"), (i) on a read-only basis such that XCLAIM shall have no ability to directly modify such Accessible Data, and (ii) to allow XCLAIM to transmit to OMNI data and documentation relating to any Claims on such Claims Registers that are bought or sold on XCLAIM's Platform (the "Claims Transfer Data") and to provide OMNI with the means of reviewing such Claims Transfer Data to allow OMNI to quickly and efficiently approve updates to the Claims Registers to reflect such transactions.

NOW, THEREFORE, in consideration of the mutual promises and the other terms and conditions contained herein and for good and valuable consideration, the receipt of sufficiency of which are hereby acknowledged, the Parties agree as follows:

1.    **Definitions**.  The defined terms used in this Agreement shall have the meanings set forth herein or as defined in this Section 1.

1.1.    **"API"** means one or more private application programming interface(s) created by XCLAIM to interface with the Accessible Data so that the Platform will have real-time information and documents as reflected in each Claims Register.

1.2.    **"Business Day"** means shall mean all days excluding Saturdays, Sundays and holidays recognized by the United States Bankruptcy Courts.

1.3.    **"Confidential Information"** means the terms of this Agreement and any confidential or proprietary information marked or otherwise identified in writing as confidential or proprietary at the time of disclosure by the disclosing Party, or which the receiving Party reasonably should recognize from the circumstances surrounding such disclosure or the contents of such disclosure to be confidential or proprietary, and including any source code, software tools, designs, schematics, plans or any other information relating to any research project, work in process, future development, scientific, engineering, manufacturing, marketing or business

DocuSign Envelope ID: 02B5243-8024-4988-961F-5BA5478C39A5

plan or financial or personnel matter relating to either Party, its present or future products, services, customers, employees, investors or business.

1.4.    **"Improvements"** means all improvements, modifications and enhancements of the Technical Data created by or on behalf of XCLAIM.

1.5.    "**Intellectual Property Rights**" means all past, present, and future rights of the following types, whether registered or unregistered, which may exist or be created under the Laws of any jurisdiction in the world: (a) rights associated with works of authorship, including copyrights, design rights, and moral rights ("Copyrights"); (b) trademark, trade name, service name, trade dress and service mark rights and similar means of identification and similar rights, including all goodwill associated with the foregoing (collectively, "Trademarks"); (c) trade secret rights and other rights in know-how and confidential or proprietary information (including any techniques, specifications, designs, processes, practical knowledge and skills, or other similar information) (collectively, "Know-How"); (d) United States and foreign patents, including utility models, industrial designs and design patents, and applications therefor (and any patents that issue as a result of those patent applications), and any renewals, reissues, reexaminations, extensions, continuations, continuations-in-part, divisions and substitutions relating to any of such patents and patent applications, and any counterparts worldwide claiming priority therefrom, and all rights in and to any of the foregoing (collectively, "Patents"); (e) rights in data, including technical data, clinical data, user data, algorithm training data, feasibility study results, data from research and development, including user research, safety data rights in databases and data collections (including knowledge databases, safety databases, user lists and user databases) (collectively, "Data"); (f) all other intellectual property rights or proprietary rights; and (g) all past, present and future claims and causes of action arising out of or related to infringement or misappropriation of any of the foregoing.

1.6.    "**Law**" means all applicable laws, statutes, ordinances, codes, rules, regulations or any orders or decrees of any court or other governmental authority.

1.7.    "**Release Date**" means the date upon which XCLAIM's Platform goes live and is operational for the trading of Claims in cases in which OMNI is the court-appointed Claims Agent.

1.8.    "**Technical Data**" means any data, related interface access points and other technical information required by XCLAIM to create and use the API for its intended purposes.

## 2.    **Access Grant; Ownership**.

2.1.    **Access**.  OMNI hereby grants XCLAIM direct access, on an exclusive basis, through the API to the Accessible Data maintained by OMNI in connection with any Bankruptcy Proceeding and to allow XCLAIM, pursuant to Section 3.5 hereof, to transmit Claims Transfer Data to OMNI for its review and approval of any changes to the Claims Registers to reflect any Claim transfers facilitated through XCLAIM's Platform.  OMNI agrees not to allow any other party that is involved in the trading, buying and/or selling of Claims direct access to the Accessible Data or the ability to electronically modify the Claims Registers in any respect.

2.2.    **Ownership**.  As between the Parties, OMNI shall continue to own all rights in and to OMNI's Technical Data, the Claims Registers and all changes to the Accessible Data created by OMNI to record transfers of Claims and shall have final responsibility for maintaining the Claims Registers pursuant to its duties as Claims Agent in any Bankruptcy Proceeding.  As between the Parties, XCLAIM shall own all right, title and interest in and to (i) the Platform, XCLAIM's Technical Data and the API and (ii) any Improvements that XCLAIM creates or develops as a result of the access granted by OMNI herein to facilitate XCLAIM's ability to access the Claims Registers.

**3.**    **Development and Operations**.

3.1.    **Initial Delivery**.  OMNI shall promptly, but in no more than five (5) Business Days following the Effective Date, deliver to XCLAIM a list of all pending Bankruptcy Proceedings in which OMNI serves as a Claims Agent.

