

Hogan Lovells US LLP
390 Madison Avenue
New York, NY 10017
T  +1 212 918 3000
F  +1 212 918 3100
www.hoganlovells.com

October 6, 2022

**By ECF**

Honorable Chief Judge Martin Glenn
United States Bankruptcy Court for the Southern District of New York
One Bowling Green
New York, NY 10004

**Re:    In re: Matter of Certain Claims and Noticing Agents' Receipt of Fees in Connection
with Unauthorized Arrangements with XClaim Inc.,
Misc. Pro. No. 22-00401-mg (Bankr. S.D.N.Y.)**

Dear Chief Judge Glenn:

We represent Xclaim Inc. in connection with the above-captioned miscellaneous
proceeding, and write in response to the Order to Show Cause issued on September 23, 2022 (ECF
No. 17, the "OSC").  The OSC followed a filing made by Xclaim Inc. in this proceeding on
September 22, 2022 (ECF No. 16, the "Xclaim Submission"), described in more detail below.  The
OSC noted that the Court had "blocked public access" to the Xclaim Submission within hours of
its filing due to what the Court understood to be "security risks."   The OSC directed two
representatives of Xclaim Inc. (Ryan Vollenhals and Matthew D. Sedigh, and together with Xclaim
Inc. for purposes of this submission, "Xclaim") to show cause "why they should not be sanctioned
for publicly disclosing the non-public personally identifiable information of multiple federal
judges, high-ranking officers of the Administrative Office of the U.S. Courts, high-ranking officers
of the Department of Justice, and court personnel" in "certain exhibits to the Xclaim Submission."
OSC at 2.

Xclaim appreciates that the security of the Court, its staff, and the other governmental
officials referenced in the OSC is a serious matter, and Xclaim is eager to assist in mitigating
and/or addressing any security risks perceived by the Court.  But for several reasons, nothing about
the filing of the exhibits to the Xclaim Submission – which Xclaim submitted in good faith –
warrants the imposition of sanctions.

*First*, the OSC never explains what "personally identifiable information" ("PII") included
in the Xclaim Submission's exhibits – primarily official email addresses and a handful of telephone
numbers associated with government officials – was supposedly *non-public*.  Xclaim's review

Hogan Lovells US LLP is a limited liability partnership registered in the District of Columbia.  "Hogan Lovells" is an international legal practice that includes Hogan Lovells US LLP and Hogan Lovells International LLP, with offices in:  Alicante  Amsterdam  Baltimore  Beijing  Birmingham  Boston  Brussels  Colorado Springs  Denver  Dubai  Dusseldorf  Frankfurt  Hamburg  Hanoi  Ho Chi Minh City  Hong Kong  Houston  Johannesburg  London  Los Angeles  Luxembourg  Madrid  Mexico City  Miami  Milan  Minneapolis  Monterrey  Moscow  Munich  New York  Northern Virginia  Paris  Perth  Philadelphia  Rio de Janeiro  Rome  San Francisco  São Paulo  Shanghai  Silicon Valley  Singapore  Sydney  Tokyo  Warsaw  Washington DC  Associated offices: Budapest  Jakarta  Shanghai FTZ  Ulaanbaatar  Zagreb.  Business Service Centers:  Johannesburg  Louisville.  For more information see www.hoganlovells.com

indicates that nearly all of the listed information is indeed publicly available, on government websites and elsewhere. Indeed, one exhibit – an email chain about Xclaim apparently sent to the Court, along with other judges and government officials – was itself contemporaneously sent to more than 40 non-governmental private law firm recipients *and two Bloomberg News reporters* and then forwarded to numerous bankruptcy professionals. Xclaim does not understand how such widely circulated official contact details could be "non-public" in any material sense, and most if not all of the "personally identifiable information" in the Xclaim Submission fits that description, at least so far as Xclaim can tell.

