```
UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
In re:                                                       :
                                                             :
MATTER OF CERTAIN CLAIMS AND                                 :
NOTICING AGENTS' RECEIPT OF FEES IN                          :    Misc. Pro. No. 22-00401(MG)
CONNECTION WITH UNAUTHORIZED                                 :
ARRANGEMENTS WITH XCLAIM INC.                                :
                                                             :
-------------------------------------------------------------X
```

**UNITED STATES TRUSTEE'S STATEMENT AND RESERVATION OF RIGHTS IN RESPONSE TO ORDER TO SHOW CAUSE WHY THE XCLAIM ACCOUNTHOLDERS SHOULD NOT BE SANCTIONED FOR PUBLICLY FILING PERSONALLY IDENTIFIABLE INFORMATION OF FEDERAL JUDGES AND OTHER <u>GOVERNMENT OFFICIALS</u>**

TO:   THE HONORABLE MARTIN GLENN,
      CHIEF UNITED STATES BANKRUPTCY JUDGE:

William K. Harrington, the United States Trustee for Region 2 (the "United States Trustee"), respectfully files this *Statement and Reservation of Rights* in response to the Court's *Order to Show Cause Why the Xclaim Accountholders Should Not be Sanctioned for Publicly Filing Personally Identifiable Information of Federal Judges and Other Government Officials* [ECF No. 17] (the "Xclaim OSC"), and the *Letter of Xclaim, Inc. in Response to Order to Show Cause* [ECF No. 25] (the "Xclaim Letter"), filed in the above referenced miscellaneous proceeding (the "Miscellaneous Proceeding").

## <u>Background</u>

1.  On July 29, 2022, in the chapter 11 proceedings of *In re Madison Square Boys & Girls Club, Inc.*, Case No 22-10910 (SHL), Judge Lane entered an order approving the *Application to Employ Epiq Corporate Restructuring LLC as the Debtors' Claims and Noticing Agent pursuant to Section 156(C)* (the "Epiq Retention Order"), subject to the condition that Epiq Corporate Restructuring LLC ("Epiq") "exclude the above captioned case from any file sharing

arrangement it maintains with X-Claim, Inc., . . . or with any other entity operating a marketplace or similar service to facilitate trade or resolution of claims held against bankruptcy or insolvent entities." See Case No. 22-10910-SHL, ECF No. 86.

2. Subsequent to the Epiq Retention Order, on August 18, 2022, Judge Lane issued the *Memorandum of Decision Re: Motion To Appoint Epiq Corporate Restructuring, LLC As Claims And Noticing Agent* [Case No. 22-10910-SHL, ECF No. 143] (the "Madison Square Decision") concerning the retention of Epiq as an interim custodian of court records and the debtors' claims and noticing agent. See *In re Madison Square Boys & Girls Club, Inc.*, 642 B.R. 487 (Bankr. S.D.N.Y. 2022).

3. In the Madison Square Decision, the Court concluded that it was impermissible for Epiq to have entered into its business arrangement with Xclaim, whereby Epiq received fees from Xclaim in exchange for sharing claims data that Epiq maintained in its capacity as an interim custodian of court records and a claims and noticing agent, pursuant to 28 U.S.C. § 156(c) and the Court's *Protocol for the Employment of Claims and Noticing Agents Under 28 U.S.C. § 156(c)*.

### The Miscellaneous Proceeding

4. Following the Madison Square Decision, this Court independently commenced the instant Miscellaneous Proceeding by order entered on August 25, 2022 [ECF No. 1] (the "MP Order"), pursuant to which the Court directed each Approved Claims Agent (as defined in the MP Order), to file a notice on or before September 16, 2022, setting forth, *inter alia*:

- a description of any current or former business arrangement with Xclaim, the status of any such arrangement, a copy of any and all agreements memorializing any such arrangement, and list of all dates in which the Approved Claims Agent transmitted claims data to Xclaim other than in a format as provided to the public on the Approved Claims Agent's website;

- an accounting of any and all fees, costs, and reimbursements received, or to be received, from Xclaim through the date of the filing of the notice including the date, or anticipated date (if payment is expected in the future), of each payment; [and]

- a list of the bankruptcy cases, with a notation indicating the district in which the case was filed, in which the Approved Claims Agent served as a court-approved claims agent and Xclaim facilitated at least one claims trade from which the Approved Claims Agent received, or will receive, a Fee or any other payment or reimbursement from Xclaim[.]

