**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>MATTER OF CERTAIN CLAIMS AND NOTICING AGENTS RECEIPT OF FEES IN CONNECTION WITH UNAUTHORIZED ARRANGEMENTS WITH XCLAIM INC. | Misc. Proc. No. 22-mp-00401 (MG) |

### STRETTO, INC.'S SUPPLEMENTAL
### BRIEF IN OPPOSITION TO SANCTIONS

JENNER & BLOCK LLP
Richard Levin
Carl N. Wedoff
1155 Avenue of the Americas
New York, NY 10036
(212) 891-1601
rlevin@jenner.com
cwedoff@jenner.com

*Attorneys for Stretto, Inc.*

**TABLE OF CONTENTS**

I.  Stretto's Good Faith Conduct Does Not Warrant Sanctions..........................................2

    A.  Sanctions Are Not Warranted Under The Claims Agent Protocol.....................2

    B.  Sanctions Are Not Warranted Under This Court's Inherent Authority. ..........7

II. Sanctions Are Not Warranted Relating To Stretto's Disclosures. ...............................7

    A.  Neither Section 156(c) Nor The Claims Agent Protocol Required
        Disclosure of the Synchronization Agreement.....................................................7

    B.  Bankruptcy Rule 2014(a) Did Not Require Disclosure of the
        Synchronization Agreement. ..................................................................................9

    C.  Even If the Court Determines Xclaim Were a Party in Interest, It
        Should Not Sanction Stretto for Its Nondisclosure of Its Connection to
        Xclaim. .....................................................................................................................11

CONCLUSION ........................................................................................................................13

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Agiwal v. Mid Island Mortg. Corp.*,
  555 F.3d 298 (2d Cir. 2009) ...................................................................................................5

*In re Alpha Nat. Res., Inc.*,
  556 B.R. 249 (Bankr. E.D. Va. 2016) ...................................................................................11

*In re B.E.S. Concrete Prods., Inc.*,
  93 B.R. 228 (Bankr. E.D. Cal. 1988) ....................................................................................12

*In re Balco Equities Ltd., Inc.*,
  345 B.R. 87 (Bankr. S.D.N.Y. 2006) ....................................................................................12

*Bank Brussels Lambert v. Coan (In re AroChem Corp.)*,
  176 F.3d 610 (2d Cir. 1999) ...................................................................................................8

*In re Byington*,
  454 B.R. 648 (Bankr. W.D. Va. 2011) .................................................................................13

*In re Citation Corp.*,
  493 F.3d 1313 (11th Cir. 2007) ............................................................................................11

*In re Dental Profile, Inc.*,
  446 B.R. 885 (Bankr. N.D. Ill. 2011) .....................................................................................3

*In re EBW Laser Inc.*,
  333 B.R. 351 (Bankr. M.D.N.C. 2005) .................................................................................12

*In re El Comandante Mgmt. Co., LLC*,
  395 B.R. 807 (D.P.R. 2008) ..................................................................................................10

*In re EWC, Inc.*,
  138 B.R. 276 (Bankr. W.D. Okla. 1992) ..............................................................................12

*In re Flagstaff Foodservice Corp.*,
  29 B.R. 215 (Bankr. S.D.N.Y. 1983) .....................................................................................9

*In re Fletcher Int'l, Ltd.*,
  661 F. App'x 124 (2d Cir. 2016) ..........................................................................................11

*In re Fretter, Inc.*,
  219 B.R. 769 (Bankr. N.D. Ohio 1998) ................................................................................12

*In re Innkeepers USA Tr.*,
    448 B.R. 131 (Bankr. S.D.N.Y. 2011) ...................................................................................9

*Licensing by Paolo, Inc. v. Sinatra (In re Gucci)*,
    126 F.3d 380 (2d Cir. 1997) ...................................................................................................1

*In re Madison Square Boys & Girls Club, Inc.*,
    642 B.R. 487 (Bankr. S.D.N.Y. 2022) ...................................................................................1

