TOGUT, SEGAL & SEGAL LLP
One Penn Plaza, Suite 3335
New York, New York 10119
(212) 594-5000
Kyle J. Ortiz
Jared C. Borriello

*Counsel to BMC Group, Inc.*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

*In re*

MATTER OF CERTAIN CLAIMS AND
NOTICING AGENTS' RECEIPT OF FEES IN
CONNECTION WITH UNAUTHORIZED
ARRANGEMENTS WITH XCLAIM INC.

Misc. Pro. No. 22-00401 (MG)

**BMC GROUP, INC.'S BRIEF REGARDING SANCTIONS
PURSUANT TO ORDER GRANTING UNITED STATES TRUSTEE'S
REQUEST (I) DIRECTING CLAIMS AND NOTICING AGENTS TO
PROVIDE ADDITIONAL DISCLOSURES AND (II) FIXING DEADLINES**

# <u>TABLE OF CONTENTS</u>

**Page**

TABLE OF AUTHORITIES ................................................................................................. ii

PRELIMINARY STATEMENT ........................................................................................... 1

BACKGROUND ................................................................................................................... 3

   A.  BMC Group ................................................................................................................ 3

   B.  Xclaim ........................................................................................................................ 4

   C.  The Synchronization Agreement ............................................................................... 4

      (i)   Negotiation and Execution of Synchronization Agreement ................................ 4

      (ii)  BMC Group's Termination of the Synchronization Agreement .......................... 7

      (iii) BMC Group Never Provided Xclaim With Automated, Synchronized, or
           Exclusive Access to Claims Data ..................................................................... 7

      (iv) BMC Group Never Received a Fee or Other Compensation from Xclaim .......... 8

   D.  The Miscellaneous Proceeding .................................................................................. 9

ARGUMENT ....................................................................................................................... 11

   A.  Sanctions Standards ................................................................................................ 12

   B.  Sanctions Are Not Warranted Because BMC Group's Conduct Was Not in Bad
       Faith ........................................................................................................................ 14

   C.  Any Sanctions Should be Minimal ......................................................................... 14

   D.  BMC Should Not Be Removed from the Approved List of Claims Agents .......... 15

   E.  Additional Sanctions Are Not Warranted for BMC Group's Disclosures ............. 16

CONCLUSION ................................................................................................................... 19

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bank Brussels Lambert v. Coan (In re AroChem Corp.)*,
  176 F.3d 610 (2d Cir. 1999) ........................................................................ 16, 18

*DLC Mgmt. Corp. v. Town of New Hyde Park*,
  163 F.3d 124 (2d. Cir. 1998) ................................................................................ 14

*Drew v. Latimer (In re El Comandante Mgmt. Co., LLC)*,
  395 B.R. 807 (D.P.R. 2008) ................................................................................. 18

*Geltzer v. Brizinova (In re Brizinova)*,
  565 B.R. 488 (Bankr. E.D.N.Y. 2017) ................................................................. 13

*Grand Street Realty, LLC v. McCord*,
  Case No. 04-cv-4738 (CBA), 2005 WL 2436214 (E.D.N.Y. Sept. 30, 2005) ...... 14

*In re FairPoint Commc'ns, Inc.*,
  445 B.R. 271 (Bankr. S.D.N.Y. 2011) .................................................................. 12

*In re Green*,
  422 B.R. 469 (Bankr. S.D.N.Y. 2010) .................................................................. 13

*In re Ionosphere Clubs, Inc.*,
  101 B.R. 844 (Bankr. S.D.N.Y. 1989) .................................................................. 18

*In re Lehtinen*,
  564 F.3d 1052 (9th Cir. 2009) .............................................................................. 14

*In re Madison Square Boys & Girls Club, Inc.*,
  642 B.R. 487 (Bankr. S.D.N.Y. 2022) ................................................................ 3, 9

*In re Plumeri*,
  434 B.R. 315 (S.D.N.Y. 2010) .............................................................................. 13

*In re Savage Indus., Inc.*,
  43 F.3d 714 (1st Cir. 1994) .................................................................................. 18

*Lopez v. J & K Floral USA, Inc.*,
  307 F. Supp. 3d 257 (S.D.N.Y. 2018) .................................................................. 15

*Lubit v. Chase (In re Chase)*,
  372 B.R. 142 (Bankr. S.D.N.Y. 2007) .................................................................. 15

*McHale v. 1-15 Hartdale Ave. Corp. (In re The 1031 Tax Grp., LLC)*,
  Adv. No. 09-01215 (MG), 2010 WL 2851300 (Bankr. S.D.N.Y. July 16, 2010) ...... 15

*Ransmeier v. Mariani,*
   718 F.3d 64 (2d Cir. 2013) ............................................................................... 14

*Rosario v. St. Luke's Hospital Center (In re Goldstein),*
   430 F.3d 106 (2d Cir.2005) ............................................................................. 15

*Savage & Assocs., P.C. v. K & L Gates LLP (In re Teligent, Inc.),*
   640 F.3d 53 (2d Cir. 2011) .............................................................................. 17

*U.S. v. Bove,*
   888 F.3d 606 (2d Cir. 2018) ............................................................................ 13

*U.S. v. Seltzer,*
   227 F. 3d 26 (2d Cir. 2000) ............................................................................. 13

**Statutes**

11 U.S.C. § 1104 ................................................................................................. 16

11 U.S.C. § 1109 ................................................................................................. 17

11 U.S.C. § 1109(b) ........................................................................................... 18

11 U.S.C. § 327 ....................................................................................... 3, 10, 16, 17

11 U.S.C. § 327(a) ............................................................................................... 16

28 U.S.C. § 156 ........................................................................................... 9, 12, 17

28 U.S.C. § 156(c) ....................................................................................... 3, 10, 11

28 U.S.C. § 1930 ................................................................................................. 9, 12

**Rules**

Fed. R. Bankr. P. 2014 ................................................................................... 17, 18

Local Rule 5075-1 ............................................................................................... 12

BMC Group, Inc. ("BMC Group") hereby submits this brief (the "Brief")

pursuant to the *Order Granting United States Trustee's Request (I) Directing Claims and*

*Noticing Agents to Provide Additional Disclosures and (II) Fixing Deadlines* entered by the

United States Bankruptcy Court for the Southern District of New York (the "Court") on

December 7, 2022 [Docket No. 49] (the "December 7 Order") setting forth its position as

to why this Court should not impose sanctions against BMC Group as a result of its

relationship with Xclaim, Inc. ("Xclaim") or otherwise as a result of the performance of

activities as a claims agent under 28 U.S.C. § 156(c) that the Clerk of the Court

(the "Clerk") could not perform.

In support of this Brief, BMC Group relies upon the *Notice of and Declaration Made*

*on Behalf of BMC Group, Inc.*, dated September 16, 2022 [Docket No. 10] (the "September

16 Declaration"), the *Declaration Made on Behalf of BMC Group, Inc.*, dated December 8,

2022 [Docket No. 55] (the "December 8 Declaration"), and the *Supplemental Declaration of*

*Tinamarie Feil on Behalf of BMC Group, Inc.*, dated January 13, 2023 (the "January 13

Declaration"),[1] each incorporated herein by reference and by and through its

undersigned counsel, respectfully states:[2]

## PRELIMINARY STATEMENT

1.      BMC Group should not be further sanctioned because BMC Group never

earned or received a fee in connection with its short-lived relationship with Xclaim and

never implemented any of the services contemplated by the Synchronization

---

[1]     The January 13 Declaration is attached hereto as **Exhibit 1**.

[2]     Capitalized terms used but not otherwise defined herein have the meanings ascribed to such terms in
this Court's August 25, 2022 Order commencing this miscellaneous proceeding (the "August 25
Order") [Docket No. 1].  Capitalized terms used but not otherwise defined in the Preliminary
Statement or the August 25 Order have the meanings ascribed to such terms herein.

1

Agreement in any chapter 11 case where it served as a claims agent. Similarly, BMC Group should not be sanctioned for lack of disclosure in connection with any chapter 11 case because (i) it is undisputed that Xclaim was not a party in interest in any chapter 11 case that BMC Group acted as a claims agent, and (ii) no services were implemented in any case that could have led to a fee being earned leaving no pecuniary interest (let alone an interest materially adverse to the debtors) in any outcome for BMC Group to disclose.

2.      BMC Group's entry into the Synchronization Agreement did not violate any clear and unambiguous statute, rule, order, protocol, or other obligation to the Court and despite entry into the Synchronization Agreement, BMC never provided claims data to Xclaim or any other third party in exchange for a fee, commission, or any other form of compensation. During the time of the Synchronization Agreement, BMC Group did provide publicly available claims data to Xclaim and other third parties in various forms for no fee. However, providing claims data for no fee is consistent with a claims agent's enumerated duties under the Form Section 156 Application referenced in the SDNY Protocol and available on this Court's website.

3.      Further, at the time it entered into the Synchronization Agreement, BMC Group had a good faith belief, bolstered by representations made to it by Xclaim, that the activities contemplated by the Synchronization Agreement did not violate any rule. Rather, BMC Group was led to believe that the Clerk of the Delaware Court not only was aware of such agreements but was providing similar data to Xclaim in cases where no claims agent was appointed.

4.      When BMC Group became aware that this was not the case, BMC Group promptly terminated the Synchronization Agreement months before Judge Lane first

provided a clear and unambiguous ruling that the Court deems such agreements impermissible in his *Madison Square* Opinion.

5.      BMC Group deeply regrets that it did not conduct more significant diligence regarding the position of the courts, the clerks, and the United States Trustee on the propriety of the Synchronization Agreement before entering into the agreement with Xclaim.  BMC Group appreciates the responsibility that it has to the bankruptcy courts and the entire bankruptcy community in fulfilling its Clerk of the Court duties, and thus, BMC Group sincerely apologizes to the Court for this mistake.

6.      However, BMC Group respectfully represents that its conduct – entering into the Synchronization Agreement, but never implementing it in any case or earning a fee – does not warrant sanctions.[3]

## BACKGROUND

### A.  BMC Group

7.      Since BMC Group was established in 1998, it has served as a court appointed claims agent for various Clerks of the Bankruptcy Courts under 28 U.S.C. § 156(c) in hundreds of chapter 11 cases nationwide and has served as an administrative professional employed by debtors-in-possession and chapter 11 trustees pursuant to section 327 of chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in many of those cases.  BMC Group is comprised of leading industry professionals with significant experience in the administrative aspects of chapter 11 cases.  BMC Group's professionals have experience in noticing, claims administration, solicitation,

---

[3]      In the *Madison Square* Opinion, Judge Lane authorized the retention of the Epiq as the Clerk of the Court's claims agent provided that "the terms of the Access Agreement [do not] apply to the claims register in this case."  *In re Madison Square Boys & Girls Club, Inc.*, 642 B.R. 487, 497 (Bankr. S.D.N.Y. 2022).  BMC Group never implemented the Synchronization Agreement in any of its cases.  Thus, the *Madison Square* standard would not have barred BMC Group's retention in any of its chapter 11 cases.

balloting, and facilitating other administrative aspects of chapter 11 cases, including in large and complex cases.

8.      BMC Group historically provided public claims register information in reformatted electronic form (typically an Excel file) to various parties upon request without charging the applicable estate.

**B. Xclaim**

9.      BMC Group understands that Xclaim was founded in 2018 to develop and operate an online platform to facilitate the electronic trading of claims in chapter 11 cases in any jurisdiction in the United States.  BMC Group also understands that in order for Xclaim's platform to function, the company had to obtain accurate data from the claims registers for each chapter 11 case represented on its platform.  BMC Group understands that in chapter 11 cases where claims agents are not employed, Xclaim is able to obtain claims register information by scraping the data from PACER.  However, in cases where claims agents are employed, the only source of such data is the claims agent's website.  Although Xclaim could obtain this publicly available data by manually collecting the data from the public websites of claims agents, Xclaim also sought to obtain this information on an automated or synchronized basis in reformatted electronic form from claims agents.  Ultimately, five of the seven claims agents involved in this proceeding entered into such agreements with Xclaim.