3.2.    **Subsequent Deliveries**.  As to any Claims Registers that are created or modified after the Effective Date, OMNI shall deliver to XCLAIM, or provide XCLAIM electronic access to, all Required Data (as defined below) with respect to such Claims Registers within three (3) Business Days after the later of (a) the initial creation or subsequent modification of any such Claims Register by OMNI and (b) the date that the bankruptcy petition initiating the Bankruptcy Proceeding to which such Claims Register pertains is filed.

3.3.    **API Development**.  XCLAIM will develop the API using the Technical Data and Accessible Data.  XCLAIM shall be solely responsible for all direct costs related to the development of the API.  Prior to the Release Date, the Accessible Data will not be used on the Platform in a production environment until the data transmitted through the API has been validated to the reasonable satisfaction of OMNI.  OMNI hereby agrees to enter into and accept the terms of a separate short form end user license agreement that will be provided by XCLAIM upon completion of the API.

3.4.    **Assistance; Release Date**.  OMNI shall (a) work cooperatively with XCLAIM, beginning within five (5) days of the Effective Date, to identify the Technical Data, and the extent of access to the Accessible Data, necessary for XCLAIM to be able to develop the API and to be able to access the Accessible Data based on OMNI's system requirements (the "Required Data"), and (b) use commercially reasonable efforts to provide such Required Data to XCLAIM upon XCLAIM's reasonable request.  OMNI agrees to provide XCLAIM with access to OMNI's systems and to make reasonably available to XCLAIM the services of qualified personnel for assistance and understanding the Technical Data, Claims Registers and Accessible Data in order to enable XCLAIM to develop, test and validate the API, and gain direct access to the Accessible Data. XCLAIM agrees to work diligently with OMNI toward achieving the Release Date.

3.5.    **Approval of Changes to Claims Registers**.  OMNI will review as soon as practicable any Claims Transfer Data provided by XCLAIM in order to determine, as the Claims Agent, whether to approve the changes to the Claims Register to reflect the underlying Claim transfer(s).  To the extent OMNI does not approve all Claims Register changes to reflect the relevant Claims Transfer Data, OMNI will notify XCLAIM of the basis for its determination as

soon as reasonably practicable, but not later than OMNI's close of regular business hours on the Business Day after such Claims Transfer Data are transmitted by XCLAIM to OMNI.

      3.6.    **Security**.  XCLAIM shall limit its employees' access and use of OMNI's Technical Data and the Accessible Data to (a) the applicable Technical Data and Accessible Data OMNI has authorized XCLAIM to access and (b) access required to perform the functions permitted pursuant to this Agreement.  Passwords granting access to the Platform will require a minimum of eight (8) characters, one (1) capital letter, one (1) number and one (1) special character.  XCLAIM will require password changes at least every 180 days and will not allow for the reuse of passwords.

      3.7.    **Errors**.  As between the Parties, (i) XCLAIM shall be responsible for the information contained in the Claims Transfer Data transmitted to OMNI and the updates to the Claims Registers made after approval by OMNI of any such changes and (ii) OMNI shall be responsible for any other changes made to the Claims Registers.

      3.8.    **Referral to XCLAIM**.  OMNI agrees it will place a link or other device mutually agreed to between the Parties in a prominent location on OMNI's claims agent case websites which will navigate persons interested in buying or selling Claims listed on OMNI's Claims Registers to the XCLAIM Platform.  OMNI also agrees that it will not allow any other person or entity offering a service that competes with XCLAIM's services to place a similar link or device on OMNI's claims agent websites or otherwise endorse or promote any other service that competes with XCLAIM's service.

**4.**    **Payment**.

      4.1.    **Processing Fee**.  XCLAIM shall pay to OMNI a processing fee (the "Fee") equal to 10.0% of the commissions collected by XCLAIM related to any Claims transfers facilitated by XCLAIM's Platform in any Bankruptcy Proceedings in which OMNI serves as the Bankruptcy Court approved Claims Agent and for which XCLAIM provides Claims Transfer Data to OMNI, and OMNI accepts updates to the relevant OMNI Claims Register accordingly (the "Claims Transfers").  In the event that XCLAIM agrees to pay any other claims agents for Bankruptcy Proceedings a Fee greater than 10.0%, XCLAIM will offer such higher Fee to OMNI within ten (10) Business Days after the later of the execution date or the effective date of such agreement, and OMNI shall have the right to accept or reject such offer within five (5) Business Days of receipt of such offer.  If OMNI accepts such offer, the Parties shall enter into an amendment to this Agreement and XCLAIM will pay such new Fee with respect to all transfers made on and after the date such offer is accepted.

      4.2.    **Timing**.  Within 30 days after the end of each calendar quarter, XCLAIM shall deliver to OMNI a written report (the "Fee Report") detailing commissions actually collected by XCLAIM on account of Claims Transfers during such calendar quarter.  If OMNI does not object to the amount of the Fee contained in the Fee Report within ten (10) Business Days after receipt of the Fee Report, XCLAIM shall remit the Fee for such quarter within five (5) Business Days thereafter by check or wire transfer in U.S. Dollars and in accordance with written instructions provided by OMNI.