*Second*, the OSC does not cite any rule prohibiting the filing of documents containing contact information for federal officials (non-public or otherwise), and so far as Xclaim is aware, there is none. Rule 9037 of the Federal Rules of Bankruptcy Procedure, governing "Privacy Protection for Filings Made with the Court," does not require the redaction of governmental email addresses. Neither do this Court's local rules or electronic filing protocols, which simply direct compliance with Bankruptcy Rule 9037. Indeed, the Southern District of New York's electronic filing guidelines do not even include official email addresses or phone numbers as the type of information over which *caution* should be exercised. Xclaim does not believe it would be reasonable or consistent with due process for the Court to sanction Xclaim for making a filing that no applicable rule barred or even suggested was improper.

*Third*, sanctions are unwarranted for several additional reasons. Because the OSC does not explain the authority for any potential sanctions or identify the specific conduct considered to be sanctionable – again, Xclaim does not know what information from the Xclaim Submission the Court considers to be non-public or why filing it was supposedly wrongful – the OSC cannot support the imposition of sanctions under Second Circuit precedent. Procedural issues aside, even if the Court concluded that the Xclaim Submission contained non-public PII and that its filing created any security risks, Xclaim could never have anticipated such a conclusion *ex ante*, given the inherently public nature of official contact information generally and the volume of contact information that was already public for these particular public officials. Nor are any other traditional indicia of sanctionable conduct, like a history of misconduct, present here.

More generally, there was no bad faith or improper purpose for the Xclaim Submission or its exhibits; the Xclaim Submission was made in direct response to a prior submission by Kroll Restructuring Administration LLC ("Kroll") containing a series of gratuitous attacks on Xclaim, and the exhibits were germane to Xclaim's arguments. Xclaim's good faith is further bolstered by the fact that Xclaim consulted with its counsel before filing the September 22 submission, including sharing drafts of the entire submission, and Xclaim's counsel did not advise Xclaim that the exhibits should be redacted or filed under seal.

"Courts in this Circuit do not impose sanctions lightly," *In re Chase*, 372 B.R. 142, 152 (Bankr. S.D.N.Y. 2007) (Glenn, J.), and as explained above and in more detail below, Xclaim respectfully submits that sanctions are unwarranted in connection with the Xclaim Submission. Xclaim is prepared to answer any questions the Court may have at the hearing on this matter.

I.      BACKGROUND:  The Xclaim Submission.

On August 25, 2022, the Court instituted this miscellaneous proceeding by directing each Approved Claims Agent to file a notice on the docket that includes, among other things, "a description of any current or former business arrangement with Xclaim."  ECF No. 1 at 2.

On September 16, 2022, Kroll filed a Notice and Statement in this proceeding that went far beyond the Court's instructions.  ECF No. 11 (the "Kroll Submission").  The first two pages reported on the extent of Kroll's business with Xclaim – none – as the Court had requested.  *See* ECF No. 11 at 1-2.  But Kroll then proceeded to gratuitously offer an "Additional Statement" and "Rationale" for that statement, which consisted of a series of legal assertions and disparaging claims about Xclaim more broadly.  *Id.* at 3-11.  As the Xclaim Submission explained, Xclaim had no prior intention of engaging on this docket until the Kroll Submission was filed, and Xclaim did so only then to correct and supplement the record, including by illustrating Xclaim's extensive efforts to vet its business model and plans to enter into arrangements with claims agents to obtain public claims data from public sources.[1]

Among other things, the Xclaim Submission described Xclaim's transparent dialogue since 2019 with the Delaware Bankruptcy Court, U.S. Trustee, and this Court, which involved detailed presentations of Xclaim's plans.  In support of its rebuttal of Kroll's allegations, Xclaim attached certain correspondence, including with federal officials, demonstrating that numerous government officials and industry professionals agreed with Xclaim's interpretation of the law and/or did not object to Xclaim's business plans.

Notably, Xclaim attached an email exchange that began in late 2021 and continued throughout the first half of 2022 when an anonymous party first questioned the appropriateness of claims agents entering into partnership agreements with Xclaim to enable Xclaim to digitize the process of buying and selling claims in an email sent to more than 50 different government officials, dozens of private-firm restructuring professionals,[2] and two *Bloomberg News* reporters. *See* ECF No. 16 at 52-64 (the "2021-22 Email Chain").  The exhibits submitted as part of the Xclaim Submission provided necessary context and belie Kroll's assertions.