MP Order at 2-3 (footnotes omitted).

5. On or before September 16, 2022, each of the Approved Claims Agents filed its respective response.

6. On September 22, 2022, Xclaim, Inc. ("Xclaim") filed on the docket of the Miscellaneous Proceeding, through Mr. Ryan Vollenhals (and together with Matthew Sedigh, the "Xclaim Accountholders"), the *Statement of Matthew Sedigh on Behalf of Xclaim Inc.* [ECF No. 16] (the "Xclaim Submission"). The Xclaim Submission contained various exhibits in support of Xclaim's position.

7. Thereafter, the Court restricted public access to the Xclaim Submission on the Electronic Case Filing ("ECF") docket of the Miscellaneous Proceeding, due to the security risks posed by the Xclaim Submission, which contained "non-public personally identifiable information of multiple federal judges, high-ranking officers of the Administrative Office of the U.S. Courts, high-ranking officers of the Department of Justice, as well as court personnel[.]" *See* Docket Entry at ECF No 16 ("RESTRICTED; CONTAINS CONTACT INFORMATION OF GOVERNMENT OFFICIALS").

8. On September 23, 2022, the Court entered the Xclaim OSC, by which the Court directed, *inter alia*, that:

3

>   "Xclaim Accountholders shall file a written response to this Order to Show Cause on or before 5:00 p.m., October 6, 2022. The United States Trustee may file a response to this Order to Show Cause or the response filed by Xclaim Accountholders on or before 5:00 p.m., October 13, 2022. No further filings may be filed by the Xclaim Accountholders."

Xclaim OSC at 2.

9.      On October 6, 2022, Xclaim, through its counsel, filed the Xclaim Letter in response to the Xclaim OSC.

## Statement and Reservation of Rights

The United States Trustee has reviewed the Xclaim Submission, Xclaim OSC, and Xclaim Letter and hereby submits this Statement and Reservation of Rights.

The Court commenced this Miscellaneous Proceeding as an independent inquiry into the existence of any business arrangements the Approved Claims Agents had with third parties, in which the Approved Claims Agents, acting in their capacity as an interim custodian of court records and a claims and noticing agent pursuant to 28 U.S.C. § 156(c), would be paid or reimbursed for sharing files or other claims information with entities operating a market place or similar service to facilitate trades or the resolution of claims held against bankrupt or insolvent entities. As noted in the Madison Square Decision, these types of services were not services that the Clerk of the Court could have performed. The MP Order directed certain disclosures from the Approved Claims Agents of information relevant to such inquiry. As Xclaim is not an Approved Claims Agent, Xclaim was not a party or subject to the MP Order. Xclaim, however, independently decided to file the Xclaim Submission.[1] In connection with the Xclaim Submission, Xclaim filed on the public docket multiple exhibits that contained correspondence with various members of the judiciary, the Department of Justice, and other government

---

[1] Xclaim has also appealed the Madison Square Decision to the District Court for the Southern District of New York. *See* Madison Square, Case No. 22-10910-SHL, ECF No. 181 (Notice of Appeal).

4

personnel and disclosed their contact information—primarily email addresses and telephone numbers.