*In re Matco Elec. Grp., Inc.*,
    383 B.R. 848 (Bankr. N.D.N.Y. 2008) .................................................................................12

*Michel v. Federated Dep't Stores (In re Federated Dep't Stores)*,
    44 F.3d 1310 (6th Cir. 1995) ................................................................................................13

*In re Midway Indus. Contractors*,
    272 B.R. 651 (Bankr. N.D. Ill. 2001) ...................................................................................12

*In re Public Serv. Co.*,
    88 B.R. 546 (Bankr. D.N.H. 1988) ........................................................................................9

*In re Raymond Prods. Grp., Inc.*,
    421 B.R. 891 (Bankr. N.D. Ill. 2009) ...................................................................................11

*In re Refco Inc.*,
    505 F.3d 109 (2d Cir. 2007) ...................................................................................................9

*Southern Blvd., Inc. v. Martin Paint Stores*,
    207 B.R. 57 (S.D.N.Y. 1997) ...............................................................................................10

*In re Texaco, Inc.*,
    81 B.R. 820 (Bankr. S.D.N.Y. 1988) .....................................................................................9

*United States v. Int'l Bhd. of Teamsters*,
    948 F.2d 1338 (2d Cir. 1991) .................................................................................................4

*Vergos v. Mendes & Gonzales PLLC (In re McCrary & Dunlap Const. Co., LLC)*,
    79 F. App'x 770 (6th Cir. 2003) ...........................................................................................11

*Yang v. Mic Network Inc.*,
    2022 WL 906513 (2d Cir. Mar. 29, 2022) .............................................................................4

**Statutes**

11 U.S.C. § 101(14) ................................................................................................................7, 8

11 U.S.C. § 327 .......................................................................................................... 9, 10, 11, 13

28 U.S.C. § 156(c) ...................................................................................................*passim*

28 U.S.C. § 1930 ..............................................................................................................4, 6

**Rules**

Fed. R. Bankr. P. 2014 ..........................................................................................2, 7, 9, 11

Fed. R. Bankr. P. 2014(a) ........................................................................................9, 10, 11

Fed. R. Bankr. P. 5003(b) ................................................................................................4, 6

Fed. R. Bankr. P. 9011 ..........................................................................................................3

Fed. R. Civ. P. 37 ..................................................................................................................5

S.D.N.Y. Bankruptcy Rule 5075-1 ......................................................................................5

**Other Authorities**

BLACK'S LAW DICTIONARY (11th ed. 2019) .......................................................................3

*Law Dictionary*, https://thelawdictionary.org/sanction/ .........................................................3

*Merriam-Webster Dictionary*, https://www.merriam-
    webster.com/dictionary/sanction .....................................................................................3

Stretto entered into a Synchronization Agreement with Xclaim with the good faith belief that the agreement complied with applicable law and would improve the transparency of the bankruptcy claims trading industry.[1] When *In re Madison Square Boys & Girls Club, Inc.*, 642 B.R. 487 (Bankr. S.D.N.Y. 2022), was issued, Stretto promptly suspended and then terminated the Synchronization Agreement.[2] The undisputed record in this proceeding establishes these facts.

If Stretto was wrong in entering into the Synchronization Agreement, Stretto sincerely apologizes. The integrity of the bankruptcy system is a fundamental priority for Stretto, so Stretto appreciates the gravity of the issues raised by the Court in this proceeding and believes this Court's initiation of this proceeding and the development of a full record serve both as reinforcement of those principles and as an important prophylactic to protect those principles.

However, sanctions should be reserved for bad faith conduct. There is none here. Thus, imposing sanctions or other consequences on Stretto for its conduct is neither necessary nor appropriate. Even if the Claims Agent Protocol permits removal from the list of approved claims agents for conduct short of bad faith, the "death penalty" would be grossly disproportionate to Stretto's conduct and should be reserved for egregious conduct.