10.      Xclaim is not and was not a party in interest in any of the chapter 11 cases in which BMC Group serves or has served as a claim and noticing agent.

**C. The Synchronization Agreement**

**(i)      Negotiation and Execution of Synchronization Agreement**

11.      In February 2019, Xclaim contacted BMC Group regarding a potential arrangement whereby BMC Group would provide Xclaim with publicly available

information related to claims registers in reformatted electronic form on an automated

basis in chapter 11 cases where BMC Group acted as a court-appointed claims agent.

Jan. 13 Decl. ¶ 22.  Xclaim continued to follow up with BMC Group regarding entry into

an agreement through April 2019.  During these discussions, Xclaim represented to

BMC Group that in cases where claims agents were not engaged, the Clerk had granted

Xclaim access to similar data.  *Id.* ¶ 23.  Xclaim also advised that it had already

processed 600 trades in the Delaware Bankruptcy Court, with the Clerk's approval.  *Id.*

Additionally, Xclaim informed BMC Group that it was finalizing agreements with at

least three other leading Approved Claims Agents.  *Id.*

12.      With these assurances, on April 23, 2019, BMC Group and Xclaim

executed the *Exclusive Access Agreement* (the "Synchronization Agreement").  Sept. 16

Decl. ¶ 4 b.  Pursuant to the terms of the Synchronization Agreement, BMC Group

agreed to provide Xclaim with electronic access to certain publicly available claims and

claims-related data (the "Claims Data")[4] maintained by BMC Group in chapter 11 cases

where BMC Group served as the claims agent.  Sept. 16 Decl. Ex. A at 1 & ¶ 2.1.  The

access to Claims Data would be provided to Xclaim through "one or more private

application programming interfaces" (the "API").  *Id.* Ex. A ¶¶ 1.1, 2.1.  The API would

be developed by Xclaim, with the cooperation of BMC Group.  *Id.*, Ex. A ¶¶ 3.3, 3.4.

Upon the API becoming operational (it never did), BMC Group and Xclaim were

required to then enter into an end user license agreement and the API would allow the

---

[4]    The Synchronization Agreement uses the term "Accessible Data" to refer to Claims Data that would
be accessed by Xclaim through the yet to be developed API.  Sept. 16 Decl. Ex. A, 1 & 2.1.  Although
access to Claims Data through the API (*i.e.*, Accessible Data) was to be exclusive to Xclaim under the
Synchronization Agreement, the very same underlying Claims Data remained available to anyone
who requested it at any time.  Jan. 13 Decl. ¶ 24.

Xclaim platform to automatically pull Claims Data from BMC Group's chapter 11 cases (this never happened). *Id.* Ex. A ¶ 3.3

13.     In return for providing Xclaim with automated and synchronized access to Claims Data through the API, had the agreement been implemented, BMC Group could receive a fee of "10.0% of the commission collected by [Xclaim] related to any Claims transfers facilitated by Xclaim's website in any Bankruptcy Proceeding in which BMC [Group] serves as the Bankruptcy Court approved claims agent and for which [Xclaim] successfully transmits and BMC [Group] accepts and affects the Claim transfers on the applicable Claims Register as contemplated in" the Synchronization Agreement (the "Fee"). *Id.* Ex. A ¶ 4.1.  No Fee was ever earned by BMC Group or paid by Xclaim because, among other reasons, the API was never implemented, and the transmission of Claims Data to the Xclaim platform was never synchronized or automated in *any* chapter 11 cases where BMC Group acted as a court appointed claims agent.  Sept. 16 Decl. ¶ 4 b.

14.     As noted above, on a few occasions, BMC Group did provide claims data in various formats (admittedly, in part, pursuant to its efforts to assist with the development of the API)[5] to Xclaim on a no fee basis.  However, providing free access to Claims Data is consistent with the delineated duties of a claims agent.  Section 156 Application ¶ 5(i).

---

[5]     While Xclaim undeniably sought this public data in efforts to further its own profits, there is nothing forbidden about that as many parties seeking access to public claims data are likely doing so with a profit motive.  As this Court has noted, claims trading serves a useful function in providing liquidity. Hr. Tr. (Nov. 17, 2022) 25:23-26:5.

**(ii)    BMC Group's Termination of the Synchronization Agreement**

15.    In early 2022, the Office of the United States Trustee (the "United States Trustee") contacted BMC Group to discuss an unspecified claims trading issue it was investigating related to Xclaim.  Jan. 13 Decl. ¶ 26.

16.    In response to this inquiry, BMC Group informed the United States Trustee that BMC Group never implemented an API with Xclaim, nor had it received any compensation from Xclaim.  *Id.* ¶ 27.  BMC Group also provided the United States Trustee with a copy of the Synchronization Agreement.  *Id.* ¶ 28.  BMC Group further disclosed to the United States Trustee that historically BMC Group had provided public claims register information in reformatted electronic form to anyone who made such a request.  *Id.* ¶ 27.

17.    Shortly thereafter on March 23, 2022, BMC Group terminated the Synchronization Agreement.[6]  Sept. 16 Decl. ¶ 4.

**(iii)    BMC Group Never Provided Xclaim With Automated, Synchronized, or Exclusive Access to Claims Data**

18.    Between the execution of the Synchronization Agreement on April 23, 2019 and BMC Group's termination of the agreement on March 23, 2022, the terms of the agreement related to automation, synchronization, or exclusive access of Claims Data were never implemented or fulfilled by BMC Group.  *Id.* ¶ 4.  BMC Group never reached the point where an end user license agreement was put in place in connection

---

[6]    The submissions by other Authorized Claims Agents have referenced the May 17, 2022 first day hearing in *In re Pareteum Corporation* as the first time they became aware of any court expressing concern about Xclaim.  During that hearing, Judge Beckerman explained her concern about the existence of a potential relationship between KCC and Xclaim, stating, "if the Clerk of the Court were [engaged in such a relationship] that would be a big problem."  *In re Pareteum Corp.*, Case No. 22-10615 (LGB), Docket No. 42 at 23:16-17 (Bankr. S.D.N.Y. May 19, 2022).  BMC Group terminated its Synchronization Agreement nearly two months before this hearing and is not aware of any court in this District or other districts expressing any concerns about Xclaim before Judge Beckerman's colloquy.

with any chapter 11 case.  In other words, BMC Group never provided Xclaim with automated, synchronized, or exclusive access to Claims Data in any of its chapter 11 cases.  *Id.*  No API was even in place pursuant to which BMC Group could earn a fee.

19.    BMC Group did manually send (via email) publicly available Claims Data in reformatted electronic form to Xclaim in response to one off requests on five separate occasions between April 2020 and April 2021.  Sept. 16 Decl. ¶ 4.  This was consistent with BMC Group's general practice of providing claims register information in reformatted electronic form to other parties, upon request on a no-fee basis and without charge to the applicable debtor's estate.

20.    These transfers to Xclaim included publicly available Claims Data related to 21 chapter 11 cases, which included two cases filed in the Southern District of New York.  Jan. 13 Decl. ¶¶ 6.[7]  BMC Group did not provide any Claims Data to Xclaim after April 1, 2021.  *Id.* ¶ 4.

**(iv)    BMC Group Never Received a Fee or Other Compensation from Xclaim**

21.    BMC group never earned a Fee under the Synchronization Agreement, it never recorded a receivable due from Xclaim in its books and records, and no payments of any kind have ever been received by BMC Group from Xclaim.  Sept. 16 Decl. ¶¶ 5-6; Jan. 13 Decl. ¶ 8.[8]

---

[7]    During the time period in which the Synchronization Agreement was in effect, BMC Group earned a total of $14,418.50 under section 156 of the Bankruptcy Code and was reimbursed for $8,407.55 of section 156 expenses in cases located in the Southern District of New York.  *See* Jan. 13 Decl. Ex. A. Again, BMC Group never provided Xclaim with automated, synchronized, or exclusive access to Claims Data in any of these cases, nor did it receive any fees or other compensation for the publicly available Claims Data that it provided in response to the discrete requests.

[8]    Shortly before BMC Group terminated the Synchronization Agreement, it received an "account statement" attached to a marketing email from Xclaim purporting to show that BMC Group earned $5,288.41 on five trades facilitated by Xclaim in 2021.  The statement was rife with errors, including chapter 11 cases where BMC Group either was never retained as the claims agent or had never provided Claims Data to Xclaim.  BMC Group understands other claims agents, including claims agents that never entered into synchronization agreements, received similar communications.

D. **The Miscellaneous Proceeding**

22.     Nearly five months after BMC Group terminated its Synchronization

Agreement and nearly a year and a half after BMC Group last shared any claims data

with Xclaim, Judge Lane issued the August 18, 2022 memorandum of decision in *In re*

*Madison Square Boys & Girls Club, Inc.*, Case No. 22-10910 (SHL).  *See In re Madison Square*

*Boys & Girls Club, Inc.,* 642 B.R. 487 (Bankr. S.D.N.Y. 2022) (the "Madison Square

Opinion").  In that decision, Judge Lane concluded that Epiq could not be retained if the

agreement between Epiq and Xclaim, which is similar to the terminated BMC Group

Synchronization Agreement, was implemented in connection with that case because he

concluded that implementation of such an agreement was impermissible under 28

U.S.C. §§ 156 and 1930.  *Madison Sq.* Op. at 493-97.

23.     On August 25, 2022, the Court instituted this proceeding by entering an

order (the "August 25 Order") directing BMC Group, among others, to file a notice on

the docket providing specified disclosures.  On September 16, 2022, BMC Group filed

the September 16 Declaration, which provided the detailed information required by the

August 25 Order, including, disclosures that:  (i) BMC Group has no current agreement

or business arrangement with Xclaim; (ii) the Synchronization Agreement was signed

by BMC Group and Xclaim on April 23, 2019, and was terminated by BMC Group on

March 23, 2022; (iii) during the term of the Synchronization Agreement, BMC Group

never provided Xclaim with automated, synchronized, or exclusive access to Claims

Data; (iv) BMC Group did deliver publicly available claims register data to Xclaim in a

reformatted electronic form on five occasions between April 13, 2020 and April 1, 2021;

(v) BMC Group never received and did not anticipate receipt of any fees, costs,

reimbursements, or other forms of compensation from Xclaim; and (vi) BMC Group

never entered into any similar arrangement contractual or otherwise, with any other

third party, to provide claims data in exchange for a fee, commission, or any other form of compensation.  Sept. 16 Decl. ¶¶ 4-9.

24.     On December 7, 2022, the Court entered the December 7 Order, directing BMC Group, among others, to provide certain "Additional Disclosures" related to the chapter 11 cases in which BMC Group was approved by the Bankruptcy Court to be retained as a (i) noticing and claims agent pursuant to 28 U.S.C. § 156(c), and/or (ii) consultant, agent, advisor or other professional pursuant to sections 327 or 1103 of the Bankruptcy Code.  Dec. 7 Order at 2.

25.     On December 8, 2022, BMC Group filed the December 8 Declaration, which provided a detailed case-by-case accounting of all fees, costs, and reimbursements received or approved by the applicable Bankruptcy Court in connection with BMC Group's retention in (i) those cases that were active as of BMC Group's execution of the Synchronization Agreement on April 23, 2019 (the "Pending Cases"), (ii) those cases commenced on or after the execution of the Synchronization Agreement (the "Subsequent Cases").  *See* Dec. 8 Decl., Ex. B-D.[9]

26.     BMC Group also confirmed that between April 2019 and March 2022 – the time period during which the Synchronization Agreement was in effect – BMC Group never made any disclosure filings as to the existence of the Synchronization Agreement in any chapter 11 case in which BMC Group was serving as a claims or noticing agent. *Id.*¶ 7.  As explained in the December 8 Declaration, this was because the API was never implemented, exclusive access to Claims Data was never granted to Xclaim, and the

---

[9]     Following the filing of the December 8 Declaration, on December 16, 2022, the United States Trustee requested that BMC Group supplement the December 8 Declaration by providing a breakdown of BMC Group's accounting for fees, costs and reimbursements for each of the Pending Cases and Subsequent Cases, categorized by section 327 retentions and section 156(c) retentions.  On December 21, 2022, BMC Group provided the United States Trustee with the requested supplemental disclosures, which are annexed to the January 13 Declaration as Exhibits B-D.

transmission of Claims Data to the Xclaim was never synchronized or automated in any of those chapter 11 cases. *Id.* In other words, nothing was ever implemented in connection with any case to disclose.