DocuSign Envelope ID: 6B285243-8024-498B-961F-55A5476009A5

    4.3.   **Audits**. XCLAIM shall maintain accurate and complete records, in a manner sufficient to permit audits in accordance with this Section 4.3. Upon a reasonable prior request from OMNI, XCLAIM shall provide OMNI (or its representatives) with access to such financial records and supporting documentation as may be reasonably requested by OMNI solely to the extent necessary to determine the accuracy of any Fee Report. OMNI shall be permitted to access XCLAIM's business premises to the extent necessary to perform such audit, as long as OMNI conducts the audit at its expense and during business hours and with reasonable written advance notice. Unless required by law or requested by a regulatory body, OMNI shall not perform more than one audit per calendar year. If OMNI's audit reflects that XCLAIM has underpaid or overpaid any Fee owing to OMNI, then OMNI shall provide a report to XCLAIM detailing OMNI's calculations and methodology regarding its determination of the correct Fee. XCLAIM will have thirty (30) days to respond to OMNI's report (the "<u>Audit Response Deadline</u>"). To the extent XCLAIM agrees with any portion of the Fee discrepancy reported by OMNI, XCLAIM shall promptly pay any agreed underpayment amount to OMNI, no later than the Audit Response Deadline, and OMNI shall pay XCLAIM any agreed overpayment by XCLAIM within seven (7) Business Days following XCLAIM's delivery of its audit response to OMNI. If XCLAIM disputes any part of an underpayment claimed by OMNI, XCLAIM shall provide a report to OMNI detailing XCLAIM's calculations and methodology regarding its determination of the correct Fee. The Parties shall thereafter meet and confer in an effort to resolve any remaining Fee dispute. If such dispute is not resolved within ten (10) days, or such longer period as agreed by the Parties, the dispute shall be submitted by the Parties to binding arbitration regarding the final Fee determination, in accordance with Section 8.7 hereof. If either Party materially breaches its obligations under this Agreement, then such Party shall promptly cure such breach. In the event of material underpayment by XCLAIM, XCLAIM shall reimburse OMNI for all reasonable documented costs and expenses incurred in connection with the audit (including, without limitation, payment in full of the audit) no later than thirty (30) days after receipt of an invoice from OMNI.

5.      **Representations and Warranties**.

    5.1.   **Authority**. Each Party represents and warrants that it has all requisite power and authority to execute and deliver this Agreement and any and all instruments necessary or appropriate in order to perform its obligations under this Agreement. This Agreement has been duly authorized, executed and delivered by all necessary action on the part of each Party and constitutes a valid and legally binding obligation of each Party.

    5.2.   **Compliance with Laws**. Each Party represents and warrants that the execution, delivery and performance of this Agreement does not and will not conflict with or result in any violation or breach of Law.

    5.3.   **Non-Contravention**. Each Party represents and warrants that the execution, delivery and performance of this Agreement does not and will not (a) give rise to any increased, additional, accelerated or guaranteed rights or entitlements, under any provision of any agreement to which such Party is a party or any Law or judgment, or (b) require any consent,

DocuSign Envelope ID: 02E65243-B024-4988-961F-5FAF57803945

approval, authorization or permit of, or filing by such Party with or notification by such Party to, any government entity or any other person or entity.

     5.4.    **XCLAIM's Representations and Warranties**.  XCLAIM represents and warrants to OMNI as follows:

        5.4.1.    **Title**.  XCLAIM exclusively owns all right, title and interest in and to the Platform and the API free and clear of any encumbrances, security interests, notes, loans, instruments, liens, judgments, orders, decrees, commitments, liabilities, licenses, agreements or other binding arrangements or obligations between XCLAIM and any other person or entity that conflict with the rights granted by XCLAIM under this Agreement.

        5.4.2.    **No Infringement**.  XCLAIM's Platform and API, and OMNI's delivery of the Accessible Data and Technical Data for use in the Platform, does not infringe, misappropriate or violate any Intellectual Property Right of any person or entity.

     5.5.    **OMNI Representations and Warranties**.  OMNI represents and warrants to XCLAIM as follows:

        5.5.1.    **No Encumbrances**.  The execution, delivery and performance of this Agreement does not and will not cause any default (with or without notice or lapse of time, or both), or give rise to a right of, or result in, termination, cancelation or acceleration of any obligation or to a loss of a benefit, or result in the creation of any lien, security interest or other encumbrance in or upon any of the Claims Registers or Accessible Data.

        5.5.2.    **Title**.  OMNI exclusively owns all right, title and interest in and to the Claims Registers free and clear of any encumbrances, security interests, notes, loans, instruments, liens, judgments, orders, decrees, commitments, liabilities, licenses, agreements or other binding arrangements or obligations between OMNI and any other person or entity that conflict with the rights granted by OMNI under this Agreement.

        5.5.3.    **No Infringement**.  XCLAIM's access and use of the Accessible Data and Technical Data (excluding any resulting XCLAIM Improvements) in accordance with this Agreement will not, infringe, misappropriate or violate any Intellectual Property Right of any person or entity.

        5.5.4.    **Accuracy of Accessible Data**.  To OMNI's knowledge, the Accessible Data is up to date and accurate.

6.      **Confidentiality**.

6.1.    **Nondisclosure; Nonuse**. All Confidential Information exchanged between the Parties pursuant to this Agreement shall not be distributed, disclosed, or disseminated by the receiving party to anyone except its own employees, agents or subcontractors who have a reasonable need to know such Confidential Information and who have been advised of the confidential nature and required to observe the terms and conditions hereof; nor shall Confidential Information be used by the receiving party for its own purpose, except for the purposes of exercising its rights or fulfilling its obligations under this Agreement. The restriction on disclosure will not apply to Confidential Information that is required to be disclosed by a court, government agency or regulatory requirement, provided that the recipient shall first notify the disclosing party of such disclosure requirement or order and use reasonable efforts to obtain confidential treatment or a protective order

6.2.    **Exclusions**. The obligations of Section 6.1 shall not apply to any information that: (a) is already in the public domain or becomes available to the public through no breach of this Agreement or other confidentiality obligation by the receiving party; (b) was in the receiving party's possession prior to receipt from the disclosing party as proven by the receiving party's written records; or (c) is received independently on a non-confidential basis from a third party free to disclose such information to the receiving party. The obligations of Section 6.1 shall also not apply to any information that the receiving party discloses under an obligation of confidentiality to persons or entities who are considering making an investment in or lending funds to the receiving party.