The Kroll Submission also explicitly put specific communications between Xclaim and government officials at issue.  For one thing, Kroll described "Xclaim's quest for Kroll's electronic claims data" as "egregious," and referenced and attached a July 25, 2022 letter from Xclaim to Kroll, which Kroll described as follows:  "Xclaim asserted that the Office of the Clerk of the Court had 'instructed [Xclaim] to contact [Kroll] directly' for such record."  ECF No. 11 at 6. Accordingly, Xclaim responded to those specific allegations by attaching as Exhibit A to the Xclaim Submission, a July 25, 2022 email from Xclaim to Kroll (copying the Clerk of the Court)

---

[1] Pursuant to Xclaim's arrangements with claims agents, Xclaim only received or had access to publicly available claims data, data that (pursuant to this Court's form order) was required to be made available on a public website.  To Xclaim's knowledge, it has never received or had access to non-public claims data.  Further, Xclaim has never, under any of its arrangements, had the ability to modify the official claims register maintained by a claims agent in any case.

[2] One of the recipients was a bankruptcy professional from the undersigned's firm.

attaching the public data request, and subsequent correspondence with Kroll and the Clerk of the Court concerning the same subject matter.  *See* ECF No. 16 at 6-28.

## II.    ARGUMENT:  There Is No Basis to Impose Sanctions Based on the Xclaim Submission.

A.    *The "Personally Identifiable Information" Included in the Xclaim Submission's Exhibits Was Entirely or Almost Entirely Public, or in the Alternative Non-Confidential.*

The OSC's premise is that certain exhibits to the Xclaim Submission "included *non-public* personally identifiable information" of certain categories of government officials and employees. The OSC does not explain which PII in the Xclaim Submission's exhibits was non-public (much less confidential or sensitive), and Xclaim has been unable to locate much if any PII that is not already known to the public and/or freely available online.

After carefully re-reviewing the exhibits to its submission, Xclaim has identified the following PII:

- 57 governmental email addresses, of which 51 appear to be associated with natural persons (with the remainder being official inboxes for certain regions of the U.S. Trustee program);

- Of those 51 email addresses that appear to be associated with natural persons[3]:
    o 31 are usdoj.gov addresses
    o 12 are nysb.uscourts.gov addresses
    o 5 are deb.uscourts.gov addresses
    o 3 are ao.uscourts.gov addresses

- In addition to these email addresses, the exhibits also included two "work" telephone numbers for government officials, and one cell phone number.

Xclaim has also attempted to determine what, if any, of this PII could be considered non-public.  Xclaim's review indicates that 51 of the 57 listed email addresses are publicly available. Xclaim is prepared to make the results of this analysis available to the Court if it would be useful, and will bring copies of the relevant materials to the show-cause hearing, but the cited email addresses appear in a number of different public online sources, including: (1) on other government sources, including on PACER and other websites; (2) on state bar membership websites, where many of the relevant attorneys have listed their official "work" email addresses; and (3) other bar or industry-focused websites, where official "usdoj.gov" or "uscourts.gov" addresses appear commonly, and are not (so far as Xclaim is aware) treated confidentially in any respect.

---

[3] Xclaim has not identified any instance where the *fact* of an individual's governmental role was previously non-public.

Of the six email addresses for which Xclaim has not been able to find pre-existing public online usage, five appear to be email addresses associated with judges of this Court and the Delaware Bankruptcy Court, and one appears to be linked to an official at the Administrative Office of the U.S. Courts.  All six of these email addresses were listed as recipients on the 2021-22 Email Chain.  However, Xclaim has no independent knowledge of whether any of these email addresses are valid or accurate.[4]

Xclaim is unclear how any of the six email addresses included on the 2021-22 Email Chain could reasonably be considered non-public.  At a minimum, those six email addresses were long ago disclosed to dozens of non-governmental recipients, including two *Bloomberg News* reporters.  Xclaim is not aware of any action taken by the Court or anyone else in connection with those "disclosures," strongly suggesting that the email addresses are either not "non-public" or there is no obvious harm in having those addresses circulated.[5]  And Xclaim is not aware of any information suggesting that these email addresses are "confidential," in the sense that they are intended to be non-public and are maintained that way, as opposed to simply not being presently available online.