Notwithstanding Xclaim's assertion that no non-public personally identifiable information ("PII") was disclosed in the Xclaim Submission, and that no authority or rule was cited for the potential imposition of any sanctions (*see* Xclaim Letter at 2, 4-8), the United States Trustee submits that it is well within the Court's discretion to determine if there were any security risk associated with the Xclaim Submission and to take appropriate action with respect to documents filed of record in a court proceeding. It is well established that the Bankruptcy Court has ample authority to issue sanctions or fashion remedies for parties' misconduct or to control its own proceedings. *See In re Plumeri*, 434 B.R. 315, 327 (S.D.N.Y. 2010) ("Bankruptcy courts possess various sources of sanctions authority, including Fed. R. Bankr. P. 9011, 28 U.S.C. § 1927, and the court's inherent power.") (internal footnote omitted); *Dahiya v. Kramer*, No. 13-CV-3079 DLI, 2014 WL 1278131, at *3 (E.D.N.Y. Mar. 27, 2014), *aff'd sub nom. In re Khan*, 593 F. App'x 83 (2d Cir. 2015) ("The inherent power to sanction is not governed by a specific rule or statute, but instead 'derives from the fact that courts are vested, by their very creation, with power to impose silence, respect, and decorum in their presence, and submission to their lawful mandates.'") (citations omitted).

Such remedies may include the removal of a party's access to or account with the Court's ECF system. *See In re Harmon*, No. 1074390 (AST), 2010 WL 3788052, at *4 (Bankr. E.D.N.Y. Sept. 22, 2010) (revoking attorney's ECF account privileges and access for 90 days); *Shukla v. Apple Inc.*, No. 21-CV-3287 (JMF), 2021 WL 5281371, at *3 (S.D.N.Y. Nov. 12, 2021) (revoking *pro se* litigant's ECF filing privileges for abusive filings); *see also In re Silver Realty Equities LLC*, No. 15-11172 (MEW), ECF No. 21 (Bankr. S.D.N.Y. Jan. 22, 2016)

(ordering, *inter alia*, cancellation of attorney's ECF system password); *In re Martin T. Flynn*, No. 14-36496 (CGM), ECF No. 25 (Bankr. S.D.N.Y. Sept. 16, 2014) (Order Revoking Electronic Filing Privileges of Daren A. Webber).

Indeed, the Xclaim OSC specifically references the Limited User E-Filing Access Agreement (the "ECF Agreement") that was executed and consented to by the Xclaim Accountholders. Under the terms of the ECF Agreement, the ECF account user acknowledges that "the Clerk's office has the right to terminate my e-filing access at any time in the event of any misuse of the account, *or for any other reason*." ECF Agreement ¶ 8 (emphasis added). Further, the Xclaim Accountholders were granted limited access under the ECF Agreement "for the purpose of filing electronically certain claims-related documents and/or affidavits of service." *Id.* ¶ 1. The filing of the Xclaim Submission appears to have gone beyond the limited scope of filing claims-related documents or affidavits of service. *See* United States Bankruptcy Court, Southern District of New York, Electronic Filing Procedures (promulgated pursuant to General Order 399) at I.A.6 ("The Clerk of Court retains the discretion to cancel the password of a System account holder with respect to: a) any individual who misuses the System or does not comply with the provisions contained in these Procedures[.]").

In sum, based on the above, Xclaim may be sanctioned, including by having its ECF privileges revoked, if the Court finds, in its discretion, that the Xclaim Submission impermissibly disclosed non-public PII or exceeded the scope of the Xclaim Accountholder ECF Agreement.

Finally, the United States Trustee reserves all rights to raise other arguments and issues pertaining to the Xclaim Submission and Xclaim Letter, as appropriate.

Dated: October 13, 2022
New York, NY

WILLIAM K. HARRINGTON,
UNITED STATES TRUSTEE, REGION 2

By:  *s/ Annie Wells*
Annie Wells
Andrea B. Schwartz
Trial Attorneys
Office of the United States Trustee
201 Varick Street, Room 1006
New York, New York 10014
Tel. (212) 510-0500

7