---

[1] All citations to sections other than section 156 are to sections of the Bankruptcy Code and to Rules are to rules of the Federal Rules of Bankruptcy Procedure. Capitalized terms in this Supplemental Brief have the same meaning given to them in Stretto's *Brief in Opposition to Sanctions* (ECF Doc. # 37).

[2] This proceeding does not address whether the *Madison Square* decision was correct, as this Court has already stated that it agrees with the decision. (See Transcript of Nov. 17, 2022 ("**Hr'g Tr.**") at 25:14-21.) Although that decision is currently on appeal, *In re Madison Square Boys & Girls Club, Inc.*, Case No. 1:22-cv-07575-KPF (filed Sept. 6, 2022), the appeal might not resolve the legal question it decided. The sole appellant is Xclaim, who was not a party to the proceeding below. Whether Xclaim meets the "person aggrieved" standard for appellate standing is unclear. *See Licensing by Paolo, Inc. v. Sinatra (In re Gucci)*, 126 F.3d 380, 388 (2d Cir. 1997). Although Stretto does not challenge the *Madison Square* holding for purposes of this brief, it acknowledges the importance of the issue to the operation and integrity of the bankruptcy system. Nevertheless, it respectfully disagrees with the holding and reserves its rights.

In addition, as set forth below, neither section 156(c) nor Rule 2014 required disclosure of the Synchronization Agreement in declarations in support of applications for employment under 28 U.S.C. § 156(c) or section 327(a), because Xclaim was not a party in interest in any of the cases in which Stretto was employed. Even if disclosure were warranted, Stretto's omission was based on a good faith reading of section 156(c) and Rule 2014 that disclosure was not required, and Stretto never believed the relationship with Xclaim created any conflict that would have disqualified Stretto for employment.

Accordingly, Stretto respectfully requests that the Court terminate this proceeding immediately without assessing penalties or other sanctions. Every day this proceeding continues creates uncertainty in the marketplace for Stretto's services, and Stretto suffers real reputational damage in the form of lost engagement opportunities.[3]

## I.     Stretto's Good Faith Conduct Does Not Warrant Sanctions.

### A.   Sanctions Are Not Warranted Under The Claims Agent Protocol.

The Claims Agent Protocol permits removal of an Authorized Claims Agent from the list of approved agents for "failure to comply with the duties set out in this Protocol, as applicable, and with the provisions set out in a Section 156(c) Application and order may lead to removal of the claims and noticing agent's name from the list of approved agents." (Claims Agent Protocol at 2.) At the initial hearing in this proceeding, this Court suggested that because removal was not a "sanction" per se, any traditional limitations on the Court's authority to impose sanctions might not apply. (Hr'g Tr. at 37–38.) While the Court noted that the Court did not want to impose such a "death penalty," as the Court characterized it,

---

[3] In addition to this Supplemental Brief, Stretto relies on and incorporates by reference it *Brief In Opposition to Sanctions*, ECF Doc. # 37; the *Declaration of Eric Kurtzman in Support of Stretto, Inc.'s Brief in Opposition to Sanctions* (ECF Doc. # 36); and the *Declaration of Christopher Updike Providing Required Disclosures* (ECF Doc. # 51).

2

Stretto believes it appropriate to address this possibility given the crippling consequences that would come from such a penalty.

Removal constitutes a "sanction," because "sanction" generally includes any penalty for violation of a law as a means of enforcing the law. *See* "Sanction," BLACK'S LAW DICTIONARY (11th ed. 2019) ("A provision that gives force to a legal imperative by either rewarding obedience or punishing disobedience.."); "Sanction," *Merriam-Webster Dictionary*, https://www.merriam-webster.com/dictionary/sanction (last visited Jan. 12, 2023) (defining a sanction as a "detriment, loss of reward, or coercive intervention annexed to a violation of a law as a means of enforcing the law"); "Sanction," *The Law Dictionary*, https://thelawdictionary.org/sanction/ (last visited Jan. 12, 2023) (defining sanction as "a penalty or punishment provided as a means of enforcing obedience to a law"). That the Claims Agent Protocol authorizes removal does not make it any less a sanction, especially because it ties removal directly to a failure to comply with the Claims Agent Protocol and section 156(c).