## ARGUMENT

27.    This Court's December 7 Order invited the filing of this Brief in order to set forth BMC Group's position as to what sanctions, if any, this Court should impose against BMC Group as a result of its relationship with Xclaim or otherwise as a result of the performance of activities as a claims agent under 28 U.S.C. § 156(c) that the Clerk could not perform. Dec. 7 Order at 3.

28.    BMC Group respectfully submits that no further sanctions are appropriate because it never provided Xclaim or any other third party with exclusive, synchronized or automated access to Claims Data, nor did BMC Group earn or receive a Fee or any other compensation in the limited instances where it transmitted Claims Data in reformatted electronic form in response to discrete requests.

29.    Without ever implementing the API and entering into any end user license agreement with Xclaim, BMC Group never had any potential pecuniary interest in trades implemented by Xclaim and Xclaim was not a party in interest in any case. Thus, BMC Group was always a disinterested person in connection with the chapter 11 cases it served as claims agent in prior to termination of the Synchronization Agreement.

30.    Additionally, to the extent the Court finds sanctions to be warranted, BMC Group respectfully believes that under the applicable standard (discussed below) or any potentially applicable standard, such sanctions should be minimal (and certainly should not result in removal from the list of approved claims agents in this District). BMC Group respectfully submits that this proceeding itself has provided sufficient

sanction due to the reputational damage of being associated with this proceeding and the loss of future engagements as a consequence of the over-hang of this proceeding, which has had a real and substantial financial impact on BMC Group. Accordingly, BMC respectfully submits the Court should impose no further sanctions on BMC Group.

### A. Sanctions Standards

31.     The *Madison Square* Opinion references multiple statutes, rules, and protocols that govern the conduct of claims and noticing agents in this District, including 28 U.S.C. § 156, 28 U.S.C. § 1930, Bankruptcy Rule 5003(b), Local Rule 5075-1, the *Court's Protocol for the Employment of Claims and Noticing Agents Under 28 U.S.C. § 156(c)* (the "SDNY Protocol"), the *Code of Conduct for Judicial Employees,* and the *SDNY Form of § 156 Application.*[10]  There is almost no precedent for determining what level of conduct violates such standards or how to determine appropriate sanction for any violations of those standards.

32.     BMC Group respectfully submits that the Court's authority to impose sanctions for any violation of the above rules, statutes, and protocols arises pursuant to either its inherent authority or its discretionary authority under section 105(a) of the Bankruptcy Code.  *See e.g., In re FairPoint Commc'ns, Inc.,* 445 B.R. 271, 276 (Bankr. S.D.N.Y. 2011) ("[W]here a local rule of bankruptcy courts does not prescribe sanctions

---

[10]  This Court has also referenced BANKRUPTCY CLERKS' MANUAL (the "Clerks' Manual") as a potential source of authority for judging a claims agent's conduct.  *See Memorandum Opinion and Order Striking the Xclaim Submission and Sanctioning the Xclaim Accountholders,* dated December 8, 2022 [Docket No. 50] at 9 n. 11.  BMC Group submits that because the Clerks' Manual is not distributed to claims agents, but is strictly an internal resource of the Clerk, any guidance provided therein is not applicable to claims agents retained under section 156(c).  Likewise, the fees earned under 28 U.S.C. § 1930 are only paid to the Clerk and not claims agents retained under 156(c) – even in cases where a claims agent is present.

for failure to follow, sanctions can be imposed through the inherent power of the court").

33.     To exercise its inherent power to issue sanctions, a court must find that there is clear evidence that "the party to be sanctioned acted without colorable basis and in bath faith." *Geltzer v. Brizinova (In re Brizinova)*, 565 B.R. 488, 505 (Bankr. E.D.N.Y. 2017); *In re Plumeri*, 434 B.R. 315, 328 (S.D.N.Y. 2010) (a court's inherent power to sanction "ordinarily require[s] a clear showing of bad faith on the part of the party to be sanctioned.").[11]

34.     BMC Group submits that for its conduct to rise to the level of bad faith conduct, the impermissibility of the Synchronization Agreement must have been so obvious to BMC Group that its mere entry into the agreement itself constituted a conscious or willful disregard for the applicable statutes, rules, orders, protocols, or other obligations to the Court, and that BMC Group's belief in the propriety of the agreement was without colorable support. *See e.g. In re Zucaro*, 617 B.R. 18, 30 (Bankr. E.D.N.Y. 2020).

35.     Courts have found bad faith where the sanctioned party was found to have willfully violated an underlying rule or acted based on a frivolous argument for which there is no reasonable support. *U.S. v. Bove*, 888 F.3d 606, 608 (2d Cir. 2018) (interpreting "bad faith" to mean "intentionally deceptive or dishonest"); *In re Lehtinen*,

---

[11]   BMC Group acknowledges that courts in this Circuit have recognized an exception to the general standard of requiring a finding of bad faith before imposing relatively minor sanctions in limited circumstance where an attorney violates a court order and such misconduct was not an inherent "part of [the attorney's] role in representing her client." *U.S. v. Seltzer*, 227 F. 3d 36, 41 (2d Cir. 2000) (upholding sanctions imposed because of a lawyer's tardy return to a court proceeding under a negligent or reckless" standard); *see also In re Green*, 422 B.R. 469, 478 (Bankr. S.D.N.Y. 2010) (Glenn, J.) (imposing sanction of $250 payable Clerk of the Bankruptcy Court for attorney's negligent failure to appear for a hearing). BMC Group is not an attorney, nor is the remedy of removal from the approved claims agents list a minor sanction in any respect. Thus, the application of this narrow exception is not justified here.

564 F.3d 1052, 1061 (9th Cir. 2009) (finding "bad faith" where conduct "was outrageously improper, unprofessional and unethical under any reading of California's ethical standards for attorneys").

36.     Alternatively, courts have found that bad faith conduct can be shown by "egregious disrespect for the Court or judicial process," *Ransmeier v. Mariani*, 718 F.3d 64, 68 (2d Cir. 2013), a "conscious disregard" of a party's obligations, *DLC Mgmt. Corp. v. Town of New Hyde Park*, 163 F.3d 124, 136 (2d. Cir. 1998), a deliberate effort to delay or disrupt judicial proceedings or defraud the court, *see e.g., Grand Street Realty, LLC v. McCord*, Case No. 04-cv-4738 (CBA), 2005 WL 2436214, at *9 (E.D.N.Y. Sept. 30, 2005) (collecting cases), or a refusal to take corrective action after learning that conduct was deemed questionable, *id*.

**B.  Sanctions Are Not Warranted Because BMC Group's Conduct Was Not in Bad Faith**

37.     BMC submits that its conduct – entering, but never implementing the Synchronization Agreement – was not an intentionally deceptive act demonstrating disrespect for the Court, the Clerk's office, or any other party giving rise to bad faith. Rather it was an agreement that BMC Group entered in good faith and, upon learning that the agreement was deemed questionable, BMC Group promptly took corrective action and proactively terminated the agreement.  Thus, BMC Group's conduct does not demonstrate a willful disregard of applicable law or a non-colorable belief in the propriety of the Synchronization Agreement that supports a finding of bath faith.

**C.  Any Sanctions Should be Minimal**

38.     Although this Court has broad discretion in deciding what sanctions should be imposed regardless of the standard – *e.g.*, bad faith, negligence, recklessness – it applies in this proceeding,  *Rosario v. St. Luke's Hospital Center (In re Goldstein)*, 430

F.3d 106, 110–11 (2d Cir. 2005), "[t]o use the vernacular,[] the punishment should fit the crime."  *Lubit v. Chase (In re Chase)*, 372 B.R. 142, 155 (Bankr. S.D.N.Y. 2007) (Glenn, J.). Here, because BMC Group never engaged in the challenged conduct that is the subject of potential sanction in this proceeding – "perform[ance] under a Synchronization Agreement and rec[eipt] of Unauthorized Fees" –  BMC Group respectfully submits that further sanctions against it (beyond the reputational harm and lost new business opportunities) are not warranted under any standard the Court might apply.  Aug. 25 Order at 2.

### D.  BMC Should Not Be Removed from the Approved List of Claims Agents

39.    As the Court noted at the November 17, 2022 hearing, removal of a claims agent from the approved list would amount to a "death penalty."  Hr'g. Tr. (Nov. 17, 2022) 37:4-38:2.  Although such a severe sanction is at the Court's disposal, the use of the phrase *"may lead to removal"* in the SDNY Protocol leaves this Court with discretion to impose a lesser sanction or no sanction at all.

40.    BMC Group does not believe such a draconian sanction is appropriate in the context of BMC Group's conduct.  Courts in this District have stated that when determining whether to award sanctions that will result in an "extreme" impact on a party, the following factors are weighed:  "(a) willfulness or bad faith of the noncompliant party; (b) the history, if any of noncompliance; (c) the effectiveness of lesser sanctions; (d) whether the noncompliant party had been warned about the possibility of sanctions; (e) the client's complicity; and (f) prejudice to the moving party."  *McHale v. 1-15 Hartdale Ave. Corp. (In re The 1031 Tax Grp., LLC)*, Adv. No. 09-01215 (MG), 2010 WL 2851300, at *6 (Bankr. S.D.N.Y. July 16, 2010) (internal quotation marks omitted) (Glenn, J.); *see also Lopez v. J & K Floral USA, Inc.*, 307 F. Supp. 3d 257, 258-59 (S.D.N.Y. 2018).

41.     None of these factors support imposition of such a severe sanction as to BMC Group.  BMC Group's conduct here is not indicative of willfulness or bad faith and BMC Group does not have a history of noncompliance with the statutes, rules, orders, protocols, or other obligations to the Court.

**E.      Additional Sanctions Are Not Warranted for BMC Group's Disclosures**

42.     Finally, BMC Group disagrees with the United State Trustee's sweeping statement that "[t]here can be no question that in any application for an Approved Claims Agent to be employed as an estate professional pursuant §§ 327 or 1104 of the Bankruptcy Code, the existence of any Synchronization Agreement (or similar arrangement) with Xclaim or another Third-Party Claims Trader should have been disclosed pursuant to Bankruptcy Rule 2014." *United States Trustee's Response to Order Regarding Further Proceedings and Scheduling Sanctions Hearing*, dated November 4, 2022 [Docket No. 44].[12]  To the contrary, entry into the Synchronization Agreement without ever implementing it gave rise to no interest, let alone a materially adverse interest, in any estate where BMC Group acted as a claims agent.

43.     BMC Group never implemented a platform to perform the services described in the Synchronization Agreement and was never in a position to potentially receive any Fee under the Synchronization Agreement in any of its chapter 11 cases. Therefore, BMC Group had no potential economic interest to disclose in any case.  Dec. 8 Decl. ¶ 7.  For this reason alone, BMC Group submits that no additional sanction is warranted on account any purported violation of the disclosure obligations under Rule

---

[12]   Section 327(a) of the Bankruptcy Code sets out a general, two-part test governing employment of all professionals – the debtor-in-possession may hire only those professionals that (1) "do not hold or represent an interest adverse to the estate," and (2) are "disinterested persons."  11 U.S.C. § 327(a); *see also Bank Brussels Lambert v. Coan (In re AroChem Corp.)*, 176 F.3d 610, 621 (2d Cir. 1999).  BMC Group submits that the Synchronization Agreement did not constitute an interest adverse to the estate, nor did it implicate BMC Group's disinterestedness in any of its chapter 11 cases.

2014 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>") and

section 327 of the Bankruptcy Code.  Nevertheless, even if the Synchronization

Agreement had been implemented, no disclosure would have been required pursuant

to Bankruptcy Rule 2014.