7.      **Term; Termination**.

7.1.    **Term**. This Agreement becomes effective on the Effective Date and shall continue in full force and effect for five (5) years after the Effective Date (the "Initial Term"), which term shall be automatically extended for additional one (1) year periods on each anniversary of the Effective Date after the Initial Term unless either Party provides at least thirty (30) days' notice that it does not intend for the Agreement to continue.

7.2.    **Termination for Breach**. Either Party may terminate this Agreement for cause by notice in writing if the other Party shall at any time be in material breach of this Agreement and shall fail to remedy such breach (if capable of remedy) within thirty (30) days from receipt of notice in writing from the first Party specifying such breach.

7.3.    **No Waiver of Termination**. No failure or delay on the part of either Party in exercising its right of termination hereunder for any one or more causes shall be construed to prejudice its rights of termination for such cause or any other or subsequent cause

7.4.    **Effect of Termination**. The termination of this Agreement shall not release either Party from any liability which, at said date of termination, has already accrued to the other Party. If XCLAIM terminates this Agreement for cause, XCLAIM shall have no further obligation to pay the Fee specified in Section 4 as of the date of termination. Except as reasonably necessary for XCLAIM to continue to exercise its rights under this Agreement, upon any termination of the Agreement, each Party shall return or destroy any Confidential Information of the other Party then in its possession. In addition to the foregoing, the following

DocuSign Envelope ID: 02B5243-B024-4988-961F-53AF5782391A

Sections shall survive any termination or expiration of this Agreement: 1, 2.2, 4 (only as to amounts accrued prior to termination), 5, 6, 7.4, and 8.

**8.     Miscellaneous**.

8.1.    **Waiver**. No failure or delay by any Party hereto in exercising any right, power or privilege hereunder shall operate as a waiver thereof, nor shall any single or partial waiver thereof include any other or further exercise thereof or the exercise of any other right, power or privilege.

8.2.    **Amendment**. Unless otherwise provided herein, this Agreement may not be changed, waived, discharged, or terminated orally, but only by a written document signed by duly authorized officers of each of the Parties hereto.

8.3.    **Notices**.  All notices and other communications required or permitted hereunder shall be in writing and shall be personally delivered by hand, or delivered by first-class, registered or certified mail, postage prepaid, by messenger, or by overnight delivery at the addresses first set forth above or at such other address as each Party shall have furnished to the other in writing. Any notice or other communications so provided shall be deemed to be given when actually received by the addressees.

8.4.    **Relationship of Parties**.  Nothing herein contained shall be deemed to create an agency, joint venture or partnership relation between the Parties hereto. It is understood and agreed that neither Party is, by reason of this Agreement or anything herein contained, constituted or appointed the agent or representative of the other Party for any purpose whatsoever.

8.5.    **Assignment of Agreement**.  Neither Party may assign this Agreement nor any of its rights or obligations hereunder without the prior written consent of the other Party, such consent not to be unreasonably conditioned, delayed or withheld.  Notwithstanding the foregoing, either Party may assign this Agreement and its rights and obligations hereunder, without the other Party's consent, to an affiliate of the assigning party or to a successor in interest upon any merger, reorganization, acquisition, change of control, or sale of all or substantially all of the assets of the assigning Party.  Any purported assignment not in compliance with this Section 8.5 shall be deemed null and void from the beginning.  This Agreement is binding upon and inures to the benefit of the Parties and their respective permitted successors and assigns.

8.6.    **Governing Law**.  This Agreement and the Parties' performance hereunder shall be governed by New York Law, excluding choice-of-law rules.  It is agreed that any proceeding arising out of or based upon this Agreement shall be submitted to binding arbitration pursuant to Section 8.7 hereof.  EACH PARTY HERETO IRREVOCABLY WAIVES THE RIGHT TO TRIAL BY JURY IN ANY PROCEEDING BROUGHT BY OR ON BEHALF OF ANY PARTY RELATED TO OR ARISING OUT OF THIS AGREEMENT OR THE PERFORMANCE OF ANY OBLIGATIONS HEREUNDER

8.7.    **Arbitration**.  Any dispute, claim or controversy arising out of or relating to this Agreement or the breach, termination, enforcement, interpretation or validity thereof, including

the determination of the scope or applicability of this agreement to arbitrate, shall be determined exclusively by arbitration in New York, New York, before a single arbitrator. The arbitration shall be administered by JAMS pursuant to its Comprehensive Arbitration Rules and Procedures. Judgment on the award may be entered in any court having jurisdiction. This clause shall not preclude parties from seeking provisional remedies in aid of arbitration from a court of appropriate jurisdiction.

8.8. **Severability**. Whenever possible, each provision of the Agreement will be interpreted in such manner as to be effective and valid under applicable Law, but if any provision of the Agreement is held to be prohibited by or invalid under applicable Law, such provision will be ineffective only to the extent of such prohibition or invalidity, without invalidating the remainder of the Agreement.