Of the three phone numbers included in the Xclaim submission, two are confirmed as public, and the third – a cell phone number – was included in the signature block of an email this individual sent Xclaim (a member of the public) and listed on this individual's membership profile on an industry website, suggesting that the phone number is not "non-public" in any material sense, and that its inclusion in the Xclaim submission poses no security risk.

For these reasons, then, Xclaim respectfully submits that the Xclaim Submission's exhibits included only a *de mimimis* amount of "non-public personally identifiable information," if any.

B.      *The OSC Does Not Cite, and Xclaim is Not Aware of, Any Rule Prohibiting the Public Filing of Non-Public Personally Identifiable Information.*

The OSC does not state that the Xclaim Submission's exhibits violated any applicable rules, or more broadly explain why the electronic filing of documents containing official contact information for government officials would be wrongful.  Xclaim is not aware of any such rule or principle.  Indeed, the applicable electronic filing rules appear to specify which types of PII are so

---

[4] Xclaim was able to obtain valid email addresses for each of the five federal judges referenced in the 2021-2022 Email Chain through publicly available sources, including government websites.

[5] These six email addresses follow standard email address conventions.  For example, the fact that officials at the Administrative Office of the U.S. Courts commonly use the email address convention of "(First Name) UNDERSCORE (Last Name) AT ao.uscourts.gov" is readily discernable from public Administrative Office materials, among other sources.  *See, e.g.*, https://www.probono.net/deathpenalty/calendar/attachment.342227; https://www.fd.org/sites/default/files/program_materials/2021/sawi/email_attachment_saw_announcement_8_31_21.pdf; *see also* https://www.opm.gov/retirement-services/benefits-officers-center/agency-benefits-officers/.  Thus, even if any particular Administrative Office email address might not be readily verifiable online, it would be easy to surmise such an address based on publicly available information.

sensitive that they must be redacted before filing – and contact information for public officials is not among them.

To start, this Court's Procedures for the Filing, Signing and Verification of Documents by Electronic Means[6] contains a paragraph addressing "Privacy Guidelines," which states:

> Anyone filing documents with the Court shall comply with all guidelines pertaining to the privacy of individuals, including the provisions of Federal Rule of Bankruptcy Procedure 9037 and any guidelines implementing the E-Government Act of 2002.[7] Among the privacy guidelines is the mandate to redact the first five digits of individuals' Social Security Numbers in any document intended for filing with the Court.

That mirrors this Court's local rules, which likewise require compliance with Fed. Bankr. R. 9037, but otherwise impose no particular privacy-related restrictions.  *See* S.D.N.Y. Local Bankr. R. 9037-1.[8]

Rule 9037, in turn, governs "Privacy Protection for Filings Made with the Court" across bankruptcy courts nationwide, and it expressly sets out when filings must be redacted for privacy purposes.  But Rule 9037 requires redactions only under the following limited circumstances: where the filing "contains an individual's social-security number, taxpayer-identification number, or birth date, the name of an individual, other than the debtor, known to be and identified as a minor, or a financial-account number." Fed. R. Bankr. P. 9037(a).  In that respect, Rule 9037 mirrors Rule 5.2 of the Federal Rules of Civil Procedure, which imposes filing restrictions on that same limited set of personal identifiers, and not others.

While they may not be directly applicable here, the Electronic Case Filing Rules & Instructions for the United States District Court for the Southern District of New York provide a useful reference point.  They detail which categories of personal information must be redacted in civil and criminal cases – and again, official email addresses and contact information for government officials are not among the regulated categories.[9]  *See* S.D.N.Y. ECF Rule 21.3 (requiring the redaction of documents containing the following personal data identifiers:  social

---

[6] *See* https://www.nysb.uscourts.gov/sites/default/files/5005-2-procedures.pdf.

[7] The E-Government Act of 2002 imposes requirements on federal government agencies in order to promote the protection of privacy, including requiring agencies to conduct privacy reviews.  It is not relevant to the propriety of the Xclaim Submission.