Additionally, the Claims Agent Protocol makes removal permissive, not mandatory. (Claims Agent Protocol at 2 ("the failure to comply … *may* lead to removal of the claims and noticing agent's name from the list of approved agents." (emphasis added)).) In deciding whether to impose a discretionary sanction or penalty, courts should consider the reason for the violated rule or order and the purpose of the sanction or penalty, whether for deterrence, punishment, or compensation. *Cf. In re Dental Profile, Inc.*, 446 B.R. 885, 903 (Bankr. N.D. Ill. 2011) (discussing discretionary sanctions under Bankruptcy Rule 9011).

Removing Stretto from the list of approved claims agents is unnecessary to deter future conduct. Stretto believes this miscellaneous proceeding, the widespread attention it has received (including in well-read media in Stretto's industry), and the resulting adverse effect on Stretto's business are more than sufficient to deter Stretto as well as other claims

3

agents from entering into Synchronization Agreements or otherwise using claims agent data in that manner in the future, absent express Court authorization. Indeed, the *Madison Square* decision alone caused Stretto and other claims agents to terminate their agreements with Xclaim. Further penalties are not necessary to focus Stretto and other authorized claims agents on the requirements of the Claims Agent Protocol and limitations on claims agent activities set forth in *Madison Square*. Nor would removing Stretto from the list of approved claims agents serve the purpose of compensation, because removal by itself carries no payable financial penalty.

Instead, removal would serve only to punish Stretto. Such punishment should be governed by the bad faith standard limiting imposition of sanctions. An honest, good faith interpretation of the complicated interplay among 28 U.S.C. § 156(c), 28 U.S.C. § 1930, Rule 5003(b), Local Rule 5075-1, and the Claims Agent Protocol does not warrant such a punishment, much less a punishment with such devastating consequences for Stretto and its employees. *United States v. Int'l Bhd. of Teamsters*, 948 F.2d 1338, 1345 (2d Cir. 1991) (requiring bad faith for imposition of inherent authority sanctions in the Second Circuit); *see also Yang v. Mic Network Inc.*, 2022 WL 906513, at *3 (2d Cir. Mar. 29, 2022) (affirming denial of sanctions where neither party nor attorney acted in bad faith).

Even a lesser form of punishment—such as a ruling that Stretto's prior conduct should be considered in a court's decision on whether to approve Stretto as a claims agent in future cases, as this Court suggested at the prior hearing in this proceeding[4]—could have similar consequences. As long as the shadow of this proceeding lingers over Authorized Claims Agents, debtors or debtors' counsel might hesitate to employ them because the agent's employment faces an additional hurdle before approval. Indeed, as noted without dispute at

---

[4] Hr'g Tr. at 12:1–12:11.

4

the prior hearing, claims agents subject to this proceeding have already been told by potential clients that they would not be considered because of this proceeding, which has endured for at least five months, effectively penalizing the Authorized Claims Agents without any evidence of bad faith.

In addition, if bad faith case law does *not* govern the sanction of removal from the list or some other lesser consequence, there would be no apparent standard to govern this Court's decision, potentially granting this Court absolute discretion to take any action against Stretto for any reason or for no reason at all. Stretto does not understand the Court to be proposing such a position, so this Court should adopt a reasonable standard in determining any consequences for a violation of the Claims Agent Protocol. Sanctions for discovery violations under Federal Rule of Civil Procedure 37 provide a useful analogy. Although Rule 37 lists several permissible sanctions, including its own "death penalty"—dismissal of the action—it does not provide standards for when to impose them. The Second Circuit has ruled that the factors that should guide a district court's discretion in imposing this sanction "include (1) the willfulness of the non-compliant party or the reason for noncompliance; (2) the efficacy of lesser sanctions; (3) the duration of the period of noncompliance, and (4) whether the non-compliant party had been warned of the consequences of ... noncompliance." *Agiwal v. Mid Island Mortg. Corp.*, 555 F.3d 298, 302 (2d Cir. 2009) (omission in original, citations omitted). The first and fourth factors (intentionality and prior warning of the violation) together closely track the bad faith standard. As to the third factor—duration—the period of noncompliance was brief and ended promptly once Stretto became aware of this Court's view of the matter. Thus, Stretto maintains that the traditional bad faith standard applicable to imposition of sanctions is the appropriate standard here for any sanctions, and certainly, the "death penalty" of removal should face no lower bar.