44.    Bankruptcy Rule 2014 mandates that the application to employ

professional under sections 327 or 1103 of the Bankruptcy Code "be accompanied by a

verified statement of the person to be employed setting forth the person's *connection*

with the debtor, creditors, or other parties-in-interest, their respective attorneys and

accountants, the United States trustee, or any person employed in the office of the

United States trustee." Fed. R. Bankr. P. 2014 (emphasis added).  Although the

Synchronization Agreement gave rise to a "connection" between BMC Group and

Xclaim, Xclaim was not a "party in interest" in any cases in which BMC group was

employed pursuant to section 327 (or section 156) of the Bankruptcy Code.

45.    With respect to parties-in-interest, beyond the non-exhaustive list of

parties enumerated in section 1109 – "the debtor, the trustee, a creditors' committee, an

equity security holders' committee, a creditor, an equity security holder, or any

indenture trustee" – a "party in interest" is not further defined in the Bankruptcy Code.

11 U.S.C. § 1109; *Savage & Assocs., P.C. v. K & L Gates LLP (In re Teligent, Inc.)*, 640 F.3d

53, 60 (2d Cir. 2011).  However, a person or entity without a financial stake in the

outcome of the chapter 11 case is generally not a party-in-interest.  *Teligent*, 640 F.3d at

60 (other than "certain limited circumstances," not applicable here, "parties in interest

typically have a financial stake in the outcome of the litigation").  In the Bankruptcy

Rule 2014(a) context, a party in interest includes, "entities holding 'claims' against the

debtor and those whose pecuniary interests might be directly and adversely affected by

the proposed action." *Drew v. Latimer (In re El Comandante Mgmt. Co., LLC)*, 395 B.R. 807,

817 (D.P.R. 2008) (citing *In re Savage Indus., Inc.*, 43 F.3d 714, 721 (1st Cir. 1994).  In

contrast, "if a party is not affected by the reorganization process it should not be

considered a party in interest."  *In re Ionosphere Clubs, Inc.*, 101 B.R. 844, 849 (Bankr.

S.D.N.Y. 1989).

46.     Here, because Xclaim lacked a financial interest in the outcome of any of

BMC Groups' chapter 11 cases and was not "the debtor, the trustee, a creditors'

committee, an equity security holders' committee, a creditor, an equity security holder,

or any indenture trustee," 11 U.S.C. § 1109(b), BMC Group submits that its relationship

with Xclaim is not a "connection" requiring disclosure pursuant to Bankruptcy Rule

2014.

47.     Additionally, BMC Group itself remained a "disinterested person"

because the Synchronization Agreement did not give BMC Group "any economic

interest that would tend to lessen the value of the bankruptcy estate or that would

create either an actual or potential dispute," or "a predisposition under circumstances

that render such bias against the estate."  *In re AroChem Corp.*, 176 F.3d at 623.  At most,

the Synchronization Agreement, had it been implemented, would have entitled BMC

Group to a fee derived from the commission Xclaim earned for a claims trade facilitated

on its platform.  This commission would have been paid by the buyer of the claim, not

the debtor or the estate.  But, critically, such tangential economic interest is at best

hypothetical, because the agreement was never implemented, so no actual economic

interest in connection with any party ever arose.

*[Concludes on following page.]*

18

## CONCLUSION

WHEREFORE, for the reasons set forth herein, BMC Group respectfully submits that the imposition of further sanctions against BMC Group is unwarranted under the circumstances and respectfully requests that the Court enter an order finding that BMC Group's conduct was not sanctionable under the statutes and rules applicable to chapter 11 cases.

DATED:      January 13, 2023
               New York, New York

                              BMC GROUP, INC.

                              By its Counsel,
                              TOGUT, SEGAL & SEGAL LLP
                              By:

                              */s/ Kyle J. Ortiz*
                              KYLE J. ORTIZ
                              JARED C. BORRIELLO
                              One Penn Plaza, Suite 3335
                              New York, New York 10119
                              (212) 594-5000
                              kortiz@teamtogut.com
                              jborriello@teamtogut.com

# EXHIBIT "1"

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

*In re*

MATTER OF CERTAIN CLAIMS AND
NOTICING AGENTS' RECEIPT OF FEES IN
CONNECTION WITH UNAUTHORIZED
ARRANGEMENTS WITH XCLAIM INC.

Misc. Pro. No. 22-00401 (MG)

## SUPPLEMENTAL DECLARATION OF
## TINAMARIE FEIL ON BEHALF OF BMC GROUP, INC.

I, Tinamarie Feil, hereby declare under penalty of perjury, pursuant to section
1746 of title 28 of the United States Code, as follows:[1]

1.      I am a founder and shareholder of BMC Group, Inc. ("BMC Group").  I am
the President of Client Services of BMC Group and have held this position since 1998.

2.      In my capacity as President of Client Services, I am familiar with BMC
Group's day-to-day operations, business, and financial affairs.  In addition, I have
personal knowledge of BMC Group's business relationship with Xclaim, Inc. ("Xclaim")
before it was terminated by BMC Group on March 23, 2022.  As such, I am acting as
BMC Group's Designated Person for purposes of this proceeding.

3.      Except as otherwise indicated, all the facts set forth herein are based on
my personal knowledge, information gathered from my review of relevant business
records of BMC Group, documents and information supplied to me by BMC Group's
management, their personnel, and BMC Group's advisors, or my opinion based on my
experience, knowledge and information concerning BMC Group's operations and the

---

[1]     Capitalized terms used but not otherwise defined herein have the meanings ascribed to such terms in
*BMC Group, Inc.'s Brief Regarding Sanctions Pursuant to Order Granting United States Trustee's Request
(I) Directing Claims and Noticing Agents to Provide Additional Disclosures and (II) Fixing Deadlines.*

claims and noticing agent industry as a whole.  I am authorized to submit this
supplemental declaration on behalf of BMC Group, and if called upon to testify, I could
and would testify competently to the facts set forth herein.

**Supplemental Disclosure Related to September 16 Declaration**

4.      On September 16, 2022, I submitted the *Notice and Declaration Made on
Behalf of BMC Group, Inc.* [Docket No. 10] (the "September 16 Declaration").  In the
September 16 Declaration, I stated that BMC Group delivered outputs of publicly
available claims register data to Xclaim excel format on April 13, 2020, August 24, 2020,
November 4, 2020, February 1, 2021, and April 1, 2021.  After further internal
discussion, BMC Group believes that the disclosure of additional details related to the
transfer of publicly available claims data to Xclaim is warranted.

5.      A table identifying all of BMC Group's chapter 11 cases that were active
during the term of the Synchronization Agreement is attached hereto as **Exhibit A**.  The
table discloses for each chapter 11 case:  (i) whether BMC Group provided reformatted
publicly available claims data to Xclaim, (ii) knowledge of Xclaim facilitated claim
trades, and (iii) the fees and expenses earned under 28 U.S.C. § 156(c) and section 327 of
the Bankruptcy Code by BMC Group during the applicable period.  None of the claims
trades facilitated by Xclaim in BMC Group's chapter 11 cases were executed pursuant to
the terms of the Synchronization Agreement.

6.      In total, BMC Group transferred publicly available claims data to Xclaim
in 21 chapter 11 cases.  Two of these cases were located in the Southern District of New
York**.**

7.      To the best of my knowledge, information and belief, Xclaim was not a
party in interest in any of the chapter 11 cases in which BMC Group provided services
pursuant section 156(c) or section 327.

8.      BMC group never earned a Fee under the Synchronization Agreement, it never recorded a receivable due from Xclaim in its books and records, and no payments of any kind have ever been received by BMC Group from Xclaim, nor are payments expected in the future under the terms of the Synchronization Agreement or otherwise. Under no circumstance would BMC Group accept any payment were Xclaim to attempt to send such a payment on account of a claims trade purportedly made in a chapter 11 case in which BMC Group served or serves as the claims agent.

**Supplemental Disclosure Related to December 8 Declaration**

9.      On December 8, 2022, I submitted the *Declaration Made on Behalf of BMC Group, Inc.* [Docket No. 55] (the "December 8 Declaration").  Attached to the December 8 Declaration was (i) Exhibit B, a schedule that lists only those cases that were active as of BMC Group's execution of the Synchronization Agreement on April 23, 2019 (the "Pending Cases"), (ii) Exhibit C, a schedule that lists only those cases commenced on or after the execution of Synchronization Agreement on April 23, 2019 (the "Subsequent Cases"), and (iii) Exhibit D, a schedule that provides an accounting of all fees, costs, and reimbursements received, or approved by the applicable Bankruptcy Court in connection with BMC Group's retention in each of the Pending Cases and Subsequent Cases pursuant to (a) 28 U.S.C. § 156(c), and (b) pursuant to 11 U.S.C. § 327 or § 1103.

10.      Following the filing of the December 8 Declaration, on December 16, 2022, the Office of the United States Trustee (the "United States Trustee") requested that BMC Group supplement the December 8 Declaration by providing a breakdown of BMC Group's accounting for fees, costs and reimbursements for each of the Pending Cases and Subsequent Cases, categorized by section 327 retentions and section 156(c) retentions.

3

11.     On December 21, 2022, BMC Group provided the United States Trustee with the requested supplemental disclosures.  In addition to providing the requested supplemental breakdown of fees, costs, and reimbursements, BMC Group also removed three cases incorrectly designated as "Pending Cases" on Exhibit B and Exhibit D to the December 8 Declaration after determining that these cases had concluded prior to the execution of the Synchronization Agreement.

12.     The cases eliminated from the supplemental disclosure are (i) *In re Florida Gaming Centers, Inc.*, Case No. 13-29597 (Bankr. S.D. Fla.); (ii) *In re Gastar Exploration, Inc.*, Case No. 18-36057 (Bankr. S.D. Tex.); and (iii) *In re On-Site Sourcing, Inc.*, Case No. 09-10816 (Bankr. E.D. Va.).

13.     I am now submitting updated versions of the supplemental disclosures provided to the United States Trustee in order to complete the record before this Court with respect to the BMC Group's accounting for fees, costs and reimbursements in each of the Pending Cases and Subsequent Cases.

14.     Attached hereto as **Exhibit B** is the *Pending Case Schedule & Amounts Received by BMC Group*.  Exhibit B includes only those cases that were active as of the execution of the Synchronization Agreement on April 23, 2019.  The stated fees and expenses for each case include all amounts from the date of BMC Group's retention through the termination of the Synchronization Agreement on March 23, 2022.

15.     Attached hereto as **Exhibit C** is the *Subsequent Case Schedule & Amounts Received by BMC Group*.  Exhibit C includes only those cases commenced on or after the execution of the Synchronization Agreement on April 23, 2019.  The stated fees and expenses for each case include all amounts from the date of BMC Group's retention through the termination of the Synchronization Agreement on March 23, 2022.

16.     Attached here to as **Exhibit D** is *Revised Exhibit D to the December 8 Declaration [Docket No. 55].* Exhibit D includes all cases that were active during the time that the Synchronization Agreement was in effect. The stated fees and expenses for each case include all amounts incurred from the date of BMC Group's retention through the termination of the Synchronization Agreement on March 23, 2022.

**Supplemental Information Regarding
BMC Group and Synchronization Agreement**

*BMC Group*

17.     Since BMC Group was established in 1998, it has served as a court appointed claims agent for the Clerk under 28 U.S.C. § 156(c) in hundreds of chapter 11 cases nationwide and has served as an administrative professional employed by debtors-in-possession and chapter 11 trustees pursuant to section 327 of the Bankruptcy Code in many of those cases. BMC Group is comprised of leading industry professionals with significant experience in the administrative aspects of chapter 11 cases. BMC Group's professionals have experience in noticing, claims administration, solicitation, balloting, and facilitating other administrative aspects of chapter 11 cases, including in large and complex cases.

18.     BMC Group has historically provided public claims register information in reformatted electronic form (typically an Excel file) to various parties upon request without charging the applicable estate.

19.     Shortly before the date of this declaration, I became aware that this Court's December 8, 2020 Xclaim Opinion referred to a Bankruptcy Clerks' Manual (the "Clerks' Manual") which addressed public requests to the Clerk for customized reports. Specifically, Topic 12, Subtopic 9 of the Clerks' Manual instructed that "customized report should not be created for the public" by the Clerk.