8.9. **Headings; Construction**. The headings to the clauses, sub-clauses and parts of this Agreement are inserted for convenience of reference only and are not intended to be part of or to affect the meaning or interpretation of this Agreement. The terms "this Agreement," "hereof," "hereunder" and any similar expressions refer to this Agreement and not to any particular Section or other portion hereof. The Parties hereto agree that any rule of construction to the effect that ambiguities are to be resolved against the drafting Party will not be applied in the construction or interpretation of this Agreement. As used in this Agreement, the words "include" and "including," and variations thereof, will be deemed to be followed by the words "without limitation."

8.10. **Counterparts**. This Agreement may be executed in multiple counterparts, each of which shall be deemed an original and all of which together shall constitute one instrument. This Agreement may be executed by facsimile or .pdf signature by either party and such signature will be deemed binding for all purposes hereof without delivery of an original signature being thereafter required.

8.11. **Entire Agreement**. This Agreement, including all exhibits attached hereto, constitutes the entire agreement between the Parties with respect to the subject matter hereof, and supersedes any prior agreements, or understandings of the Parties hereto in either written or oral form.

*[remainder of page intentionally left blank]*

**In Witness Whereof,** the Parties hereto have executed this Agreement as of the Effective Date.

**Omni Agent Solutions, Inc.**

By: _____

Name: Brian Osborne

Title: CEO and President

**XClaim Inc.**

By: _____

Name: Matt Sedigh

Title: CEO

Exhibit B

| | |
|---|---|
| **From:** | Brian Osborne |
| **To:** | Matthew Sedigh |
| **Cc:** | Brad Brook |
| **Subject:** | FW: X-Claim |
| **Attachments:** | image001.png |
| | X Claim Letter.pdf |

Matt:

Attached hereto is a letter which confirms our conversation from yesterday with regard to Omni's termination of our October 16, 2019 agreement.

If you have any questions feel free to contact Bradley Brook at 310-939-2004 and/or at bbrook@bbrooklaw.com.


**Best**
**Brian Osborne**
CEO & President
**Omni Agent Solutions**
https://omniagentsolutions.com
5955 De Soto Ave., Suite 100
Woodland Hills, CA 91367
Phone No.  (818) 906-8300
Mobile No. (818) 321-9180
Fax No. (818) 783-2737
E-mail: bosborne@omniagnt.com





June 9, 2022

Mr. Matthew Sediq
CEO
X-Claim, Inc.
5792 W. Jefferson Boulevard
Los Angeles, CA 90016

RE: X-Claim, Inc. Agreement

Dear Matt:

This letter confirms my telephone call from yesterday with you (Matt Sediq), as CEO of X-Claim, wherein I informed you that the agreement between Omni Agent Solutions, Inc. ("Omni") and X-Claim, Inc. dated October 16, 2019, will no longer be operative for a number of reasons. Please contact Bradley Brook at 310-939-2004 and/or at bbrook@bbrooklaw.com should you wish to communicate further regarding this matter.

Sincerely,

Brian Osborne
CEO
Omni Agent Solutions, Inc.

**From:**     Matthew Sedigh
**To:**       Brian Osborne; Marc Beilinson
**Subject:**  [External] Xclaim Agreement
**Date:**     Thursday, September 1, 2022 5:08:15 PM

Marc and Brian,

Xclaim confirms that Omni's termination on 6/9/22 was immediately effective in terminating
the agreement between Xclaim Inc and Omni Agent Solutions, Inc.