[8] The local rules state that "personal identifier data or information concerning a minor individual" should be restricted from public access by the Clerk (if the Clerk discovers such data or information), but do not require the Clerk to take any steps to restrict access to personal identifier data or information of non-minors.  *Id.*

[9]
https://nysd.uscourts.gov/sites/default/files/pdf/ecf_rules/ECF%20Rules%20050222%20FINAL.pdf

security numbers, names of minor children, dates of birth, financial account numbers, and (in criminal cases) home addresses) (citing Fed. R. Civ. P. 5.2). The rules go on to state that:

> *Caution should be exercised* when filing documents that contain the following:
>
> • Personal identifying numbers (PIN #'s), such as a driver's license number
> • Medical records, treatment, and diagnosis
> • Employment history
> • Individual financial information
> • Proprietary or trade secret information
> • Information regarding an individual's cooperation with the government

*Id.* Rule 21.4 (emphasis added). It is notable that filing documents containing official email addresses and contact information for government officials is not just *allowed* by the S.D.N.Y. e-filing protocol; that type of information is not even included among the types of information for which *caution* should be exercised.

If anything, Xclaim lacked the authority to redact email addresses and telephone numbers for government officials. Generally speaking, there is a strong presumption and public policy in favor of public access to court records, including bankruptcy court filings. *See In re Motors Liquidation Co.*, 561 B.R. 36, 41 (Bankr. S.D.N.Y. 2016); *In re Borders Grp., Inc.*, 462 B.R. 42, 46 (Bankr. S.D.N.Y. 2011); *In re Food Mgmt. Grp., LLC*, 359 B.R. 543, 553-55 (Bankr. S.D.N.Y. 2007) ("The public interest in openness of court proceedings is at its zenith when issues concerning the integrity and transparency of bankruptcy court proceedings are involved"). For that reason, Section 107(a) of the Bankruptcy Code provides that "[e]xcept as provided in subsections (b) and (c) and subject to section 112, a paper filed in a case under this title and the dockets of a bankruptcy court are public records and open to examination by an entity at reasonable times without charge." 11 U.S.C. § 107(a). And Section 107(c) in turn provides that a court may only order personally identifiable information to be sealed when it finds "for cause" that "disclosure of such information *would create undue risk of identity theft or other unlawful injury* to the individual or the individual's property." 11 U.S.C. § 107(c) (emphasis added). There is thus no presumption that PII of non-minors filed with a bankruptcy court should be sealed; to the contrary, the presumption runs in the opposite direction entirely.

Xclaim is thus unclear whether the Court considers Xclaim to have violated any applicable rules or procedures, and if so which ones and why. Xclaim does not understand itself to have violated any of the relevant electronic filing rules – which, on their face, do not address the circumstances present here – and respectfully submits that this strongly cuts against the notion that Xclaim has done anything sanctionable.

C.   *There Is No Basis to Impose Sanctions.*

The OSC does not cite any particular source of authority for potential sanctions against Xclaim. And none of the sources of which Xclaim is aware would support the issuance of sanctions in these circumstances. The Xclaim Submission was made in good faith, so that Xclaim could defend itself against a gratuitous set of smears from Kroll, and with no notice that the filing

violated any relevant rules or could create any security risks. Xclaim is greatly concerned that it
has already suffered significant reputational and financial harm as a result of these proceedings.
Sanctions are unwarranted in such circumstances.

*First*, sanctions are unwarranted here because the OSC did not provide Xclaim with
adequate due process. "When the court intends to impose sanctions, proper notice of the specific
conduct alleged to be sanctionable and the authority under which the court considers the imposition
of sanctions must be given to afford the [party facing sanctions] a chance to be heard on the
matter." *In re Chase*, 372 B.R. at 152. "At a minimum, the notice requirement mandates that the
subject of a sanctions motion be informed of: (1) the source of authority for the sanctions being
considered; and (2) the specific conduct or omission for which the sanctions are being considered
so that the subject of the sanctions motion can prepare a defense." *Schlaifer Nance Co., Inc. v.
Estate of Warhol,* 194 F.3d 323, 334 (2d Cir. 1999).

As noted above, the OSC does not satisfy this standard; while it generally informed Xclaim
that the Court was contemplating sanctions based on the filing of unspecified "non-public
personally identifiable information," the OSC disclosed neither "the source of authority for the
sanctions being considered" nor "the specific conduct" at issue, including what PII the Court
considered non-public, much less why the filing of any such PII violated any rule or was otherwise
wrongful. Accordingly, under Second Circuit precedent, the OSC cannot support the imposition
of sanctions.