5

Under such a standard, sanctions against Stretto are unwarranted. As the record makes clear, Stretto acted in good faith and promptly corrected the apparent violation before commencement of this proceeding, and Stretto has always attempted to comply faithfully with relevant court rules and policies in its dealings with the Clerk and this Court. *Stretto, Inc.'s Brief in Opposition to Sanctions* (ECF Doc. # 37); *Declaration of Eric Kurtzman in Support of Stretto, Inc.'s Brief in Opposition to Sanctions* (ECF Doc. # 36); *Declaration of Christopher Updike Providing Required Disclosures* (ECF Doc. # 51).

Even if this Court determines to impose sanctions or other consequences for Stretto's honest and inadvertent violation of the Claims Agent Protocol, such sanctions should be minimal and should recognize the reputational and financial penalty already incurred by Stretto by the existence of this proceeding for five months. In this proceeding this Court has already determined not to impose a business-crippling sanction on Xclaim for a plain violation of an express agreement with the Court, because of the importance of continued privileges to the operation of Xclaim's business.[5] Here, Stretto's conduct did not involve a direct or plain violation of any express prohibition in an agreement or order but instead, as noted above, involved a good faith interpretation of the complex interplay among 28 U.S.C. § 156(c), 28 U.S.C. § 1930, Rule 5003(b), Local Rule 5075-1, and the Claims Agent Protocol, consistent with the Congressional policy favoring release of clerks' electronic data in usable electronic form. Pub. L. 109-8, § 604, 119 Stat. 123-24 (2005). And Stretto has terminated its Synchronization Agreement with Xclaim, so no future violation is likely. Such conduct does not warrant any form of penalty or overhang of sanctions that would create uncertainty in the marketplace and impair Stretto's claims and noticing agent business.

---

[5] *Memorandum Opinion and Order Striking the Xclaim Submission and Sanctioning the Xclaim Accountholders* (ECF Doc. # 50) ("**Xclaim Opinion**") at 34.

6

### B. Sanctions Are Not Warranted Under This Court's Inherent Authority.

Similarly, as Stretto argued in its prior brief, sanctions under the Court's inherent authority or section 105(a) are not justified unless a party acts in bad faith in violation of a statute, rule, order, or other duty or obligation to the court that is clear and unambiguous. The record in this proceeding supports only a finding that Stretto acted at all times in good faith with respect to its role as an Authorized Claims Agent and in connection with the Synchronization Agreement. Stretto does not understand the United States Trustee to suggest otherwise. As such, sanctions against Stretto for entering into the Synchronization Agreement with Xclaim while Stretto was an Authorized Claims Agent are not appropriate under this Court's inherent authority or section 105(a).

## II.    Sanctions Are Not Warranted Relating To Stretto's Disclosures.

### A. Neither Section 156(c) Nor The Claims Agent Protocol Required Disclosure of the Synchronization Agreement.

Neither section 156(c) nor the Claims Agent Protocol contains an express disclosure requirement, such as Bankruptcy Rule 2014. The Claims Agent Protocol provides that the Claims Agent "should be a disinterested person as that term is defined in Section 101(14) of the Bankruptcy Code with respect to the matters upon which it is to be engaged." (Claims Agent Protocol at 2.) Ordinarily, a debtor in possession seeking to employ a claims agent under section 156(c) satisfies this requirement by submitting a declaration of disinterestedness from the claims agent with the employment approval application. Stretto submitted such declarations, which showed that at all relevant times, Stretto was a disinterested person. Stretto's relationship with Xclaim does not undercut that showing.