20.     Because the Clerks' Manual is not a resource that is known to BMC

Group, I understand that my counsel contacted the Clerk for this Court to request a

copy of the Clerks' Manual.  In response to that request, the Clerk informed BMC

Group's counsel that the Clerks' Manual is not public and is provided to the Clerk by

the "Administrative Office" for internal guidance only.

21.     It is not clear that such guidance applies to court appointed claims agents.

*The Synchronization Agreement*

22.     In February 2019, Matthew Sedigh, Xclaim's Chief Executive Officer,

contacted me regarding a potential business arrangement whereby BMC Group would

provide Xclaim with publicly available information related to claims registers in

reformatted electronic form on an automated and synchronized basis in chapter 11

cases where BMC Group acted as a court-appointed claims agent.

23.     My discussions with Mr. Sedigh continued through April 2019.  During

these discussions, Mr. Sedigh represented to me that in cases where claims agents were

not engaged, the Clerk of Delaware Bankruptcy Court had granted Xclaim access to

claims data and that Xclaim had already processed 600 trades in the Delaware

Bankruptcy Court with the Clerk's approval.  Additionally, Mr. Sedigh informed me

that Xclaim was in the process of negotiating final agreements with at least three other

leading claims agents.

24.     On April 23, 2019, BMC Group and Xclaim executed the *Exclusive Access

Agreement* (the "Synchronization Agreement").  The Synchronization Agreement uses

the term "Accessible Data" to refer to claims data that would be accessed by Xclaim

through the yet to be developed API.  Although access to claims data through the API

(*i.e.*, Accessible Data) was to be exclusive to Xclaim under the Synchronization

Agreement, the same underlying claims data remained available to anyone who requested it at any time.

25.     Beginning in mid-2019 BMC Group cooperated with Xclaim's efforts to develop an API to synchronize its platform to the claims registers in BMC Group's chapter 11 cases.  Those efforts were unsuccessful and ceased in mid-2020.  BMC Group never provided Xclaim with automated, synchronized, or exclusive access to claims data in any of its chapter 11 cases.

***Discussions with United States Trustee Representative***

26.     On the morning of January 4, 2022, a representative of the United States Trustee contacted me to discuss an unspecified claims trading issue it was investigating related to Xclaim.

27.     On the afternoon of the same day, I spoke with the representative of the United States Trustee's office.  During our conversation the representative inquired about Xclaim generally and the relationship between Xclaim and BMC Group.  I informed him that BMC Group never implemented an API with Xclaim, nor had it received any compensation from Xclaim.  I further disclosed that historically BMC Group had provided public claims register information in reformatted electronic form to anyone who made such a request.

28.     On February 2, 2022, the representative of the United States Trustee contacted me to request a copy the BMC Group's agreement with Xclaim.  I promptly provided a copy of the Synchronization Agreement via email.

29.     On February 3, 2022, I followed upon with the representative of the United States Trustee concerning the X-claim inquiry and asked whether any further discussion or action was desired from the perspective of the United States Trustee.

30.     No further discussion or action was requested.

*Termination of Synchronization Agreement*

31.     On March 23, 2022, I formally provided written notice to Xclaim of BMC

Group's termination of under the terms of the Synchronization Agreement.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the

foregoing statements are true and correct to the best of my knowledge.


Dated:   January 13, 2023
           Seattle, Washington

                                          /s/ *Tinamarie Feil*
                                          Tinamarie Feil

**EXHIBIT A**

BMC Group's Chapter 11
(April 23, 2019 - March 23, 2022)

| Case No | District | Case Name [1], [2] | 327 Fees | 327 Exp | 156 Fees | 156 Exp | Claims Data Provided to Xclaim | Xclaim Facilitated Claims Transfer |
|---------|----------|--------------------|----------|---------|----------|---------|----------------------------|-------------------------|
| 18-52693 | Texas / Western | All American Oil & Gas, Inc. | 34,940.00 | 9,484.42 | | | No | No |
| 13-11761 | Delaware | AgFeed USA, LLC | - | - | - | - | Yes | No |
| 13-11761 | Delaware | AgFeed USA, LLC | - | - | - | - | Yes | No |
| 17-10635 | Delaware | Aerospace Holdings, Inc. | - | - | - | - | No | No |
| 17-10635 | Delaware | Aerospace Holdings, Inc. | - | - | - | - | No | No |
| 15-11951 | New York / Southern | Airfasttickets, Inc. | - | - | 11,884.50 | 5,861.90 | Yes | No |
| 10-30631 | Alabama / Middle | Allegro Law, LLC | - | - | - | - | No | No |
| 16-22376 | New Jersey | Altomare Auto Group, LLC | - | - | 1,149.50 | 9,531.50 | No | No |
| 15-15073 | Colorado | American Eagle Energy Corporation | - | - | 229.50 | - | No | No |
| 19-61608 | Kentucky/Eastern | Americore Holdings, LLC | - | - | - | 65,724.18 | No | No |
| 09-10695 | Delaware | Anderson News, LLC | - | - | 5,714.80 | 14,869.17 | No | No |
| 20-11941 | Delaware | Llednara Holdings, Inc. | - | - | 80,602.00 | 33,590.23 | Yes | No |
| 17-07036 | Tennessee / Middle | Auto Masters, LLC | - | - | - | - | No | No |
| 15-34287 | Texas | Black Elk Energy Offshore Operations | - | - | - | - | No | No |
| 15-34287 | Texas | Black Elk Energy Offshore Operations | - | - | - | - | No | No |
| 14-23728 | New York / Southern | Binder & Binder | - | - | 265.50 | 121.65 | No | No |
| AP 15-833 | New York / Southern | Binder & Binder | - | - | - | - | No | No |
| 21-41010 | Georgia / Northern | Brown Industries | | | 58,637.00 | 6,099.76 | No | No |
| 20-10554 | California / Central | CPESAZ LIQUIDATING, INC. | - | - | 184,530.00 | 80,768.91 | Yes | No |
| 18-05665 | Tennessee / Middle | CURAE Health, Inc. | - | - | 55,971.50 | 26,168.27 | Yes | No |
| 18-23750 | Florida / Southern | Daymark Realty Advisors Inc. | - | - | - | 28,460.72 | No | No |
| 18-27963 | New Jersey | Duro Dyne | - | - | 85,869.00 | 26,298.03 | Yes | No |
| 21-31070 | Texas / Southern | Entrust Energy, Inc. | - | - | 203,531.00 | 148,169.27 | No | No |
| 09-37010 | Texas / Northern | Erickson Retirement Communities, LLC | - | - | - | - | No | No |
| 18-07762 | Indiana / Southern | Fayette Memorial Hospital Association, Inc | - | - | 87,094.00 | 31,885.64 | Yes | No |
| 16-40050 | California / Northern | Fox Ortega Enterprises, Inc. dba PREMIERCRU | - | - | 47,058.00 | 48,859.71 | No | No |
| 14-12188 | New Hampshire | Fred Fuller Oil | - | - | - | | No | No |
| 21-30721 | Texas / Northern | Fresh Acquisitions, LLC | 201,060.97 | 84,894.38 | 47,309.53 | 1,714.03 | No | No |
| 15-11469 | Delaware | F-Squared Investment Management, LLC | - | - | | | Yes | No |
| 15-11469 | Delaware | F-Squared Investment Management, LLC | - | - | 3,813.00 | 1,029.94 | Yes | No |
| 15-41915 | Missouri / Western | Gas-Mart USA, Inc. | - | - | - | - | No | No |
| 20-31318 | Texas / Northern | GGI Holdings, LLC | 202,084.00 | 148,485.91 | - | - | Yes | Yes |
| 15-13670 | Maryland | Gourmet Express | - | - | - | - | No | No |
| 15-15249 | Illinois / Northern | Gulf Packaging, Inc. | - | - | - | - | No | No |
| 12-12036 | Delaware | Hess Industries, Inc. | - | - | - | - | No | No |
| 18-30039 | Illinois / Northern | Morgan Administration, Inc. | - | - | 111,351.00 | 51,641.96 | Yes | No |
| 14-42863 | Georgia / Northern | Hutcheson Medical Center, Inc. | - | - | 2,985.00 | 28,955.69 | No | No |
| 19-15959 | Nevada | Jagged Peak, Inc. | - | - | 143,753.50 | 65,505.38 | Yes | No |

BMC Group's Chapter 11
(April 23, 2019 - March 23, 2022)

| Case No | District | Case Name | 327 Fees | 327 Exp | 156 Fees | 156 Exp | Claims Data Provided to Xclaim |
|---|---|---|---|---|---|---|---|
| 16-21142 | Kansas | John Q Hammons 2006, LLC | - | - | 42,317.00 | 2,762.68 | Yes | No |
| 19-11095 | Delaware | JRV Group | 11,044.50 | 22.50 | - | - | Yes | No |
| 19-11095 | Delaware | JRV Group | - | - | 99,057.50 | 34,436.90 | Yes | No |
| 22-10165 | Delaware | Lear Capital | - | - | 13,948.00 | - | No | No |
| 19-42510 | Eastern District of Michigan | Body Contour Ventures | - | - | 16,824.00 | 2,504.81 | No | No |
| 21-32351 | Texas / Southern | Limetree Bay Services, LLC | - | - | 195,932.00 | 64,561.58 | No | No |
| 14-51667 | Mississippi / Southern | Mississippi Phosphates Corporation | - | - | - | - | No | No |
| 17-31646 | Texas / Southern | Montco Offshore, Inc. | - | - | - | - | No | No |
| 21-15739 | Colorado | NITROcrete, LLC | - | - | 2,164.00 | 3,879.41 | No | No |
| 21-31784 | Texas / Southern | OFS International, LLC | - | - | 71,915.50 | 30,548.09 | No | Yes |
| 13-04006 | Tennessee / Middle | O Corp fka Oreck Corporation | - | - | 3,135.00 | 4,815.25 | No | No |
| 19-17633 | Colorado | PetroShare | - | - | 97,637.00 | 60,427.44 | Yes | No |
| 15-35615 | Texas | RAAM Global Energy Corporation | - | - | 2,680.50 | 224.66 | No | No |
| 11-11083 | Delaware | Regen Biologics, Inc. | - | - | - | - | No | No |
| 15-12406 | Delaware | Restaurants Acquisition I, LLC | - | - | - | - | No | No |
| 18-33513 | Texas / Northern | Rockies Region | 33,963.50 | 31,378.05 | | | Yes | No |
| 13-37725 | New York | St. Francis Hospital, Poughkeepsie, New York | | | 2,268.50 | 2,424.00 | Yes | No |
| 13-37725 | New York | St. Francis Hospital, Poughkeepsie, New York | - | - | - | - | Yes | No |
| 21-11001 | Delaware | Sharity Ministries, Inc. | - | - | 191,406.00 | 72,688.34 | No | No |
| 21-11001 | Delaware | Sharity Ministries, Inc. | 20,418.00 | - | - | - | No | No |
| 09-29162 | California / Eastern | SK Foods LP | - | - | 45,968.00 | 14,278.86 | Yes | No |
| 19-11973 | Delaware | SGR Winddown, Inc. | - | - | 143,242.73 | 87,775.37 | Yes | No |
| 19-11973 | Delaware | SGR Winddown, Inc. | 36,284.50 | - | | | Yes | No |
| 09-07047 | Florida / Middle | Taylor, Bean & Whitaker Mortgage Corp. | - | - | 109,985.50 | 14,697.31 | No | No |
| 01-12974 | New York / Southern | Teligent | - | - | - | - | No | No |
| 21-14170 | Nevada | Tix Corporation | - | - | 67,201.00 | 25,308.40 | No | No |
| 19-11299 | Delaware | Sportco Holdings, Inc. | - | - | 149,241.50 | 115,268.01 | No | No |
| 19-11299 | Delaware | Sportco Holdings, Inc. | 59,607.00 | 234.18 | - | - | No | No |
| 17-32186 | Texas / Southern | Uplift RX LLC | 18,158.00 | 2,444.80 | 3,572.00 | 89,826.33 | Yes | No |
| 17-32186 | Texas / Southern | Uplift RX LLC | - | - | 2,159.50 | 1,000.00 | Yes | No |
| 16-03296 | Tennessee / Middle | Vanguard Healthcare, LLC | - | - | 4,123.00 | 2,666.23 | Yes | No |
| 01-01139 | Delaware | WR Grace | 7,432.50 | 33,436.98 | - | - | No | No |
| 20-12599 | Delaware | YogaWorks | - | - | 187,358.00 | 64,506.98 | Yes | No |
| 20-12599 | Delaware | YogaWorks | 28,048.00 | - | - | - | Yes | No |
| 15-24585 | New Jersey | Zucker, Goldberg & Ackerman, LLC | - | - | - | - | No | No |
| | | **Grand Total** | **653,040.97** | **310,381.22** | **2,583,884.56** | **1,369,856.59** | | |