--
Matt Sedigh
Chief Executive Officer



Exhibit C

| ClientID | DateAdded | ClientName | DBName | Court | Case Number(s) | Start Date | End Date |
|---|---|---|---|---|---|---|---|
| 2424 | 2/12/2020 | VG Liquidation Inc., et al. | VideoLogy | District of Delaware | 18:11120; 18:11121; 18:11122; 18:11123; 18:11124 | 4/7/2020 | 6/8/2022 |
| 3526 | 2/12/2020 | PES Holdings, LLC, et al. | PES2019 | District of Delaware | 19-11626; 19-11627; 19-11628; 19-11629; 19-11630; 19-11631; 19-11632; 19-11633 | 4/7/2020 | 6/8/2022 |
| 2435 | 3/11/2020 | Brookstone Holdings Corp., et al. | Brookstone | District of Delaware | 18-11780; 18-11781; 18-11782; 18-11783; 18-11784; 18-11786; 18-11787; 18-11789; 18-11790; 18-11791 | 4/7/2020 | 6/8/2022 |
| 3553 | 4/1/2020 | VIP Cinema Holdings, Inc., et al. | VIPCinema | District of Delaware | 20-10345; 20-10346; 20-10347; 20-10348; 20-10344 | 4/7/2020 | 6/8/2022 |
| 3550 | 5/1/2020 | Fairway Group Holdings Corp., et al. | Fairway | Southern District of New York | 20-10161; 20-10162; 20-10163; 20-10164; 20-10165; 20-10166; 20-10167; 20-10168; 20-10169; 20-10170; 20-10171; 20-10172; 20-10173; 20-10174; 20-10175; 20-10176; 20-10177; 20-10178; 20-10179; 20-10180; 20-10181; 20-10182; 20-10183; 20-10184; 20-10185; 20-10186 | 5/1/2020 | 6/8/2022 |
| 2521 | 5/4/2020 | GUE Liquidation Companies, Inc., et al. | FTD | District of Delaware | 19-11240; 19-11242; 19-11244; 19-11246; 19-11247; 19-11249; 19-11241; 19-11243; 19-11245; 19-11251; 19-11253; 19-11248; 19-11250; 19-11252; 19-11254 | 5/4/2020 | 6/8/2022 |
| 2448 | 5/7/2020 | Empire Generating Co, LLC | EmpireGenerating | Southern District of New York | 19-23007; 19-23006; 19-23008; 19-23009 | 5/7/2020 | 6/8/2022 |
| 3557 | 5/7/2020 | OneWeb Global Limited, et al. | OneWeb | Southern District of New York | 20-22437; 20-22438; 20-22442; 20-22448; 20-22441; 20-22439; 20-22450; 20-22451; 20-22447; 20-22443; 20-22449; 20-22434; 20-22446; 20-22444; 20-22436; 20-22435; 20-22452; 20-22445; 20-22440 | 5/7/2020 | 6/8/2022 |
| 3558 | 5/7/2020 | The Northwest Company, LLC | NorthwestCompany | Southern District of New York | 20-10990; 20-10989 | 5/7/2020 | 6/8/2022 |
| 3560 | 5/7/2020 | Chinos Holdings, Inc. | JCrew | Eastern District of Virginia | 20-32181; 20-32182; 20-32183; 20-32184; 20-32185; 20-32186; 20-32187; 20-32188; 20-32189; 20-32190; 20-32180; 20-32191; 20-32192; 20-32193; 20-32194; 20-32195; 20-32196; 20-32197 | 5/7/2020 | 6/8/2022 |
| 3562 | 5/7/2020 | John Varvatos Enterprises, Inc. | JohnVarvatos | District of Delaware | 20-11043; 20-11044; 20-11045 | 5/7/2020 | 6/8/2022 |
| 3563 | 7/24/2020 | Sustainable Restaurant Holdings, Inc. | SustainableRestaurant | District of Delaware | 20-11087; 20-11088; 20-11089; 20-11090; 20-11091; 20-11092; 20-11093; 20-11095; 20-11096; 20-11097; 20-11098; 20-11099; 20-11100; 20-11101; 20-11102; 20-11103; 20-11104; 20-11105; 20-11106; 20-11107; 20-11108; 20-11094 | 7/24/2020 | 6/8/2022 |
| 3569 | 7/24/2020 | Chisholm Oil and Gas Operating, LLC | ChisholmOil | District of Delaware | 20-11593; 20-11592; 20-11594; 20-11595; 20-11596 | 7/24/2020 | 6/8/2022 |