*Second*, Xclaim respectfully submits that there is no factual or legal basis for imposing
sanctions. Xclaim appreciates that "[b]ankruptcy courts possess various sources of sanctions
authority, including Fed. R. Bankr. P. 9011, 28 U.S.C. § 1927, and the court's inherent power."
*In re Plumeri*, 434 B.R. 315, 327 (S.D.N.Y. 2010):

- Fed. R. Bankr. P. 9011(c) authorizes sanctions if there is a violation of Rule
  9011(b), which requires that submissions to the court: (1) are not made for an
  improper purpose, such as to harass or cause unnecessary delay or costs; (2) contain
  claims, defenses and legal contentions that are warranted by existing law; and (3)
  contain allegations and/or denials of factual contentions that have evidentiary
  support or are likely to have evidentiary support.

- Under 28 U.S.C. § 1927, "[a]ny attorney or other person admitted to conduct cases
  in any court of the United States or any Territory thereof who so multiplies the
  proceedings in any case unreasonably and vexatiously may be required by the court
  to satisfy personally the excess costs, expenses, and attorneys' fees reasonably
  incurred because of such conduct."

- Finally, "[i]nherent-power sanctions ordinarily require a clear showing of bad faith
  on the part of the party to be sanctioned. Imposition of sanctions under a court's
  inherent powers requires a specific finding that [the party facing sanctions] acted
  in bad faith, and . . . are appropriate only if there is clear evidence that the conduct
  at issue is (1) entirely without color and (2) motivated by improper purposes." *In*

*re Plumeri*, 434 B.R. at 328 (internal quotations omitted).

"In the exercise of discretion to issue sanctions . . . courts consider a variety of factors, such as: (a) willfulness or bad faith of the noncompliant party; (b) the history, if any of noncompliance; (c) the effectiveness of lesser sanctions; (d) whether the noncompliant party had been warned about the possibility of sanctions; (e) the client's complicity; and (f) prejudice to the moving party." *In re The 1031 Tax Grp., LLC*, 2010 WL 2851300, at *6 (Bankr. S.D.N.Y. July 16, 2010) (Glenn, J.) (internal quotations omitted).

But "[c]ourts in this Circuit do not impose sanctions lightly." *In re Chase*, 372 B.R. at 152. And all of the pertinent considerations cut against the issuance of sanctions here.

**Lack of notice.** With respect to the issue of notice generally, Xclaim had no notice that any of the personally identifiable information in the Xclaim Submission was non-public, or could create any security risks if publicly filed. As noted above, the vast majority of the contact information at issue was already public (often in multiple forms). That is no surprise; the email addresses at issue are contact points for public officials, and it makes eminent sense that the public should be in a position to contact public officials about matters of public business and governance. Indeed, many of the email addresses set out in the Xclaim Submission are publicly listed on DOJ and court websites. More generally, it is entirely commonplace for government employees' contact information to be publicized or at least used publicly without note. To take a few additional examples:

- A uscourts.gov email address for the Court is listed on the website of Columbia University, as public contact information.[10] Other uscourts.gov email addresses associated with judges of this Court are available, among other places, on the New York Unified Court System website and the American Bankruptcy Institute's Membership Directory.

- The official website for the National Conference of Bankruptcy Judges makes publicly available what appear to be official email addresses of numerous actively serving federal judges.[11]

- The email address of the now former director of the Court's Administrative office, James C. Duff, has been publicly revealed by the Senate Judiciary Committee.

- The Congressional Directory publishes official telephone numbers for high-ranking officials across the U.S. federal court system, including for the Administrative Office.

These are just examples; there are countless other instances of governmental contact information being used publicly without note. Thus, even if some particular aspect of the particular contact

---

[10] *See* https://www.law.columbia.edu/faculty/martin-glenn

[11] *See* https://cdn.ymaws.com/www.ncbj.org/resource/resmgr/docs_public/2021EndowmentCommittee.pdf

information in the Xclaim Submission could be deemed non-public, Xclaim had no notice of that, or that this type of contact information could be considered genuinely confidential or sensitive. Put another way, a uscourts.gov email address is not a red flag, under the electronic filing rules or common, day-to-day shared experience.  The consistent public usage of such contact information cuts squarely against the notion that Xclaim filed the exhibits to the Xclaim Submission with any sort of bad faith.