Bankruptcy Code section 101(14) defines "disinterested person."

> The term "disinterested person" means a person that—
> (A) is not a creditor, an equity security holder, or an insider;
> (B) is not and was not, within 2 years before the date of the filing of the petition, a director, officer, or employee of the debtor; and
> (C) does not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor, or for any other reason.

Subparagraphs (A) and (B) clearly do not apply to the disinterestedness analysis of the Stretto-Xclaim relationship: nothing in their prior relationship would have made Stretto a creditor, equity security holder, or insider, or director, officer, or employee of the debtor.

Nor does subparagraph (C) apply. An interest adverse to the estate has been described as "any economic interest that would tend to lessen the value of the bankruptcy estate or that would create either an actual or potential dispute," or "a predisposition under circumstances that render such bias against the estate." *Bank Brussels Lambert v. Coan (In re AroChem Corp.)*, 176 F.3d 610, 622–23 (2d Cir. 1999). The Synchronization Agreement did not give Stretto "an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders" for any reason, because the Synchronization Agreement and performance under it did not create a potential dispute or give Stretto a predisposition toward bias against the estate. Stretto had no ability whatsoever to influence or otherwise affect claims traded on Xclaim's platform. Indeed, the United States Trustee has not argued that Stretto was other than a disinterested person. Nor has the Court (or any complaining party) suggested otherwise. Stretto remained at all times a disinterested person, despite the Synchronization Agreement. Therefore, nondisclosure of the Agreement did not affect Stretto's compliance with the Claims Agent Protocol and does not provide any basis for sanctions or other consequences under section 156(c) or the Claims Agent Protocol.

### B. Bankruptcy Rule 2014(a) Did Not Require Disclosure of the Synchronization Agreement.

The United States Trustee argues that Stretto should have disclosed the Synchronization Agreement under Bankruptcy Rule 2014 in connection with its employment as an administrative adviser under section 327. *See Response to Order Regarding Further Proceedings and Scheduling Sanctions Hearing* (ECF Doc. # 44), at 9. Stretto disagrees.

Rule 2014(a) requires an application for approval of employment under section 327, 1103, or 1114 to "be accompanied by a verified statement of the person setting forth the person's connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee." While Stretto had a "connection" with Xclaim, Xclaim was not a "party in interest" in any of the cases in which Stretto was employed under section 327.[6]

As this Court has already explained in this proceeding, "party in interest" is not defined in the Bankruptcy Code. Xclaim Opinion at 12–13; *see In re Refco Inc.*, 505 F.3d 109, 117 (2d Cir. 2007). The term may have different meanings depending on where in the Bankruptcy Code it appears. 505 F.3d at 116 n.9. Although the term is to be construed broadly, *In re Texaco, Inc.*, 81 B.R. 820, 828 (Bankr. S.D.N.Y. 1988); *In re Flagstaff Foodservice Corp.*, 29 B.R. 215, 218 (Bankr. S.D.N.Y. 1983), it is still limited to a party who has a sufficient interest in a proceeding's outcome to require representation in the proceeding itself. *In re Public Serv. Co.*, 88 B.R. 546, 551 (Bankr. D.N.H. 1988). In construing section 1109(b), courts have limited "party in interest" status to those with a direct interest in the outcome of the case. *See In re Innkeepers USA Tr.*, 448 B.R. 131, 141 (Bankr. S.D.N.Y. 2011);

---

[6] Nor was Xclaim a debtor, creditor, a professional retained by a debtor or creditor, the United States Trustee, or any person employed in the office of the United States Trustee. Stretto does not understand the United States Trustee to suggest otherwise.