**Breakout of SDNY Cases**

| Case No | District | Case Name [1], [2] | 327 Fees | 327 Exp | 156 Fees | 156 Exp | Claims Data Provided to Xclaim |
|---|---|---|---|---|---|---|---|
| 15-11951 | New York / Southern | Airfasttickets, Inc. | - | - | 11,884.50 | 5,861.90 | Yes |
| 14-23728 | New York / Southern | Binder & Binder | - | - | 265.50 | 121.65 | No |
| 13-37725 | New York | St. Francis Hospital, Poughkeepsie, New York | | | 2,268.50 | 2,424.00 | Yes |
| 01-12974 | New York / Southern | Teligent | - | - | - | - | No |
| | | **Grand Total** | **-** | **-** | **14,418.50** | **8,407.55** | |

**BMC Group's Chapter 11**
**(April 23, 2019 - March 23, 2022)**

**Footnotes**

[1] This schedule includes all cases that were active during the time that the Synchronization Agreement was in effect.  The stated fees and expenses for each case include all amounts paid in connection BMC Group's retention from the date the Synchronization Agreement was signed on April 22, 2022 through its termination on March 23, 2022.

[2] In certain cases, the reported amounts for 156 fees and expenses includes amounts by BMC Group after plan confirmation.  Such post-confirmation fees and expenses were not the subject of a fee application, but have been in included in the reported amounts.

**EXHIBIT B**

Pending Case Schedule and Report of Amounts Received by BMC Group

| Case No | District | Case Name [1] | Per BMC Group's Books & Records | | | | 327 Fees | 327 Exp | 156 Fees | 156 Exp | Exhibit [2] |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | Fees | Expenses | Total Billed | Total Paid | | | | | |
| 18-52693 | Texas / Western | All American Oil & Gas, Inc. | 190,243.00 | 52,346.58 | 242,589.58 | 242,589.58 | 190,243.00 | 52,346.58 | N/A | N/A | B |
| 13-11761 | Delaware | AgFeed USA, LLC | 156,505.50 | 154,697.76 | 311,203.26 | 311,203.26 | N/A | N/A | 156,505.50 | 154,697.76 | B |
| 13-11761 | Delaware | AgFeed USA, LLC | 76,317.50 | 50,549.88 | 126,867.38 | 126,867.38 | 76,235.50 | 50,549.88 | N/A | N/A | B |
| 17-10635 | Delaware | Aerospace Holdings, Inc. | 63,703.50 | 20,458.70 | 84,162.20 | 84,162.20 | N/A | N/A | 63,703.50 | 20,458.70 | B |
| 17-10635 | Delaware | Aerospace Holdings, Inc. | 55,562.50 | 4,540.24 | 60,102.74 | 60,102.74 | 54,567.30 | 4,540.21 | N/A | N/A | B |
| 15-11951 | New York / Southern | Airfasttickets, Inc. | 77,622.35 | 29,057.53 | 106,679.88 | 106,679.88 | 8,561.25 | 1,268.14 | 69,061.10 | 27,789.39 | B |
| 10-30631 | Alabama / Middle | Allegro Law, LLC | 124,029.50 | 107,019.39 | 231,048.89 | 231,048.89 | N/A | N/A | 124,029.50 | 107,019.39 | B |
| 16-22376 | New Jersey | Altomare Auto Group, LLC | 18,830.50 | 46,984.41 | 65,814.91 | 59,801.69 | N/A | N/A | 18,830.50 | 46,984.41 | B |
| 15-15073 | Colorado | American Eagle Energy Corporation | 56,677.00 | 169,983.45 | 226,660.45 | 226,660.45 | N/A | N/A | 56,677.00 | 169,983.45 | B |
| 09-10695 | Delaware | Anderson News, LLC | 42,938.30 | 64,349.76 | 107,288.06 | 107,288.06 | N/A | N/A | 42,938.30 | 64,349.76 | B |
| 17-07036 | Tennessee / Middle | Auto Masters, LLC | 34,289.50 | 6,013.58 | 40,303.08 | 40,303.08 | N/A | N/A | 34,289.50 | 6,013.58 | B |
| 15-34287 | Texas | Black Elk Energy Offshore Operations | 757.00 | 1,264.16 | 2,021.16 | 2,021.16 | N/A | N/A | 757.00 | 1,264.16 | B |
| 15-34287 | Texas | Black Elk Energy Offshore Operations | 62,816.00 | 112,954.74 | 175,770.74 | 139,155.44 | N/A | N/A | 62,816.00 | 112,954.74 | B |
| 14-23728 | New York / Southern | Binder & Binder | 108,326.00 | 50,532.35 | 158,858.35 | 158,858.35 | N/A | N/A | 108,326.00 | 50,532.35 | B |
| AP 15-8336 | New York / Southern | Binder & Binder | 8,379.00 | 1,996.76 | 10,375.76 | 10,000.00 | 8,003.24 | 1,996.76 | N/A | N/A | B |
| 21-41010 | Georgia / Northern | Brown Industries | 58,637.00 | 6,099.76 | 64,736.76 | 64,736.76 | N/A | N/A | 58,637.00 | 6,099.76 | B |
| 18-23750 | Florida / Southern | Daymark Realty Advisors Inc. | 24,387.64 | 71,078.70 | 95,466.34 | 61,267.60 | N/A | N/A | 0.00 | 61,267.60 | B |
| 18-27963 | New Jersey | Daro Dress | 185,271.75 | 60,984.76 | 246,256.51 | 246,256.51 | N/A | N/A | 185,271.75 | 60,984.76 | B |
| 21-31070 | Texas / Southern | Entrust Energy, Inc. | 203,531.00 | 148,169.27 | 351,700.27 | 351,700.27 | * | * | 203,531.00 | 148,169.27 | B |
| 18-07762 | Indiana / Southern | Fayette Memorial Hospital Association, Inc | 99,757.00 | 38,078.02 | 137,835.02 | 137,835.02 | N/A | N/A | 99,757.00 | 38,078.02 | B |
| 16-40050 | California / Northern | Fox Ortega Enterprises, Inc. dba PREMIERCRU | 114,166.75 | 127,181.36 | 241,348.11 | 239,786.95 | N/A | N/A | 114,166.75 | 127,181.36 | B |
| 14-12188 | New Hampshire | Fred Fuller Oil | 5,617.00 | 31,158.13 | 36,775.13 | 36,775.13 | N/A | N/A | 5,617.00 | 31,158.13 | B |
| 21-30721 | Texas / Northern | Fresh Acquisitions, LLC | 248,370.50 | 86,608.41 | 334,978.91 | 334,978.91 | 201,060.97 | 84,894.38 | 47,309.53 | 1,714.03 | B |
| 15-11469 | Delaware | F-Squared Investment Management, LLC | 134,857.36 | 156,068.20 | 290,925.56 | 290,925.56 | N/A | N/A | 134,857.36 | 156,068.20 | B |
| 15-41915 | Missouri / Western | Gas-Mart USA, Inc. | 73,603.50 | 35,940.83 | 109,544.33 | 109,544.27 | N/A | N/A | 73,603.50 | 35,940.83 | B |
| 20-31318 | Texas / Northern | GGI Holdings, LLC | 202,084.00 | 148,485.91 | 350,569.91 | 350,569.91 | 202,084.00 | 148,485.91 | N/A | N/A | B |
| 15-15249 | Illinois / Northern | Golf Packaging, Inc. | 102,546.00 | 32,069.39 | 134,615.39 | 134,615.39 | N/A | N/A | 102,546.00 | 32,069.39 | B |
| 12-12036 | Delaware | Hess Industries, Inc. | 5,206.55 | 10,897.98 | 16,104.53 | 16,104.53 | N/A | N/A | 5,206.55 | 10,897.98 | B |
| 18-30039 | Illinois / Northern | Morgan Administration, Inc. | 155,441.50 | 89,469.90 | 244,911.40 | 244,911.40 | N/A | N/A | 155,441.50 | 89,469.90 | B |
| 14-42863 | Georgia / Northern | Hutcheson Medical Center, Inc. | 79,748.00 | 116,112.62 | 195,860.62 | 195,860.62 | N/A | N/A | 79,748.00 | 116,112.62 | B |
| 19-15959 | Nevada | Jagged Peak, Inc. | 143,753.50 | 65,505.38 | 209,258.88 | 209,258.88 | N/A | N/A | 143,753.50 | 65,505.38 | B |
| 19-11095 | Delaware | JRV Group | 11,044.50 | 22.50 | 11,067.00 | 11,067.00 | 11,044.50 | 22.50 | N/A | N/A | B |
| 19-42510 | Eastern District of Michigan | Body Contour Ventures | 81,809.50 | 20,650.14 | 102,459.64 | 82,459.64 | N/A | N/A | 61,809.50 | 20,650.14 | B |
| 14-51667 | Mississippi / Southern | Mississippi Phosphates Corporation | 254,418.00 | 161,917.87 | 416,335.87 | 416,335.87 | N/A | N/A | 254,418.00 | 161,917.87 | B |
| 17-31646 | Texas / Southern | Montco Offshore, Inc. | 179,798.00 | 93,344.45 | 273,142.45 | 273,142.45 | N/A | N/A | 179,798.00 | 93,344.45 | B |
| 13-04006 | Tennessee / Middle | O Corp fka Oreck Corporation | 397,249.00 | 174,756.65 | 572,005.65 | 572,005.65 | N/A | N/A | 397,249.00 | 174,756.65 | B |
| 15-35615 | Texas | RAAM Global Energy Corporation | 164,246.10 | 205,651.76 | 369,897.86 | 369,897.86 | N/A | N/A | 164,246.10 | 205,651.76 | B |
| 11-11083 | Delaware | Regen Biologics, Inc. | 50,993.00 | 30,141.72 | 81,134.72 | 81,134.72 | N/A | N/A | 50,993.00 | 30,141.72 | B |
| 15-12406 | Delaware | Restaurants Acquisition I, LLC | 49,199.00 | 40,471.62 | 89,670.62 | 10,000.00 | N/A | N/A | N/A | 10,000.00 | B |
| 18-33513 | Texas / Northern | Rockies Region | 79,323.00 | 51,380.66 | 130,703.66 | 130,686.66 | 44,639.00 | 33,472.77 | N/A | N/A | B |
| 13-37725 | New York | St. Francis Hospital, Poughkeepsie, New York | 264,512.50 | 239,677.80 | 504,190.30 | 504,190.30 | N/A | N/A | 264,512.50 | 239,677.80 | B |
| 13-37725 | New York | St. Francis Hospital, Poughkeepsie, New York | 10,032.00 | 0.00 | 10,032.00 | 10,032.00 | N/A | N/A | 10,000.00 | 0.00 | B |
| 09-29162 | California / Eastern | SK Foods LP | 532,834.00 | 352,460.86 | 885,294.86 | 885,294.86 | N/A | N/A | 532,834.00 | 352,460.86 | B |
| 09-07047 | Florida / Middle | Taylor, Bean & Whitaker Mortgage Corp. | 3,180,647.50 | 994,761.03 | 4,175,408.53 | 3,990,190.37 | N/A | N/A | 2,995,429.34 | 994,761.03 | B |
| 01-12974 | New York / Southern | Teligent | 114,756.00 | 33,809.94 | 148,565.94 | 148,565.94 | N/A | N/A | 114,756.00 | 33,809.94 | B |
| 17-32186 | Texas / Southern | Uplift RX LLC | 59,564.50 | 169,631.96 | 229,196.46 | 228,824.71 | 18,158.00 | 2,444.80 | 41,406.50 | 167,187.16 | B |
| 17-32186 | Texas / Southern | Uplift RX LLC | 2,159.50 | 1,000.00 | 3,159.50 | 3,159.50 | N/A | N/A | 2,159.50 | 1,000.00 | B |
| 16-03296 | Tennessee / Middle | Vanguard Healthcare, LLC | 188,269.00 | 109,696.28 | 297,965.28 | 297,965.28 | N/A | N/A | 188,269.00 | 109,696.28 | B |
| 01-01139 | Delaware | WR Grace | 10,051,660.00 | 1,027,482.50 | 11,079,142.50 | 10,201,405.39 | 9,263,172.09 | 835,934.37 | N/A | N/A | B |
| 15-24585 | New Jersey | Zucker, Goldberg & Ackerman, LLC | 42,317.50 | 102,713.36 | 145,030.86 | 145,030.86 | N/A | N/A | 42,317.50 | 102,713.36 | B |
| | | **Grand Total** | 18,628,808.80 | 5,906,229.00 | 24,535,037.80 | 23,293,258.93 | 10,077,768.85 | 1,215,956.30 | 7,447,578.28 | 4,440,533.93 | |

**Footnotes**

[1] This schedule includes all cases that were active as of the execution of Synchronization Agreement on April 23, 2019. The stated fees and expenses for each case include all amounts incurred from the date of BMC Group's retention through the termination of the Synchronization Agreement on March 23, 202

[2] Cross reference to the related Exhibit annexed the *Tinamarie Feil Declaration,* dated December 8, 2022 [Docket No. 55].