| 3572 | 7/24/2020 | CDS U.S. Holdings, Inc. | CDS | District of Delaware | 20-11719; 20-11732; 20-11727; 20-11728; 20-11729; 20-11735; 20-11759; 20-11736; 20-11760; 20-11737; 20-11738; 20-11739; 20-11740; 20-11720; 20-11741; 20-11742; 20-11743; 20-11758; 20-11731; 20-11730; 20-11755; 20-11756; 20-11745; 20-11748; 20-11744; 20-11750; 20-11751; 20-11752; 20-11753; 20-11754; 20-11747; 20-11734; 20-11721; 20-11722; 20-11723; 20-11724; 20-11761; 20-11725; 20-11746; 20-11733; 20-11726; 20-11757; 20-11749 | 7/24/2020 | 6/8/2022 |
| 3571 | 7/24/2020 | TriVascular Sales LLC, et al. | Endologix | Northern District of Texas | 20-31840; 20-31841; 20-31842; 20-31843; 20-31844; 20-31845; 20-31846; 20-31847 | 7/24/2020 | 6/8/2022 |
| 3581 | 7/24/2020 | SLT Holdco, Inc. | SLT | District of New Jersey | 20-18368; 20-18367 | 7/24/2020 | 6/8/2022 |
| 3570 | 7/24/2020 | Cinemex USA Real Estate Holdings, Inc. | Cinemex | Southern District of Florida | 20-14695; 20-14696; 20-14699 | 7/24/2020 | 6/8/2022 |
| 3561 | 7/24/2020 | Bruin E&P Partners, LLC | BruinEP | Southern District of Texas | 20-33605; 20-33608; 20-33610; 20-33611; 20-33609; 20-33607; 20-33606 | 7/24/2020 | 6/8/2022 |
| 3582 | 7/24/2020 | Old OB, LLC | OccasionBrands | Southern District of New York | 20-11684 | 7/24/2020 | 6/8/2022 |
| 3583 | 8/6/2020 | Benevis Corp | Benevis | Southern District of Texas | 20-33918; 20-33919; 20-33920; 20-33921; 20-33922; 20-33923 | 8/6/2020 | 6/8/2022 |
| 3585 | 8/6/2020 | KG Winddown, LLC, et al. | ILMulino | Southern District of New York | 20-11723; 20-11724; 20-11725; 20-11726; 20-11727; 20-11728; 20-11729; 20-11730; 20-11731; 20-11732; 20-11733; 20-11734; 20-11735; 20-11778 | 8/6/2020 | 6/8/2022 |
| 3589 | 9/10/2020 | Groupe Dynamite Inc | GroupeDynamite | District of Delaware | 20-12085; 20-12084; 20-12083 | 9/10/2020 | 6/8/2022 |
| 3566 | 9/10/2020 | iQor Holdings Inc. | iQor | Southern District of Texas | 20-34500; 20-34478; 20-34479; 20-34480; 20-34481; 20-34482; 20-34483; 20-34484; 20-34485; 20-34486; 20-34487; 20-34488; 20-34489; 20-34490; 20-34491; 20-34492; 20-34493; 20-34494; 20-34495; 20-34496; 20-34497; 20-34498; 20-34499 | 9/10/2020 | 6/8/2022 |
| 3587 | 9/21/2020 | Premiere Jewellery, Inc., et al. | PremiereJewellery | Southern District of New York | 20-11484; 20-11485; 20-11486; 20-11487; 20-11488 | 9/21/2020 | 6/8/2022 |
| 3564 | 10/20/2020 | UTEX Industries, Inc. | Utex | Southern District of Texas | 20-34932; 20-34934; 20-34936; 20-34937; 20-34938; 20-34939; 20-34940; 20-34941; 20-34942; 20-34943; 20-34944; 20-34945 | 10/20/2020 | 6/8/2022 |
| 3549 | 10/30/2020 | Lucky's Market Parent Company, LLC, et al. | LuckyMarket | District of Delaware | 20-bk-10166; 20-bk-10167; 20-bk-10168; 20-bk-10169; 20-bk-10170; 20-bk-10171; 20-bk-10172; 20-bk-10173; 20-bk-10174; 20-bk-10175; 20-bk-10176; 20-bk-10177; 20-bk-10178; 20-bk-10179; 20-bk-10180; 20-bk-10181; 20-bk-10182; 20-bk-10183; 20-bk-10184; 20-bk-10185; 20-bk-10186; 20-bk-10187; 20-bk-10513; 20-bk-10514 | 10/30/2020 | |
| 3542 | 11/5/2020 | PNW Healthcare Holdings, LLC, et al. | PNWHealthcare | Western District of Washington | 19-43754; 19-43787; 19-43757; 19-43758; 19-43760; 19-43759; 19-43788; 19-43762; 19-43791; 19-43764; 19-43765; 19-43766; 19-43792; 20-40156; 20-40157 | 11/5/2020 | 6/8/2022 |