Xclaim notes here for the record that the Kroll Submission – to which the Xclaim Submission responded – includes at least one unredacted email address of a Department of Justice official.  Xclaim does not believe that this filing reflects any impropriety on Kroll's part – indeed, no action appears to have been taken to restrict access to the Kroll Submission – but rather notes the point as further evidence that Xclaim could not reasonably have been on notice that the exhibits to the Xclaim Submission required redaction or presented security concerns.

**Other considerations.**  None of the other indicia of sanctionable behavior are present here. Xclaim has no history of non-compliance with ECF filing rules or other privacy-related issues; Xclaim had no warning that sanctions were possible here (or, as described above, that any electronic filing rule was in play); a remedy less than sanctions is available (partially sealing and redacting the Xclaim Submission, assuming the Court considers that sufficient cause exists under section 107(c)).  Nor is Xclaim aware of any prejudice that has ensued, though as stated above, Xclaim is willing to assist as may be useful to the Court.

Sanctions would also be inappropriate because Xclaim showed good faith by seeking the advice of counsel before submitting the Xclaim Submission.  *See Knox v. John Varvatos Enterprises Inc.,* 512 F. Supp. 3d 470, 494 (S.D.N.Y. 2021) ("Reliance on advice of counsel certainly can provide the basis for a good faith defense."); *see also In re Actos Antitrust Litig.*, No. 113CV09244RASDA, 2022 WL 4282294, at *8 (S.D.N.Y. Sept. 16, 2022) ("Reliance on the advice of counsel is one of many defenses that Takeda may assert . . . as part of a . . . defense that Takeda had a good faith basis to believe its conduct was legitimate under the governing law and regulations.").[12]

Specifically, Xclaim consulted with its outside counsel, Latham & Watkins LLP, who reviewed and provided comments on drafts of the Xclaim Submission before it was filed.  Xclaim and its counsel specifically discussed redactions of exhibits to avoid disclosing attorney-client communications, and Xclaim's counsel never indicated that any redactions were required to protect the confidentiality of any government employees or their contact information, or otherwise raised any concerns about publicly filing Xclaim's emails with government employees.  Xclaim's reliance on advice of counsel further illustrates that Xclaim acted in good faith in filing the Xclaim Submission and had no reason to believe the official contact information of government employees needed to be redacted.

---

[12] Courts have recognized that good faith reliance on the advice of counsel may demonstrate a lack of specific intent to violate the law.  *See United States v. Quinones*, 2013 WL 4048254, at *3 (E.D.N.Y. Aug. 9, 2013); *see also Stichting Ter Behartiging Van de Belangen Van Oudaandeelhouders In Het Kapitaal Van Saybolt Int'l B.V. v. Schreiber*, 327 F.3d 173, 183 (2d Cir. 2003).

\*\*\*

In sum, Xclaim had no reason to believe it would be improper to file any of the exhibits to the Xclaim Submission.  Xclaim's submission was entirely proper and made in good faith.  There is therefore no basis to impose sanctions based on the Xclaim Submission.

Xclaim intends to be represented by the undersigned at the scheduled-show cause hearing. Regrettably, Mr. Carey is unavailable on October 20, 2022, due to a conflict with the Annual Conference of the National Conference of Bankruptcy Judges.  We thus respectfully request that the Court consider adjourning the show-cause hearing for a date on which Mr. Carey can attend, and are happy to work with the Court to find alternative dates.

Respectfully submitted,

HOGAN LOVELLS US LLP

_/s/ John D. Beck_
John D. Beck
390 Madison Avenue
New York, NY 10017
Tel.: (212) 918-3076
Fax: (212) 918-3100
john.beck@hoganlovells.com

Kevin J. Carey
*(Admitted pro hac vice)*
1735 Market St.
Philadelphia, PA 19103
Tel.: (267) 675-4614
Fax: (267) 675-4601
kevin.carey@hoganlovells.com

*Attorneys for Xclaim, Inc.*