9

*accord Southern Blvd., Inc. v. Martin Paint Stores*, 207 B.R. 57, 61 (S.D.N.Y. 1997) (party whose legal rights can be asserted only against the debtor's creditor, not against the debtor, is not a "party in interest"). In the context of Bankruptcy Rule 2014(a), "party in interest" "includes entities holding 'claims' against the debtor and those whose pecuniary interests might be directly and adversely affected by the proposed action." *In re El Comandante Mgmt. Co., LLC*, 395 B.R. 807, 817 (D.P.R. 2008). By contrast, a "mere observer of the proceedings" with a contingent or indirect interest in its outcome is not a party in interest whose connection must be disclosed. *Id*.

Xclaim is even less than a "mere observer." It has no interest, not even contingent or indirect, in the outcome of, and is not otherwise a party in interest in, any of the cases in which Stretto was employed under section 327. By the very nature of its business model, Xclaim does not hold a direct, contingent, or indirect interest in any of the debtors in cases in which Stretto was employed. Xclaim's sole interest is to facilitate claims trading on its platform and thereby earn commissions, none of which are paid by the debtors or the estates. And this Court held that Xclaim is not a party in interest for standing purposes in this miscellaneous proceeding on substantially similar grounds: while Xclaim had an interest in the outcome of this proceeding, its interest is entirely indirect. Xclaim Opinion at 17–20. The United States Trustee, in its prior briefing, adduced no authority suggesting a claims trading intermediary like Xclaim is a party in interest, nor could Stretto find any reported authority to that effect. Thus, Stretto's connection to *non-party in interest* Xclaim is distinguishable from cases the United States Trustee cites, addressed below, where a professional did not disclose a connection based on the professional's belief that the *connection*, admittedly with a creditor or party in interest, was too attenuated or did not create a conflict.

10

Based on Xclaim's lack of any interest in the cases and the lack of any precedent requiring disclosure of connections to a non-party in interest, including a claims intermediary like Xclaim, Rule 2014(a) did not require disclosure of this connection when Stretto was employed, and the omission did not constitute a sanctionable violation of Rule 2014(a).

### C. Even If the Court Determines Xclaim Were a Party in Interest, It Should Not Sanction Stretto for Its Nondisclosure of Its Connection to Xclaim.

Even if the Court concludes that a relationship with Xclaim must be disclosed under Rule 2014(a), sanctions are not warranted. Although courts *may* sanction a party for nondisclosure, they are not required to do so. *In re Citation Corp.*, 493 F.3d 1313, 1321–22 (11th Cir. 2007) ("Neither Rule 2014 nor the Bankruptcy Code mandates a sanction for the violation of Rule 2014. In such situations, whether to impose a penalty and the nature and extent of the penalty is generally a matter left to the bankruptcy court's discretion."). In determining sanctions for non-disclosure, Rule 2014 should be interpreted in accordance with its purpose. "Bankruptcy Rule 2014 is not an end in itself; but rather, a procedural mechanism courts use to implement the substantive provisions of § 327 of the Bankruptcy Code." *In re Alpha Nat. Res., Inc.*, 556 B.R. 249, 260 n.24 (Bankr. E.D. Va. 2016). Section 327 requires that employed professionals "do not hold or represent an interest adverse to the estate" and be "disinterested persons." Thus, where a Rule 2014(a) omission is unintentional and does not conceal a conflict of interest, courts are reluctant to impose sanctions. *See, e.g.*, *In re Fletcher Int'l, Ltd.*, 661 F. App'x 124, 127 (2d Cir. 2016) (affirming bankruptcy court's denial of sanctions for professionals' nondisclosure of connections to parties who were not adverse to the estate and that did not create a conflict for the professional); *In re Raymond Prods. Grp., Inc.*, 421 B.R. 891, 907 (Bankr. N.D. Ill. 2009) ("[N]o disqualification or reduction of fees is appropriate by reason of the careless but unintentional nondisclosure."); *Vergos v. Mendes & Gonzales PLLC (In re McCrary & Dunlap Const. Co., LLC),* 79 F. App'x 770, 780

11

(6th Cir. 2003) ("[W]hile a bankruptcy court does not abuse its discretion if it denies all compensation where, through mere negligence, an attorney fails to satisfy the requirements of the Code and Rules, … a 'technical breach' of the Code and Rules generally warrants a sanction far more lenient than full disgorgement and denial of all compensation.").