**EXHIBIT C**

Subsequent Case Schedule and Report of Amounts Received by BMC Group

| Case No | District | Case Name [1] | Fees | Expenses | Total Billed | Total Paid | 327 Fees | 327 Exp | 156 Fees | 156 Exp | Exhibit [2] |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | Per BMC Group's Books & Records | | | | | | |
| 19-61608 | Kentucky/Eastern | Americore Holdings, LLC | 0.00 | 65,724.18 | 65,724.18 | 65,724.18 | N/A | N/A | 0.00 | 65,724.18 | C |
| 20-11941 | | Llednara Holdings, Inc. | 80,602.00 | 33,590.23 | 114,192.23 | 114,192.23 | N/A | N/A | 80,602.00 | 33,590.23 | C |
| 20-10554 | California / Central | CPESAZ LIQUIDATING, INC. | 184,530.00 | 80,768.91 | 265,298.91 | 265,346.41 | N/A | N/A | 184,530.00 | 80,768.91 | C |
| 18-05665 | Tennessee / Middle | CURAE Health, Inc. | 167,765.50 | 146,578.82 | 314,344.32 | 314,344.32 | N/A | N/A | 167,765.50 | 146,578.82 | C |
| 09-37010 | Texas / Northern | Erickson Retirement Communities, LLC | 757,502.50 | 175,018.63 | 932,521.13 | 735,075.62 | N/A | N/A | 757,502.50 | 175,018.63 | C |
| 15-11469 | Delaware | F-Squared Investment Management, LLC | 28,497.50 | 0.00 | 28,497.50 | 28,497.50 | 30,797.50 | 0.00 | N/A | N/A | C |
| 15-13670 | Maryland | Gourmet Express | 17,115.28 | 17,040.80 | 34,156.08 | 34,156.08 | N/A | N/A | 17,115.28 | 17,040.80 | C |
| 16-21142 | Kansas | John Q Hammons 2006, LLC | 474,496.00 | 391,023.42 | 865,519.42 | 865,519.42 | N/A | N/A | 474,496.00 | 391,023.42 | C |
| 19-11095 | Delaware | JRV Group | 99,057.50 | 34,436.90 | 133,494.40 | 133,494.40 | N/A | N/A | 99,057.50 | 34,436.90 | C |
| 22-10165 | Delaware | Lear Capital | 13,948.00 | 0.00 | 13,948.00 | 13,948.00 | N/A | N/A | 13,948.00 | 0.00 | C |
| 21-32351 | Texas / Southern | Limetree Bay Services, LLC | 201,725.50 | 64,561.58 | 266,287.08 | 266,287.08 | N/A | N/A | 201,725.50 | 64,561.58 | C |
| 21-15739 | Colorado | NITROcrete, LLC | 2,164.00 | 3,879.41 | 6,043.41 | 6,043.41 | N/A | N/A | 2,164.00 | 3,879.41 | C |
| 21-31784 | Texas / Southern | OFS International, LLC | 71,915.50 | 30,548.09 | 102,463.59 | 102,463.59 | * | * | 71,915.50 | 30,548.09 | C |
| 19-17633 | Colorado | PetroShare | 97,637.00 | 60,427.44 | 158,064.44 | 158,064.44 | N/A | N/A | 97,637.00 | 60,427.44 | C |
| 21-11001 | Delaware | Sharity Ministries, Inc. | 191,406.00 | 72,688.34 | 264,094.34 | 264,094.34 | N/A | N/A | 191,406.00 | 72,688.34 | C |
| 21-11001 | Delaware | Sharity Ministries, Inc. | 20,418.00 | 0.00 | 20,418.00 | 20,418.00 | 20,418.00 | 0.00 | N/A | N/A | C |
| 19-11973 | Delaware | SGR Winddown, Inc. | 155,536.50 | 87,775.37 | 243,311.87 | 242,337.60 | N/A | N/A | 155,536.50 | 87,775.37 | C |
| 19-11973 | Delaware | SGR Winddown, Inc. | 36,284.50 | 0.00 | 36,284.50 | 36,284.50 | 36,284.50 | 0.00 | N/A | N/A | C |
| 21-14170 | Nevada | Tix Corporation | 67,201.00 | 25,308.40 | 92,509.40 | 92,509.40 | N/A | N/A | 67,201.00 | 25,308.40 | C |
| 19-11299 | Delaware | Sportco Holdings, Inc. | 159,334.50 | 115,268.01 | 274,602.51 | 274,606.11 | N/A | N/A | 159,334.50 | 115,268.01 | C |
| 19-11299 | Delaware | Sportco Holdings, Inc. | 59,607.00 | 234.18 | 59,841.18 | 59,841.18 | 59,625.00 | 234.18 | N/A | N/A | C |
| 20-12599 | Delaware | YogaWorks | 204,199.00 | 64,506.98 | 268,705.98 | 268,705.98 | N/A | N/A | 204,199.00 | 64,506.98 | C |
| 20-12599 | Delaware | YogaWorks | 28,048.00 | 0.00 | 28,048.00 | 28,048.00 | 28,048.00 | 0.00 | N/A | N/A | C |
| | | **Grand Total** | 3,118,990.78 | 1,469,379.69 | 4,588,370.47 | 4,390,001.79 | 175,173.00 | 234.18 | 2,946,135.78 | 1,469,145.51 | |

**Footnotes**

[1] This schedule includes all cases that were commenced on or after the execution of Synchronization Agreement on April 23, 2019.  The stated fees and expenses for each case include all amounts incurred from the date of BMC Group's retention through the termination of the Synchronization Agreement on March 23, 2022.

[2] Cross reference to the related Exhibit annexed the *Tinamarie Feil Declaration,* dated December 8, 2022 [Docket No. 55].

**EXHIBIT D**

Revised Exhibit D to Tinamarie Feil Declaration dated December 8, 2022 [Docket No. 55]