| ClientID | DateAdded | ClientName | DBName | Court | Case Number(s) | Start Date | End Date |
|---|---|---|---|---|---|---|---|
| 3592 | 1/5/2021 | PBS Brand Co., LLC, et al. | PunchBowlSocial | District of Delaware | 20-13157; 20-13158; 20-13161; 20-13162; 20-13163; 20-13164; 20-13165; 20-13166; 20-13167; 20-13168; 20-13169; 20-13170; 20-13171; 20-13204; 20-13206 | 1/5/2021 | 6/8/2022 |
| 3591 | 1/5/2021 | Rock International Investment Inc. | RockInternational | Southern District of Texas | 20-35623 | 1/5/2021 | 6/8/2022 |
| 3594 | 1/18/2021 | Christopher & Banks Corporation, et al. | ChristopherBanks | District of New Jersey | 21-10269; 21-10268; 21-10270 | 1/18/2021 | 6/8/2022 |
| 3593 | 2/5/2021 | Knotel, Inc., et al. | Knotel | District of Delaware | 21-10146; 21-10161; 21-10168; 21-10184; 21-10191; 21-10210; 21-10221; 21-10223; 21-10232; 21-10241; 21-10254; 21-10258; 21-10259; 21-10261; 21-10263; 21-10265; 21-10273; 21-10275; 21-10277; 21-10282; 21-10283; 21-10284; 21-10285; 21-10289; 21-10290; 21-10291; 21-10292; 21-10293; 21-10294; 21-10297; 21-10298; 21-10299; 21-10300; 21-10301; 21-10304; 21-10306; 21-10307; 21-10308; 21-10310; 21-10313; 21-10317; 21-10318; 21-10320; 21-10321; 21-10322; 21-10324; 21-10325; 21-10326; 21-10329; 21-10316; 21-10330; 21-10333; 21-10335; 21-10336; 21-10337; 21-10340; 21-10345; 21-10347; 21-10348; 21-10350; 21-10352; 21-10353; 21-10355; 21-10356; 21-10149; 21-10153; 21-10157; 21-10163; 21-10164; 21-10175; 21-10178; 21-10196; 21-10198; 21-10204; 21-10211; 21-10213; 21-10217; 21-10216; 21-10226; 21-10230; 21-10231; 21-10233; 21-10234; 21-10239; 21-10240; 21-10251; 21-10255; 21-10256; 21-10257; 21-10260; 21-10262; 21-10264; 21-10266; 21-10267; 21-10269; 21-10270; 21-10272; 21-10274; 21-10276; 21-10278; 21-10279; 21-10280; 21-10281; 21-10286; 21-10287; 21-10288; 21-10295; 21-10296; 21-10302; 21-10303; 21-10305; 21-10309; 21-10311; 21-10312; 21-10314; 21-10315; 21-10319; 21-10323; 21-10327; 21-10328; 21-10331; 21-10332; 21-10334; 21-10338; 21-10339; 21-10341; 21-10342; 21-10343; 21-10344; 21-10346; 21-10349; 21-10358; 21-10148; 21-10152; 21-10154; 21-10155; 21-10156; 21-10162; 21-10172; 21-10174; 21-10177; 21-10182; 21-10185; 21-10186; 21-10188; 21-10192; 21-10193; 21-10195; 21-10235; 21-10238; 21-10242; 21-10250; 21-10252; 21-10151; 21-10158; 21-10166; 21-10173; 21-10176; 21-10180; 21-10190; 21-10194; 21-10200; 21-10202; 21-10203; 21-10206; 21-10214; 21-10215; 21-10227; 21-10229; 21-10237; 21-10243; 21-10244; 21-10245; 21-10246; 21-10247; 21-10253; 21-10271; 21-10354; 21-10359; 21-10147; 21-10150; 21-10159; 21-10160; 21-10165; 21-10167; 21-10169; 21-10170; 21-10171; 21-10179; 21-10181; 21-10183; 21-10187; 21-10189; 21-10197; 21-10199; 21-10201; 21-10205; 21-10207; 21-10208; 21-10209; 21-10212; 21-10218; 21-10219; 21-10220; 21-10222; 21-10224; 21-10225; 21-10228; 21-10236; 21-10248; 21-10249; 21-10268; 21-10351; 21-10357; 21-10540 | 2/5/2021 | 6/8/2022 |
| 3596 | 3/8/2021 | STA Travel, Inc. | STATravel | District of Delaware | 21-10511 | 3/8/2021 | 6/8/2022 |
| 3598 | 3/8/2021 | Stream TV Networks, Inc. | StreamTV | District of Delaware | 21-10433 | 3/8/2021 | 6/8/2022 |
| 3599 | 3/25/2021 | Norwegian Air Shuttle ASA | NorwegianAir | Southern District of New York | 21-10478; 21-10480 | 3/25/2021 | 6/8/2022 |
| 3600 | 3/25/2021 | Just Energy Group Inc., et al. | JustEnergy | Southern District of Texas | 21-30823; 21-30824; 21-30827; 21-30833; 21-30837; 21-30842; 21-30845; 21-30850; 21-30829; 21-30835; 21-30841; 21-30847; 21-30835; 21-30858; 21-30855; 21-30864; 21-30856; 21-30859; 21-30868; 21-30872; 21-30873; 21-30870; 21-30866; 21-30871; 21-30846; 21-30840; 21-30848; 21-30832; 21-30851; 21-30836; 21-30838; 21-30852; 21-30826; 21-30830; 21-30831; 21-30834; 21-30839; 21-30843; 21-30844; 21-30854; 21-30862; 21-30867; 21-30857; 21-30869; 21-30860; 21-30853; 21-30865; 21-30849 | 3/25/2021 | 6/8/2022 |
| 3597 | 4/22/2021 | Dorchester Resources, L.P. | DorchesterResources | Western District of Oklahoma | 21-10840 | 4/22/2021 | 6/8/2022 |
| 3601 | 4/22/2021 | S & A Retail, Inc. | SARetail | Southern District of New York | 21-22174; 21-22175 | 4/22/2021 | 6/8/2022 |
| 3605 | 4/22/2021 | Connections Community Support Programs, Inc. | ConnectionsCSP | District of Delaware | 21-10723 | 4/22/2021 | 6/8/2022 |
| 3609 | 1/1/2021 | AH Liquidation, Inc. | AvadimHealth | District of Delaware | 21-10883; 21-10884; 21-10885; 21-10887; 21-10886 | 8/31/2021 | 6/8/2022 |
| 3612 | 1/1/2021 | GVS Texas Holdings I, LLC, et al. | GVS | Northern District of Texas | 21-3121; 21-31119; 21-31120; 21-31122; 21-31123; 21-31124; 21-31125; 21-31126; 21-31127; 21-31128; 21-31129; 21-31130; 21-31131; 21-31132; 21-31164 | 8/31/2021 | 6/8/2022 |
| 3616 | 1/1/2022 | DRSD, Inc. (f/k/a SVXR, Inc.) | SVXR | Northern District of California | 21-51050 | 8/31/2021 | 6/8/2022 |
| 3619 | 1/1/2022 | PWM Property Management LLC, et al. | PWM | District of Delaware | 21-11445; 21-11437; 21-11438; 21-11439; 21-11440; 21-11441; 21-11442; 21-11443; 21-11444 | 1/19/2022 | 6/8/2022 |
| 3620 | 1/1/2022 | HBL SNF, LLC | HBL | Southern District of New York | 21-22623 | 1/19/2022 | 6/8/2022 |

Exhibit D

An accounting of any and all fees, costs, and reimbursements received, or to be received, from Xclaim through the date of the filing of the notice including the date, or anticipated date (if payment is expected in the future), of each payment.

| Quarter | Number of trades | Claim Value | XClaim Commission | Omni processing fee |
|---|---|---|---|---|
| 3rd 2019 | 0 | | | |
| 1st 2020 | 0 | | | |
| 2nd 2020 | 0 | | | |
| 3rd 2020 | 0 | | | |
| 4th 2020 | 0 | | | |
| 1st 2021 | 11 | $746,317.77 | $        7,463.18 | $              746.32 |
| 2nd 2021 | 3 | $114,253.56 | $        1,142.54 | $              114.25 |
| 3rd  2021 | 0 | | | |
| 4th 2021 | 2 | $201,577.98 | $        2,015.78 | $              201.58 |
| 1st 2022 | 0 | | | |
| 2nd 2022 | 0 | | | |
| **Total Amount** | | | $        **1,062.15** | |