The cases the United States Trustee cites do not hold otherwise. Most of those cases involve an omission that involved a connection with a party in interest and that either (a) hid an actual conflict of interest or adversity or (b) was not made in good faith. *See, e.g.*, *In re Balco Equities Ltd., Inc.*, 345 B.R. 87, 113, 115 (Bankr. S.D.N.Y. 2006) (debtors' counsel's "deliberate" and "blatantly false" statements in retention application concealed counsel's extensive and disqualifying connections to debtors' principal); *In re Midway Indus. Contractors*, 272 B.R. 651, 65 (Bankr. N.D. Ill. 2001) (nondisclosure of attorneys' fee lien made debtors' counsel a creditor and resulted in "prejudice to the estate"); *In re Matco Elec. Grp., Inc.*, 383 B.R. 848, 853 (Bankr. N.D.N.Y. 2008) (committee counsel failed to disclose connections to committee member, resulting in another committee member twice moving to replace counsel for "serious transgressions" in counsel's committee representation); *In re Fretter, Inc.*, 219 B.R. 769 (Bankr. N.D. Ohio 1998) (debtors' counsel failed to disclose one of two mortgages given to counsel by debtors prepetition); *In re EBW Laser Inc.*, 333 B.R. 351, 359 (Bankr. M.D.N.C. 2005) (debtor's counsel failed to disclose prepetition fee agreement with debtor's president); *In re EWC, Inc.*, 138 B.R. 276 (Bankr. W.D. Okla. 1992) (failure to disclose simultaneous representation of debtor and its sole shareholder); *In re B.E.S. Concrete Prods., Inc.*, 93 B.R. 228, 236-38 (Bankr. E.D. Cal. 1988)) (failure to disclose multiple conflicting representations; the need for disclosure was "[n]ot a close case" and failure to disclose "caused actual harm"). Indeed, the United States Trustee's own authority makes clear, "[i]f no actual conflict of interest is presented and the Court is satisfied that there was

12

no intent to conceal on counsel's part, disqualification of counsel and/or denial of all compensation is not mandated and the proper remedy is left to the Court's broad discretion." *In re Byington*, 454 B.R. 648, 657 (Bankr. W.D. Va. 2011).

The critical facts that the Court should consider here are that (1) there was no actual or potential conflict of interest or adversity created by the relationship with Xclaim, nor did it make Stretto not disinterested, (2) no prejudice resulted, and (3) in this context, unlike for attorney-client disclosures, no precedent addressed whether this type of relationship must be disclosed. *Michel v. Federated Dep't Stores (In re Federated Dep't Stores)*, 44 F.3d 1310, 1320 (6th Cir. 1995) (reversing sanctions where "there was no definitive appellate court decision" addressing propriety of professional's conduct).

If the Court determines that the Synchronization Agreement should have been disclosed in connection with applications for approval of its employment under section 327, the Court should follow the prevailing view and decline to impose sanctions given Stretto's good faith and disinterestedness as well as the lack of any evidence of intentional concealment, any adversity or conflict of interest, and any precedent governing disclosure of this type of relationship.

## CONCLUSION

For the reasons set forth above and in Stretto's prior filings, sanctions against Stretto are not warranted under any of the Court's applicable sources of authority. Stretto

13

respectfully requests that this Court terminate this proceeding without any further action as quickly as possible to minimize the continuing damage this proceeding is causing Stretto.

                                    Respectfully submitted,

Dated: January 13, 2023
       New York, New York         /s/ *Richard Levin*
                                        Richard Levin
                                        Carl N. Wedoff
                                        JENNER & BLOCK LLP
                                        1155 Avenue of the Americas
                                        New York, NY 10036
                                        Telephone: (212) 891-1601
                                        Facsimile: (212) 891-1699
                                        rlevin@jenner.com
                                        cwedoff@jenner.com

                                        *Attorneys for Stretto, Inc.*