| | | | Per BMC Group's Books & Records | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Case No | District | Case Name [1] | Fees | Expenses | Total Billed | Total Paid | 327 Fees | 327 Exp | 156 Fees | 156 Exp | Exhibit [2] |
| 18-52693 | Texas / Western | All American Oil & Gas, Inc. | 190,243.00 | 52,346.58 | 242,589.58 | 242,589.58 | 190,243.00 | 52,346.58 | N/A | N/A | B |
| 13-11761 | Delaware | AgFeed USA, LLC | 156,505.50 | 154,697.76 | 311,203.26 | 311,203.26 | N/A | N/A | 156,505.50 | 154,697.76 | B |
| 13-11761 | Delaware | AgFeed USA, LLC | 76,317.50 | 50,549.88 | 126,867.38 | 126,867.38 | 76,235.50 | 50,549.88 | N/A | N/A | B |
| 17-10635 | Delaware | Aerospace Holdings, Inc. | 63,703.50 | 20,458.70 | 84,162.20 | 84,162.20 | N/A | N/A | 63,703.50 | 20,458.70 | B |
| 17-10635 | Delaware | Aerospace Holdings, Inc. | 55,562.50 | 4,540.24 | 60,102.74 | 60,102.74 | 54,567.30 | 4,540.21 | N/A | N/A | B |
| 15-11951 | New York / Southern | Airfasttickets, Inc. | 77,622.35 | 29,057.53 | 106,679.88 | 106,679.88 | 8,561.25 | 1,268.14 | 69,061.10 | 27,789.39 | B |
| 10-30631 | Alabama / Middle | Allegro Law, LLC | 124,029.50 | 107,019.39 | 231,048.89 | 231,048.89 | N/A | N/A | 124,029.50 | 107,019.39 | B |
| 16-22376 | New Jersey | Altomare Auto Group, LLC | 18,830.50 | 46,984.41 | 65,814.91 | 59,801.69 | N/A | N/A | 18,830.50 | 46,984.41 | B |
| 15-15073 | Colorado | American Eagle Energy Corporation | 56,677.00 | 169,983.45 | 226,660.45 | 226,660.45 | N/A | N/A | 56,677.00 | 169,983.45 | B |
| 19-61608 | Kentucky/Eastern | Americore Holdings, LLC | 0.00 | 65,724.18 | 65,724.18 | 65,724.18 | N/A | N/A | 0.00 | 65,724.18 | C |
| 09-10695 | Delaware | Anderson News, LLC | 42,938.30 | 64,349.76 | 107,288.06 | 107,288.06 | N/A | N/A | 42,938.30 | 64,349.76 | B |
| 20-11941 | Delaware | Llednara Holdings, Inc. | 80,602.00 | 33,590.23 | 114,192.23 | 114,192.23 | N/A | N/A | 80,602.00 | 33,590.23 | C |
| 17-07036 | Tennessee / Middle | Auto Masters, LLC | 34,289.50 | 6,013.58 | 40,303.08 | 40,303.08 | N/A | N/A | 34,289.50 | 6,013.58 | B |
| 15-34287 | Texas | Black Elk Energy Offshore Operations | 757.00 | 1,264.16 | 2,021.16 | 2,021.16 | N/A | N/A | 757.00 | 1,264.16 | B |
| 15-34287 | Texas | Black Elk Energy Offshore Operations | 62,816.00 | 112,954.74 | 175,770.74 | 139,155.44 | N/A | N/A | 62,816.00 | 112,954.74 | B |
| 14-23728 | New York / Southern | Binder & Binder | 108,326.00 | 50,532.35 | 158,858.35 | 158,858.35 | N/A | N/A | 108,326.00 | 50,532.35 | B |
| AP 15-8336 | New York / Southern | Binder & Binder | 8,379.00 | 1,996.76 | 10,375.76 | 10,000.00 | 8,003.24 | 1,996.76 | N/A | N/A | B |
| 21-41010 | Georgia / Northern | Brown Industries | 58,637.00 | 6,099.76 | 64,736.76 | 64,736.76 | N/A | N/A | 58,637.00 | 6,099.76 | B |
| 20-10554 | California / Central | CPESAZ LIQUIDATING, INC. | 184,530.00 | 80,768.91 | 265,298.91 | 265,346.41 | N/A | N/A | 184,530.00 | 80,768.91 | C |
| 18-05665 | Tennessee / Middle | CURAE Health, Inc. | 167,765.50 | 146,578.82 | 314,344.32 | 314,344.32 | N/A | N/A | 167,765.50 | 146,578.82 | C |
| 18-23750 | Florida / Southern | Daymark Realty Advisors Inc. | 24,387.64 | 71,078.70 | 95,466.34 | 61,267.60 | N/A | N/A | 0.00 | 61,267.60 | B |
| 18-27963 | New Jersey | Duro Dyne | 185,271.75 | 60,984.76 | 246,256.51 | 246,256.51 | N/A | N/A | 185,271.75 | 60,984.76 | B |
| 21-31070 | Texas / Southern | Entrust Energy, Inc. | 203,531.00 | 148,169.27 | 351,700.27 | 351,700.27 | * | * | 203,531.00 | 148,169.27 | B |
| 09-37010 | Texas / Northern | Erickson Retirement Communities, LLC | 757,502.50 | 175,018.63 | 932,521.13 | 735,075.62 | N/A | N/A | 757,502.50 | 175,018.63 | C |
| 18-07762 | Indiana / Southern | Fayette Memorial Hospital Association, Inc | 99,757.00 | 38,078.02 | 137,835.02 | 137,835.02 | N/A | N/A | 99,757.00 | 38,078.02 | B |
| 16-40050 | California / Northern | Fox Ortega Enterprises, Inc. dba PREMIERCRU | 114,166.75 | 127,181.36 | 241,348.11 | 239,786.95 | N/A | N/A | 114,166.75 | 127,181.36 | B |
| 14-12188 | New Hampshire | Fred Fuller Oil | 5,617.00 | 31,158.13 | 36,775.13 | 36,775.13 | N/A | N/A | 5,617.00 | 31,158.13 | B |
| 21-30721 | Texas / Northern | Fresh Acquisitions, LLC | 248,370.50 | 86,608.41 | 334,978.91 | 334,978.91 | 201,060.97 | 84,894.38 | 47,309.53 | 1,714.03 | B |
| 15-11469 | Delaware | F-Squared Investment Management, LLC | 28,497.50 | 0.00 | 28,497.50 | 28,497.50 | 30,797.50 | N/A | N/A | N/A | C |
| 15-11469 | Delaware | F-Squared Investment Management, LLC | 134,857.36 | 156,068.20 | 290,925.56 | 290,925.56 | N/A | N/A | 134,857.36 | 156,068.20 | B |
| 15-49115 | Missouri / Western | Gas-Mart USA, Inc. | 73,603.50 | 35,940.83 | 109,544.33 | 109,544.27 | N/A | N/A | 73,603.50 | 35,940.83 | B |
| 20-31318 | Texas / Northern | GGI Holdings, LLC | 202,084.00 | 148,485.91 | 350,569.91 | 350,569.91 | 202,084.00 | 148,485.91 | N/A | N/A | B |
| 15-13670 | Maryland | Gourmet Express | 17,115.28 | 17,040.80 | 34,156.08 | 34,156.08 | N/A | N/A | 17,115.28 | 17,040.80 | C |
| 15-15249 | Illinois / Northern | Gulf Packaging, Inc. | 102,546.00 | 32,069.39 | 134,615.39 | 134,615.39 | N/A | N/A | 102,546.00 | 32,069.39 | B |
| 12-12036 | Delaware | Hess Industries, Inc. | 5,206.55 | 10,897.98 | 16,104.53 | 16,104.53 | N/A | N/A | 5,206.55 | 10,897.98 | B |
| 18-30039 | Illinois / Northern | Morgan Administration, Inc. | 155,441.50 | 89,469.90 | 244,911.40 | 244,911.40 | N/A | N/A | 155,441.50 | 89,469.90 | B |
| 14-42863 | Georgia / Northern | Hutcheson Medical Center, Inc. | 79,748.00 | 116,112.62 | 195,860.62 | 195,860.62 | N/A | N/A | 79,748.00 | 116,112.62 | B |
| 19-15959 | Nevada | Jagged Peak, Inc. | 143,753.50 | 65,505.38 | 209,258.88 | 209,258.88 | N/A | N/A | 143,753.50 | 65,505.38 | B |
| 16-21142 | Kansas | John Q Hammons 2006, LLC | 474,496.00 | 391,023.42 | 865,519.42 | 865,519.42 | N/A | N/A | 474,496.00 | 391,023.42 | C |
| 19-11095 | Delaware | JRV Group | 11,044.50 | 22.50 | 11,067.00 | 11,067.00 | 11,044.50 | 22.50 | N/A | N/A | B |
| 19-11095 | Delaware | JRV Group | 99,057.50 | 34,436.90 | 133,494.40 | 133,494.40 | N/A | N/A | 99,057.50 | 34,436.90 | C |
| 22-10165 | Delaware | Lear Capital | 13,948.00 | 0.00 | 13,948.00 | 13,948.00 | N/A | N/A | 13,948.00 | 0.00 | C |
| 19-42510 | Eastern District of Michigan | Body Contour Ventures | 81,809.50 | 20,650.14 | 102,459.64 | 82,459.64 | N/A | N/A | 61,809.50 | 20,650.14 | B |
| 21-32351 | Texas / Southern | Limetree Bay Services, LLC | 195,932.00 | 64,561.58 | 260,493.58 | 260,493.58 | N/A | N/A | 195,932.00 | 64,561.58 | C |
| 14-51667 | Mississippi / Southern | Mississippi Phosphates Corporation | 254,418.00 | 161,917.87 | 416,335.87 | 416,335.87 | N/A | N/A | 254,418.00 | 161,917.87 | B |
| 17-31646 | Texas / Southern | Montco Offshore, Inc. | 179,798.00 | 93,344.45 | 273,142.45 | 273,142.45 | N/A | N/A | 179,798.00 | 93,344.45 | B |
| 21-15739 | Colorado | NITROCerox, LLC | 2,164.00 | 3,879.41 | 6,043.41 | 6,043.41 | N/A | N/A | 2,164.00 | 3,879.41 | C |
| 21-31784 | Texas / Southern | OFS International, LLC | 71,915.50 | 30,548.09 | 102,463.59 | 102,463.59 | * | * | 71,915.50 | 30,548.09 | C |
| 13-04006 | Tennessee / Middle | O Corp fka Oreck Corporation | 397,249.00 | 174,756.65 | 572,005.65 | 572,005.65 | N/A | N/A | 397,249.00 | 174,756.65 | B |
| 19-17633 | Colorado | PetroShare | 97,637.00 | 60,427.44 | 158,064.44 | 158,064.44 | N/A | N/A | 97,637.00 | 60,427.44 | C |
| 15-35615 | Texas | RAAM Global Energy Corporation | 164,246.10 | 205,651.76 | 369,897.86 | 369,897.86 | N/A | N/A | 164,246.10 | 205,651.76 | B |
| 11-11083 | Delaware | Regen Biologics, Inc. | 50,993.00 | 30,141.72 | 81,134.72 | 81,134.72 | N/A | N/A | 50,993.00 | 30,141.72 | B |
| 15-12406 | Delaware | Restaurants Acquisition I, LLC | 49,199.00 | 40,471.62 | 89,670.62 | 10,000.00 | N/A | N/A | N/A | 10,000.00 | B |
| 18-33513 | Texas / Northern | Rockies Region | 79,323.00 | 51,380.66 | 130,703.66 | 130,686.66 | 44,639.00 | 33,472.77 | N/A | N/A | B |
| 13-37725 | New York | St. Francis Hospital, Poughkeepsie, New York | 264,512.50 | 239,677.80 | 504,190.30 | 504,190.30 | N/A | N/A | 264,512.50 | 239,677.80 | B |
| 13-37725 | New York | St. Francis Hospital, Poughkeepsie, New York | 10,032.00 | 0.00 | 10,032.00 | 10,032.00 | N/A | N/A | 10,000.00 | 0.00 | B |
| 21-11001 | Delaware | Sharity Ministries, Inc. | 191,406.00 | 72,688.34 | 264,094.34 | 264,094.34 | N/A | N/A | 191,406.00 | 72,688.34 | C |
| 21-11001 | Delaware | Sharity Ministries, Inc. | 20,418.00 | 0.00 | 20,418.00 | 20,418.00 | 20,418.00 | 0.00 | N/A | N/A | C |
| 09-29162 | California / Eastern | SK Foods LP | 532,834.00 | 352,460.86 | 885,294.86 | 885,294.86 | N/A | N/A | 532,834.00 | 352,460.86 | B |
| 19-11973 | Delaware | SGR Winddown, Inc. | 144,217.00 | 87,775.37 | 231,992.37 | 231,018.10 | N/A | N/A | 143,242.73 | 87,775.37 | C |
| 19-11973 | Delaware | SGR Winddown, Inc. | 36,284.50 | 0.00 | 36,284.50 | 36,284.50 | 36,284.50 | 0.00 | N/A | N/A | C |
| 09-07047 | Florida / Middle | Taylor, Bean & Whitaker Mortgage Corp. | 3,180,647.50 | 994,761.03 | 4,175,408.53 | 3,990,190.37 | N/A | N/A | 2,995,429.34 | 994,761.03 | B |
| 01-12974 | New York / Southern | Teligent | 114,756.00 | 33,809.94 | 148,565.94 | 148,565.94 | N/A | N/A | 114,756.00 | 33,809.94 | B |
| 21-14170 | Nevada | Tix Corporation | 67,201.00 | 25,308.40 | 92,509.40 | 92,509.40 | N/A | N/A | 67,201.00 | 25,308.40 | C |
| 19-11299 | Delaware | Sportco Holdings, Inc. | 149,241.50 | 115,268.01 | 264,509.51 | 264,513.11 | N/A | N/A | 149,241.50 | 115,268.01 | C |
| 19-11299 | Delaware | Sportco Holdings, Inc. | 59,607.00 | 234.18 | 59,841.18 | 59,841.18 | 59,607.00 | 234.18 | N/A | N/A | C |

Revised Exhibit D to Tinamarie Feil Declaration dated December 8, 2022 [Docket No. 55]

| Case No | District | Case Name [1] | Per BMC Group's Books & Records | | | | | 327 Fees | 327 Exp | 156 Fees | 156 Exp | Exhibit [2] |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | Fees | Expenses | Total Billed | Total Paid | | | | | | |
| 17-32186 | Texas / Southern | Uplift RX LLC | 59,564.50 | 169,631.96 | 229,196.46 | 228,824.71 | | 18,158.00 | 2,444.80 | 41,406.50 | 167,187.16 | B |
| 17-32186 | Texas / Southern | Uplift RX LLC | 2,159.50 | 1,000.00 | 3,159.50 | 3,159.50 | | N/A | N/A | 2,159.50 | 1,000.00 | B |
| 16-03296 | Tennessee / Middle | Vanguard Healthcare, LLC | 188,269.00 | 109,696.28 | 297,965.28 | 297,965.28 | | N/A | N/A | 188,269.00 | 109,696.28 | B |
| 01-01139 | Delaware | WR Grace | 10,051,660.00 | 1,027,482.50 | 11,079,142.50 | 10,201,405.39 | | 9,263,172.09 | 835,934.37 | N/A | N/A | B |
| 20-12599 | Delaware | YogaWorks | 187,358.00 | 64,506.98 | 251,864.98 | 251,864.98 | | N/A | N/A | 187,358.00 | 64,506.98 | C |
| 20-12599 | Delaware | YogaWorks | 28,048.00 | 0.00 | 28,048.00 | 28,048.00 | | 28,048.00 | 0.00 | N/A | N/A | C |
| 15-24585 | New Jersey | Zucker, Goldberg & Ackerman, LLC | 42,317.50 | 102,713.36 | 145,030.86 | 145,030.86 | | N/A | N/A | 42,317.50 | 102,713.36 | B |
| | | **Grand Total** | **21,703,752.58** | **7,375,608.69** | **29,079,361.27** | **27,639,213.72** | | **10,252,923.85** | **1,216,190.48** | **10,348,692.79** | **5,909,679.44** | |

**Footnotes**

**[1]** This schedule includes all cases that were active during the time that the Synchronization Agreement was in effect.  The stated fees and expenses for each case include all amounts incurred from the
date of BMC Group's retention through the termination of the Synchronization Agreement on March 23, 2022.

**[2]** Cross reference to the related Exhibit annexed the *Tinamarie Feil Declaration,* dated December 8, 2022 [Docket No. 55].