Elizabeth B. Vandesteeg
Jack R. O'Connor (*admitted pro hac vice*)
**LEVENFELD PEARLSTEIN, LLC**
2 North LaSalle Street, Suite 1300
Chicago, IL 60602
Telephone: (312) 346-8380
Facsimile: (312) 346-8434

*Counsel for Epiq Corporate Restructuring, LLC*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>MATTER OF CERTAIN CLAIMS AND NOTICING AGENTS' RECEIPT OF FEES IN CONNECTION WITH UNAUTHORIZED ARRANGEMENTS WITH XCLAIM INC. | Misc. Pro. No. 22-00401(MG) |

### EPIQ CORPORATE RESTRUCTURING, LLC'S SUPPLEMENTAL BRIEF OPPOSING SANCTIONS IN RESPONSE TO DECEMBER 7, 2022, ORDER

Epiq Corporate Restructuring, LLC ("*Epiq*"), through counsel, submits this supplemental brief (the "*Brief*") opposing the imposition of sanctions against it in this miscellaneous proceeding (this "*Case*") in response to the Court's December 7, 2022, *Order Granting United States Trustee's Request (I) Directing Claims and Noticing Agents to Provide Additional Disclosures and (II) Fixing Deadlines* (the "*Additional Disclosures Order*"). (Dkt. 49). In support of this Brief, Epiq attaches the previously-submitted *Declaration of Brad Tuttle in Support of Epiq Corporate Restructuring, LLC's Brief Opposing Sanctions in Response to September 30, 2022 Order* (the "*First Epiq Declaration*") and the *Declaration of Brad Tuttle of Epiq Corporate Restructuring, LLC in Response to December 7, 2022, Order Requiring Additional Disclosures* (the "*Second Epiq Declaration*," collectively referred to with the First Epiq Declaration as the "*Epiq Declarations*"), as **Exhibits A** and **B**, respectively. *See* (Dkts. 41, 54). Epiq further incorporates by reference the contents of and attachments to (a) *Epiq Corporate Restructuring, LLC's Notice & Response to*

*August 25, 2022, Order* (the "***Initial Disclosures***"); (Dkt. 12) (b) *Epiq Corporate Restructuring,*
*LLC's Brief Opposing Sanctions in Response to September 30, 2022 Order* (the "***Initial Brief***");
(Dkt. 41) and (c) *Epiq Corporate Restructuring, LLC's Supplemental Notice & Response to August*
*25, 2022, Order* (the "***Supplemental Disclosures***"); (Dkt.48) each as if fully restated here.

## I.   BACKGROUND

1.     Together with its corporate affiliates, Epiq operates as a worldwide provider of
legal and business services, serving law firms, corporations, financial institutions, and government
agencies—helping them streamline the administration of business operations, class action and
mass tort, court reporting, eDiscovery, regulatory, compliance, restructuring, legal transformation,
and bankruptcy matters. Epiq employs leading industry professionals with significant experience
in both the legal and administrative aspects of large, complex chapter 11 cases. Epiq's
professionals have experience in noticing, claims administration, solicitation, balloting, and
facilitating other administrative aspects of complex and large chapter 11 cases.

2.     The procedural history of this Case is set forth in the Second Epiq Declaration. *See*
(Ex. B, 2d Epiq Decl. ¶¶ 4-6). Under the Second Epiq Declaration, Epiq also made additional
disclosures to the Court regarding amounts it has earned as a claims and noticing agent under 28
U.S.C. § 156(c) ("*§ 156(c)*"), fees it has earned as a professional employed to provide
administrative services under 11 U.S.C. § 327, as well as the costs and reimbursements associated

2

with fees under each of these categories,[1] for all cases pending or opened during the term of the Xclaim Agreements.[2] *See generally, id.*

3.        Under the Additional Disclosures Order, Epiq also produced to the Office of the United States Trustee (the "***UST***"), certain communications between itself and Xclaim, and between itself and other third parties regarding disclosure of the Xclaim Agreements in applications to employ Epiq as a bankruptcy estate professional. *See* (Dkt. 49).

4.        The record in this Case establishes that Epiq entered into the Xclaim Agreements in good faith and disclosed the Xclaim Agreements proactively to the Court after being made aware that the Court had raised concerns regarding claims agents' agreements with Xclaim in the *Pareteum* chapter 11 cases,[3] ultimately leading to Epiq's disclosure of the Xclaim Agreements to the Court in *In re Madison Square Boys & Girls Club, Inc.*, Case No. 22-10910 (Bankr. S.D.N.Y.) (the "***Madison Square Case***").

5.        Following Epiq's disclosure of the Xclaim Agreements in the Madison Square Case and a holding by Judge Lane that Epiq's Xclaim Agreements were impermissible under § 156(c) because the agreements called for payment to Epiq by an "unauthorized third party," rather than a debtor's estate,[4] the Court opened this Case, seeking disclosure from Epiq and all other claims

---

[1]    Epiq disputes any argument the UST may raise that the gross amounts disclosed in the Second Epiq Declaration can be used as the basis for applying any "blanket" monetary sanctions against Epiq in this Case. Epiq worked diligently to separately disclose fees it earned under § 156(c) versus those earned under § 327; as well as separately scheduling costs (such as printing and postage) associated with each class of fees from the reimbursable expenses associated with those fees. Epiq also separately scheduled fee and expense amounts based on their chronology relative to the Xclaim Agreements: scheduling amounts earned during the term of the Xclaim Agreements from those earned prior to the term of the Xclaim Agreements.

[2]    Epiq was party to two different agreements with Xclaim, a Prior Agreement (defined in the Initial Brief) dated October 13, 2019, which was later terminated and superseded by an Access Agreement (defined in the Initial Brief), effective June 24, 2022 through September 9, 2022 (the Prior Agreement and Access Agreement referred to collectively as the "***Xclaim Agreements***").

[3]    *In re Pareteum Corporation, et al.*, Case No. 22-10615 (Bankr. S.D.N.Y.).

[4]    *See In re Madison Square Boys & Girls Club, Inc.*, 642 B.R. 487, n. 16 (Bankr. S.D.N.Y. 2022) ("Epiq's receipt of [a fee under the Access Agreement] violates 28 U.S.C. § 156(c) because it is paid by an unauthorized third party"). *See also* (Mad. Sq. Dkts. 86, 143). Epiq notes that Judge Lane's opinion is the subject of a pending appeal,

agents approved to provide claims and noticing services for cases in this Court. Epiq timely complied with each of the Court's Orders in this Case and supplemented its Initial Brief at the Court's direction by filing the Supplemental Disclosures. *See* (Dkt. 48).

6.      Epiq now submits this Brief, to address the assertion by the UST that claims agents should have disclosed their agreements with Xclaim. *See* (Dkt. 28). As set forth in this Brief and its supporting documents, disclosure of the Xclaim Agreements was not required by § 156(c), § 327, or Rule 2014, and Epiq requests that the Court enter an order closing this Case, and that no further sanctions be imposed against Epiq beyond the harm—both financial and reputational—that Epiq has already suffered as a result of these proceedings, and will continue suffering as long as this Case remains open.

## II.    THERE IS NO BASIS FOR IMPOSING SANCTIONS AGAINST EPIQ

7.      As addressed in Epiq's Initial Brief, Epiq has at all times acted in good faith with respect to its dealings with Xclaim and the Court, and has not engaged in conduct giving rise to the imposition of sanctions, regardless of the source of sanction authority. *See* (Dkt. 41). The Initial Brief analyzed whether imposing sanctions under the Court's inherent authority is warranted in this Case, and this Brief addresses whether sanctions are warranted for Epiq's nondisclosure of the Xclaim Agreements as raised by the UST, despite Xclaim's status as a nondebtor, noncreditor, non-party-in-interest in bankruptcy cases who holds no direct financial stake in the outcome of any case where Epiq was employed as an estate professional.

---

*In re: Madison Square Boys & Girls Club, Inc.*, Case No. 1:22-cv-07575-KPF (Sept. 6, 2022), and reserves all of its rights with respect to the resolution of that appeal.

**A. Disclosure of Agreements with Nonparties to Bankruptcy Cases Is Not Required by Rule 2014, § 156(c), or the SDNY Protocol**

8.       Epiq agrees with the notion that transparency and disclosure are hallmarks of the bankruptcy system. In furtherance of these interests, Epiq has cooperated in this Case to create a complete, transparent record of Epiq's dealings with Xclaim. Indeed, Epiq recognizes the significant gravity of these proceedings, which the Court already indicated could result in a sanction equivalent to the "death penalty" for a claims agent—removal from the list of approved claims agents in this District. *See* (Transcript of Nov. 17, 2022 at 37:13-22).

9.       In light of the record in this Case, removal (or even suspension) from this District's list of approved claims agents would be a grossly disproportionate result. Disclosure of the Xclaim Agreements was not required under applicable authority, and the SDNY Protocol does not mandate such a result.

### (1) Rule 2014 Does Not Require Disclosure of Connections to Nonparties in Bankruptcy Cases

10.       Where a claims agent is employed to provide administrative services to bankruptcy estates under Bankruptcy Code § 327 the Bankruptcy Code states that:

> the trustee, with the court's approval, may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title.

11 U.S.C. § 327(a).

11.       A professional seeking employment under Bankruptcy Code § 327 must also comply with Bankruptcy Rule 2014, which requires that an application to employ a § 327 professional be accompanied by:

> a verified statement of the person to be employed setting forth the person's connections with the *debtor*, *creditors*, any *other party in interest*, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee.

Fed. R. Bankr. P. 2014 (emphasis added).

12.     A § 327 professional's connections to these specific classes of parties must be disclosed, and the relevant professional does not have discretion as to whether a connection to a debtor, creditor, or other party in interest rises to the level of disclosure. *See In re American Intern. Refinery, Inc.*, 676 F.3d 455, 465 (5th Cir. 2012); *see also In re Byington*, 454 B.R. 658 (Bankr. W.D. Va. 2011) (reiterating that a proposed § 327 professional must meticulously disclose connections to a *debtor* and other *parties in interest*).

13.     The Court has already made clear in this Case that Xclaim is not a party in interest in bankruptcy cases, a conclusion with which Epiq agrees. *See Memorandum Opinion and Order Striking the Xclaim Submission and Sanctioning the Xclaim Accountholders* (the "***Xclaim Opinion***") (Dkt. 50).

14.     In the Xclaim Opinion, the Court plainly held that Xclaim is "**not a 'party interest' within the meaning of 11 U.S.C. § 1109(b)** . . .." *See* (Dkt. 50 at p. 18) (emphasis added) (citing *Savage & Assocs., P.C. v. K& L Gates LLP (In re Teligent)*, 640 F.3d 53, 60 (2d Cir. 2011)).

15.     Simply put, because Xclaim is not a party in interest, even the heightened disclosure requirements of Rule 2014 did not require that Epiq disclose the Xclaim Agreements.[5] Epiq acted in the good faith belief that it was not required to disclose the Xclaim Agreements, whether it was seeking employment under § 156(c) or under the heightened standards of § 327 and Rule 2014, because Xclaim is not (and was not) a debtor, creditor, or other party in interest in the bankruptcy cases in which Epiq was employed. As a third-party platform for creditors to buy and sell claims

---

[5]     The Court has also made clear in the Madison Square Opinion that the Xclaim Agreements do not constitute connections to a debtor, because the data provided to Xclaim under Xclaim Agreements is not a debtor's property—it is the Clerk's. *See In re Madison Square Boys & Girls Club, Inc.*, 642 B.R. 487, 494 (Bankr. S.D.N.Y. 2022).

in bankruptcy cases, Xclaim has no direct financial stake in the outcome of any chapter 11 case. Rather, Xclaim's financial fate rests on creditors using its platform to sell their bankruptcy claims.

16.     Since Xclaim is not a party in interest, a debtor, or creditor in any bankruptcy proceedings, Epiq was not required to disclose the Xclaim Agreements when seeking employment as an estate professional under § 156(c) or Bankruptcy Code §§ 327 or 1103.

### (2) *The Xclaim Agreements Did Not Affect Epiq's Disinterestedness & Did Not Create Interests Adverse to Any Estate*

17.     Even if the Xclaim Agreements should have been disclosed prior to the Madison Square Case, Epiq's nondisclosure of the Xclaim Agreements did not affect its disinterestedness when seeking employment as an estate professional under Bankruptcy Code §§ 327 or 1103.

18.     Bankruptcy Code § 101(14) defines a "disinterested person," in relevant part as one who:

(A) is not a creditor, an equity security holder, or an insider;

(B) is not and was not, within 2 years before the date of the filing of the petition, a director, officer, or employee of the debtor; and

(C) does not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor, or for any other reason.

11 U.S.C. § 101(14).

19.     The Xclaim Agreements also did not create an interest adverse (much less a materially adverse interest) to any debtor's estate, or of any class of creditors or equity holders in cases where Epiq was employed as an estate professional. Courts have held an "adverse interest" as one that "(1) the possession or assertion of any economic interest that would tend to lessen the value of the bankruptcy estate or create an actual or potential dispute with the estate as a rival

claimant, or (2) a predisposition of bias against the estate." *In re Granite Partners*, L.P., 219 B.R. 22, 33 (Bankr. S.D.N.Y. 1998) (internal citations omitted).

20.     The Xclaim Agreements provided for Epiq to reformat public claims data and transmit it to Xclaim in exchange for a *de minimis* processing fee, paid to it by Xclaim (who is itself compensated by claims traders, not debtors' estates). The Xclaim Agreements did nothing to lessen the value of any debtor's estate. In fact, Epiq understood that this business arrangement would provide a benefit to all creditors in bankruptcy cases—the same as providing free access to websites containing all docket information and other case-related information does, effectively enhancing the value of creditor claims for creditors looking to sell their claims.

21.     Further, the Xclaim Agreements did nothing to bias Epiq against any estate, creditor class, or equity holders. While the processing fee under the Xclaim Agreements was structured as a percentage of each claim traded in cases where Epiq maintained the claims register, effectively rewarding Epiq for cases with greater volumes of claims trading, Epiq did not understand Xclaim's business model to permit Xclaim (or Epiq) to have any direct influence over whether particular creditors sold their claims—other than to make the process easier, more transparent, and more accessible and by advertising its services—only over whether they could obtain a fair market price.

### (3) Disinterestedness Is Not Required by the SDNY Protocol, Local Rules, or § 156(c)

22.     Epiq was similarly not required to disclose the Xclaim Agreements when seeking employment as claims and noticing agent under § 156(c), because § 156(c) and the Court's Local Rules do not incorporate Rule 2014's heightened disclosure requirements and the SDNY Protocol does not mandate that a claims agent be disinterested as a prerequisite to employment in cases in this District.

23.     First, § 156(c) does not require that a claims agent be disinterested, nor do this Court's Local Rules. In fact, with respect to employing a claims and noticing agent, the SDNY Protocol is fairly unique *because* it references disinterestedness, stating that "[c]laims and noticing agents should be a disinterested person as that term is defined in Section 101(14) of the Bankruptcy Code with respect to the matters upon which it is to be engaged." *See* S.D.N.Y. Protocol at 2.

24.     The SDNY Protocol, by its plain terms, sets forth a lower standard than that applicable to a professional employed under § 327, who must be disinterested, stating only that a claims and noticing agent *should* be disinterested with respect to the subject of their engagement. And further, Rule 2014 is not implicated by the SDNY Protocol, Local Rules, or § 156(c). As such, even if the Court found that a claims and noticing agent employed under § 156(c) *must* be disinterested, Epiq has illustrated that it complied with those requirements, as discussed above.

### B.   Epiq's Good Faith Conduct Makes Further Sanctions in This Case Inappropriate & Unnecessary

25.     Epiq's good faith conduct weighs on all aspects of the Court's consideration in this Case, and Epiq reiterates its arguments made in the Initial Brief, that it has at all times acted in good faith with respect to its dealings with Xclaim and has not engaged in any conduct giving rise to the imposition of sanctions. *See* (Dkt. 41). Epiq has no history of noncompliance before this Court, has terminated its relationship with Xclaim, and has cooperated in this Case to provide the information sought by the Court and the UST in a transparent manner.

26.     Additionally, Epiq's nondisclosure of the Xclaim Agreements was not intentional, as discussed in the Epiq Declarations, (Exs. A, B) borne out by the record in this Case, and as shown by Epiq's actual, proactive disclosure of the Xclaim Agreements in the Madison Square

Case. *See In re Crivello*, 134 F.3d 831, 839 (7th Cir. 1998) (courts must consider whether nondisclosure was intentional before imposing sanctions).[6]

27.     Furthermore, the Xclaim Agreements did not burden or otherwise hinder any party in cases where Epiq was employed. To the contrary, by providing Xclaim with reformatted public claims data at no cost to creditors or debtors' estates, creditors benefitted by having greater access to the claims transfer process.

28.     Thus, even if the Court concludes that Epiq was required to disclose the Xclaim Agreements, it must consider Epiq's good faith conduct and belief that the Xclaim Agreements did not require court approval or disclosure, and imposing any sanctions (other than those already suffered by Epiq, discussed below) is both unwarranted by the law, and unnecessary based on the facts.

29.     The fact that the SDNY Protocol is also stated permissively with respect to the consequences of noncompliance with their terms weighs in favor of the Court exercising its discretion to produce a just outcome in this Case. If a claims agent fails to comply with the SDNY Protocol or the provisions of § 156(c), it "may lead to removal . . . from the list of approved agents." As courts have held in the context of deciding whether to exercise their discretion to impose sanctions, courts should consider the reason for the asserted sanctionable conduct and whether sanctions should be imposed for the purpose of deterring future conduct, punishment, or compensation. *See In re Dental Profile, Inc.*, 446 B.R. 885, 903 (Bankr. N.D. Ill. 2011).

---

[6]     Epiq also relied on representations from Xclaim in 2019 that Xclaim had consulted with clerks of court for numerous courts, including the Southern District of New York and the District of Delaware, regarding the creation of Xclaim's platform and intention to enter into business arrangements with claims agents so that it could post claims on its platform, without receiving any objections from the clerks of court to its proposed agreements with Epiq or any other authorized claims agents. *See* (1st Epiq Decl. ¶ 8).

30.     Epiq submits that it has already been sufficiently deterred from engaging in conduct the Court views as impermissible. When Epiq was made aware of the Court's concerns in the *Pareteum* cases, it disclosed the Xclaim Agreements. When the Court made clear in the Madison Square Case that it viewed the Xclaim Agreements as impermissible, Epiq terminated the Access Agreement. *See* (Exs. A, B); (Dkt. 48).

31.     Epiq has heard and responded to the Court's concerns. Imposing further sanctions would be in the nature of a punishment under the Court's inherent authority, requiring a showing that Epiq acted in bad faith—which it has not. *See In re Plumeri*, 434 B.R. 315, 328 (S.D.N.Y. 2010) (inherent authority sanctions require bad faith finding); *U.S. v. Int'l Bhd. of Teamsters*, 948 F.2d 1338, 1345 (2d Cir. 1991) (bad faith is required where court imposes sanctions based on inherent authority); *see also* (Dkt. 41).

32.     Epiq has also been appropriately sanctioned prior to the Court making any final determination of the issues presented in this Case: Epiq has incurred meaningful financial costs to participate in this Case and comply with the Court's orders, is prepared to disgorge the $7,556.43 in fees it received under the Xclaim Agreements; and has suffered reputational harm by these proceedings, which continues every day that this Case remains open. Any further sanctions imposed by the Court under the circumstances would be disproportionate here, particularly any sanction making it more difficult for Epiq or any other claims agent to provide services in this District.

## III.   CONCLUSION

33.     Epiq reiterates to the Court that it takes its role as a claims and noticing agent seriously, and never intended to engage in conduct the Court views as improper. Under the circumstances and based on the full record before the Court, Epiq requests that the Court close this

Case immediately and not impose any further sanctions against it, beyond ordering disgorgement of the $7,556.43 in fees it received under the Xclaim Agreements.

## IV.    RESERVATION OF RIGHTS

34.    Nothing contained in this Brief is intended or should be construed as a waiver of any rights by Epiq under applicable law, an admission of the validity of any claims against Epiq or any of the issues on appeal, an election of remedies, or any other substantive or procedural right, and Epiq reserves all of its rights with respect to the issues presented here and on the appeal of the Madison Square Opinion.

35.    Further, because the Additional Disclosures Order set forth a simultaneous briefing schedule for parties in this Case, to the extent that the Court or any other party in interest makes arguments based on theories or authority not addressed in this Brief, Epiq asserts that it has not been provided with adequate notice of such arguments, and requests the opportunity to respond to them in writing.

36.    Finally, Epiq reserves its rights to amend, supplement, or otherwise modify the exhibits to the Second Epiq Declaration as it may determine necessary in the future.

*Wherefore*, Epiq requests that the Court enter an order in this Case holding that Epiq is not subject to further sanctions, closing this Case, and any other further relief the Court deems appropriate under the circumstances.

Date: January 13, 2023                     **EPIQ CORPORATE RESTRUCTURING, LLC**

                                           By: /s/ Jack O'Connor
                                                 One of Its Attorneys

                                           Elizabeth B. Vandesteeg
                                           Jack R. O'Connor (*admitted pro hac vice*)
                                           2 North LaSalle Street, Suite 1300
                                           Chicago, IL 60602
                                           Telephone: (312) 346-8380
                                           Facsimile: (312) 346-8434
                                           Email: evandesteeg@lplegal.com
                                                   joconnor@lplegal.com

                                           *Counsel for Epiq Corporate Restructuring, LLC*

## CERTIFICATE OF SERVICE

I, Jack O'Connor, the undersigned attorney, hereby certify that on January 13, 2023, I caused *Epiq Corporate Restructuring, LLC's Supplemental Brief Opposing Sanctions in Response to December 7, 2022, Order* to be filed electronically via the Court's CM/ECF system and served upon the parties listed on the Service List below through the CM/ECF system.

/s/ Jack O'Connor_____

## SERVICE LIST

John Douglas Beck on behalf of Interested Party XCLAIM Inc.
john.beck@hoganlovells.com, tracy.southwell@hoganlovells.com;john-beck-8795@ecf.pacerpro.com

William Clareman on behalf of Interested Party Omni Agent Solutions, Inc.
wclareman@paulweiss.com

Isaac Gelbfish on behalf of Interested Party Donlin, Recano & Company, Inc.
isaacgelbfish@gmail.com, ecf.ct.papers@davispolk.com

Richard B. Levin on behalf of Interested Party Stretto
rlevin@jenner.com

Elliot Moskowitz on behalf of Interested Party Donlin, Recano & Company, Inc.
elliot.moskowitz@dpw.com, ecf.ct.papers@davispolk.com

Steven P Ordaz on behalf of Interested Party BMC Group, Inc
sordaz@bmcgroup.com

Kyle J. Ortiz on behalf of Interested Party BMC Group, Inc
kortiz@teamtogut.com,
dperson@teamtogut.com;aoden@teamtogut.com;eblander@teamtogut.com;bkotliar@teamtogut.com;gquist@teamtogut.com;astolp@teamtogut.com;lebrahimi@teamtogut.com

Sara Maresa Posner on behalf of Interested Party XCLAIM Inc.
sara.posner@hoganlovells.com

Robert A. Rich on behalf of Interested Party American Legal Claim Services LLC
rrich2@huntonak.com, candonian@huntonak.com

United States Trustee
USTPRegion02.NYECF@USDOJ.GOV

Ilana Volkov on behalf of Interested Party Logan & Company, Inc.
ivolkov@mcgrailbensinger.com, ivolkov@mcgrailbensinger.com

Annie Wells on behalf of U.S. Trustee United States Trustee
annie.wells@usdoj.gov

# Supplemental Brief
# Exhibit A

# Exhibit A

# *Tuttle Declaration*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: <br><br> MATTER OF CERTAIN CLAIMS AND NOTICING AGENTS' RECEIPT OF FEES IN CONNECTION WITH UNAUTHORIZED ARRANGEMENTS WITH XCLAIM INC. | Misc. Pro. No. 22-00401(MG) |

---

**DECLARATION OF BRAD TUTTLE IN SUPPORT OF EPIQ CORPORATE RESTRUCTURING, LLC'S BRIEF OPPOSING SANCTIONS IN RESPONSE TO SEPTEMBER 30, 2022 ORDER**

---

I, Brad Tuttle, under penalty of perjury, declare as follows:

1.      I am a Senior Managing Director and the General Manager of Epiq Corporate Restructuring, LLC ("**Epiq**") a chapter 11 administrative services firm, whose headquarters are located at 777 3rd Avenue, 12th Floor, New York, New York 10022. Except as noted otherwise, I have personal knowledge of the matters set forth herein or, based on my inquiry of officers and employees of Epiq, believe the facts stated herein to be true and correct. If called and sworn as a witness, I could and would testify competently to the matters set forth in this Declaration.

2.      I make this Declaration in support of *Epiq Corporate Restructuring, LLC's Brief Opposing Sanctions in Response to September 30, 2022 Order* (the "***Epiq Brief***") filed contemporaneously with this Declaration, as Epiq's corporate representative. I also incorporate by reference the contents of the Epiq Response and the Epiq Letter, each as defined in the Epiq Brief, relating to Epiq's relationship with Xclaim.[1]

3.      Epiq takes its role as a claims and noticing agent seriously, and in no way sought to engage in improper conduct in doing business with Xclaim. Epiq recognizes the Court's interest

---

[1]      Capitalized terms not defined in this Declaration bear the meanings given to them in the Epiq Brief.

in managing its own affairs, and has already terminated its Access Agreement (defined below) by mutual agreement with Xclaim, and ceased its business dealings with Xclaim.

### A. Epiq's Business Background

4.    Together with its corporate affiliates, Epiq operates as a worldwide provider of legal and business services, serving law firms, corporations, financial institutions, and government agencies—helping them streamline the administration of business operations, class action and mass tort, court reporting, eDiscovery, regulatory, compliance, restructuring, legal transformation, and bankruptcy matters. Epiq employs leading industry professionals with significant experience in both the legal and administrative aspects of large, complex chapter 11 cases. Epiq's professionals have experience in noticing, claims administration, solicitation, balloting, and facilitating other administrative aspects of complex and large chapter 11 cases.

5.    Epiq is an authorized claims and noticing agent in this Court.[2] *See* https://www.nysb.uscourts.gov/claims-agents. Epiq also provides administrative advisor services to trustees and debtors in possession in chapter 11 cases, as permitted by this Court's *Protocol for the Employment of Claims and Noticing Agents under 28 U.S.C. § 156(c)*.

6.    In its capacity as a claims and noticing agent, Epiq performs all the functions and duties listed in the Court's form *Application For An Order Appointing a Claims and Noticing Agent For The Debtors Pursuant To 28 U.S.C. § 156(c), 11 U.S.C. § 105(a), and S.D.N.Y. LBR 5075-1*.[3] In performing these functions, Epiq creates and maintains the official claims register in each chapter 11 case in which it is employed under § 156(c).

---

[2]    *See* https://www.nysb.uscourts.gov/claims-agents.

[3]    *See* https://www.nysb.uscourts.gov/claims-agent-forms.

**B. Epiq's Business History with Xclaim**

7.      In March of 2019, Xclaim representatives approached Epiq regarding a business arrangement under which Epiq could provide claims data to Xclaim for use on its proposed claims trading platform. Epiq engaged in discussions and negotiations with Xclaim regarding such a relationship while Epiq independently assessed whether to enter into the proposed arrangement.

8.      During negotiations, Xclaim represented to Epiq that it had been in contact with the clerks of court for numerous courts, including the Southern District of New York and the District of Delaware, without receiving any objections from the clerks of court to its proposed agreements with Epiq or any other authorized claims agents. Xclaim also represented that it was in discussions with all of the claims and noticing agents, not solely Epiq, to enter into substantially similar arrangements.

9.      Epiq's business arrangement was documented under the terms of an Exclusive Access Agreement (the "***Prior Agreement***") dated October 13, 2019. The Prior Agreement was later terminated and superseded by an Access Agreement, effective June 24, 2022 (the "***Access Agreement***," referred to collectively with the Prior Agreement as the "***Xclaim Agreements***"). Both Epiq and Xclaim were represented by counsel in their negotiation and documentation of the Xclaim Agreements, jointly representing to each other that "the execution, delivery and performance of this Agreement does not and will not conflict with or result in any violation or breach of Law."

10.      Epiq believes in the value of open, transparent marketplaces where creditors are able to access and understand information regarding claims they hold against debtors in bankruptcy, including the value of those claims and the potential to entertain multiple offers for them.

11.     Epiq's understanding of Xclaim's business, as it was described to Epiq, was to create a more equitable system for claim holders by using electronic data to populate an open website with information that would allow *all* creditors to receive and evaluate bids for their claims. Xclaim's platform would facilitate the execution of claims trades, In the event that a claim was sold using Xclaim's platform, either Xclaim or the claim purchaser would file a notice of transfer of the relevant claim on the docket for that particular case under Bankruptcy Rule 3001(e). Xclaim would not engage in encouraging or discouraging any claim purchase; it would only provide information to creditors and claims purchasers and provide an electronic platform to execute purchases.

12.     Epiq began providing claims register data to Xclaim under the Prior Agreement on or around September 1, 2020, and continued doing so on a daily basis thereafter. At all times, Epiq continued to protect the security of its own systems. Xclaim was never granted access to Epiq's internal systems, and Xclaim had no ability to manipulate or change data in Epiq's systems. All of the information provided to Xclaim was also available to the public.

13.     To maintain the security of its own systems, Epiq set up a separate system for providing Xclaim public claims register data in the format it sought. This system functioned by generating .csv files of current claims register data each evening, which would then be uploaded to a Secure File Transfer Protocol ("**SFTP**") that Xclaim had access to. After files were uploaded to the SFTP, Xclaim could download them and then use that data to update its own claims trading platform.

14.     In the event that a claim was sold using Xclaim's platform, either Xclaim or the claim purchaser would file a notice of transfer of the relevant claim on the docket for that particular

case under Bankruptcy Rule 3001(e). Epiq would review these notices in the ordinary course, the same way it reviews all claims transfer notices.

15.     Under the terms of the Xclaim Agreements, Epiq would earn a processing fee equal to 0.1% of the face value of each claim purchased using Xclaim's platform in cases where Epiq served as claims and noticing agent. In addition to this *de minimis* fee, Epiq understood that this business arrangement would provide a benefit to all creditors in bankruptcy cases—the same as providing free access to websites containing all docket information and other case-related information does.

16.     Despite the processing fee being structured as a percentage of each claim traded in cases where Epiq maintained the claims register, effectively rewarding Epiq for cases with greater volumes of claims trading, Epiq did not understand Xclaim's business model to permit Xclaim to have any direct influence over whether particular creditors sold their claims (except by making the process easier, more transparent, and more accessible and by advertising its services), only over whether they could obtain a fair market price.

17.     Epiq understood the processing fee structure was formulated this way as a reflection of Xclaim's status as a startup that did not have the funding to advance the cost of building the system necessary for Epiq to transfer data to Xclaim. Furthermore, as the recorder of claim purchases, Epiq had no ability to exercise any influence over whether a creditor sold a claim and therefore no basis on which to increase its fee based on its own actions or activities. Epiq never agreed to, discussed, or even contemplated assisting Xclaim in influencing creditors to sell their claims.[4]

---

[4]     While section 3.8 of the Prior Agreement called for Epiq to place a link to Xclaim's site on its bankruptcy case websites to the exclusion of Xclaim's competitors, Epiq never did so, and Xclaim never sought to enforce this provision. In negotiating the Access Agreement, this provision was removed to accurately reflect the parties' intent and actual course of dealing under the Prior Agreement.

18.    While Epiq hoped that its business arrangement with Xclaim would eventually be profitable, Epiq did not anticipate that fees generated in the short term under the Xclaim Agreements would be enough to cover Epiq's costs associated with creating and managing a system to provide information in a format usable by Xclaim. In fact, the $7,556.43 in fees earned by Epiq under the Xclaim Agreements over roughly two years ($2,702.40 of which is attributable to cases that were pending in this District) were not even close to covering these costs.

19.    Epiq negotiated and entered into the Xclaim Agreements with Xclaim in good faith, which Epiq believed was permissible without court approval. In furtherance of this belief, Epiq proactively disclosed its relationship with Xclaim to this Court in the Madison Square Case, in the interest of transparency and in the good faith belief that the arrangement was permissible and simply a matter to be disclosed to the Court.

20.    Once the Court made clear that it was concerned about the propriety of the Xclaim Agreements in the Madison Square Case, Epiq ceased providing data to Xclaim, beginning first by shutting off Xclaim's access to information for the Madison Square Case on August 17, 2022. Epiq then ceased providing data to Xclaim for all cases in the Districts of the Southern District of New York and Delaware on August 25, 2022. Shortly thereafter on August 31, 2022, Epiq ceased providing data to Xclaim for all other jurisdictions. Epiq and Xclaim then mutually agreed to terminate the Access Agreement effective September 9, 2022 by letter agreement executed by both parties. *See* (Dkt. 12, Ex. C).

21.    Epiq never intended to engage in conduct that the Court views as improper, and regrets that this proceeding has taken up the Court's time and resources to understand actions taken by Epiq in the good faith belief that they were permissible. Epiq is committed to abiding by any final rules, orders, or protocols the Court may implement regarding the use of claims register data.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true

and correct to the best of my information, knowledge, and belief.

Date: _November 4, 2022_     _/s/ Brad Tuttle_
                    Brad Tuttle
                    Senior Managing Director and General Manager
                    Epiq Corporate Restructuring, LLC

# Supplemental Brief
# Exhibit B

Elizabeth B. Vandesteeg
Jack R. O'Connor (*admitted pro hac vice*)
**LEVENFELD PEARLSTEIN, LLC**
2 North LaSalle Street, Suite 1300
Chicago, IL 60602
Telephone: (312) 346-8380
Facsimile: (312) 346-8434

*Counsel for Epiq Corporate Restructuring, LLC*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|   |   |
|---|---|
| In re:<br><br>MATTER OF CERTAIN CLAIMS AND NOTICING AGENTS' RECEIPT OF FEES IN CONNECTION WITH UNAUTHORIZED ARRANGEMENTS WITH XCLAIM INC. | Misc. Pro. No. 22-00401(MG) |

**DECLARATION OF BRAD TUTTLE OF EPIQ CORPORATE RESTRUCTURING, LLC IN RESPONSE TO DECEMBER 7, 2022, ORDER REQUIRING ADDITIONAL DISCLOSURES**

I, Brad Tuttle, under penalty of perjury, declare as follows:

1.      I am a Senior Managing Director and the General Manager of Epiq Corporate Restructuring, LLC ("**Epiq**") a chapter 11 administrative services firm, whose headquarters are located at 777 3rd Avenue, 12th Floor, New York, New York 10022.

2.      Except as noted otherwise, I have personal knowledge of the matters set forth herein or, based on my inquiry of officers and employees of Epiq, and in consultation with Epiq's counsel, believe the facts stated herein to be true and correct. If called and sworn as a witness, I could and would testify competently to the matters set forth in this Declaration.

3.      I make this Declaration in response to the *Order Granting United States Trustee's Request (I) Directing Claims and Noticing Agents to Provide Additional Disclosures and (II) Fixing Deadlines* (the "**Scheduling Order**"). I also incorporate by reference the contents of and attachments to (a) *Epiq Corporate Restructuring, LLC's Notice & Response to August 25,*

2022, Order (the "***Epiq Response***"); (Dkt. 12) (b) *Epiq Corporate Restructuring, LLC's Supplemental Notice & Response to August 25, 2022, Order* (the "***Supplement***"); (Dkt. 48) and (c) *Epiq Corporate Restructuring, LLC's Brief Opposing Sanctions in Response to September 30, 2022 Order* (the "***Epiq Brief***") (Dkt. 41) as if fully restated here.

### A. BACKGROUND

4.    Epiq was founded in 1988 as a bankruptcy services company based in Kansas City, Missouri. Since that time, Epiq has grown to become a worldwide provider of legal and business services, serving law firms, corporations, financial institutions and government agencies. Epiq is one of the largest claims and noticing agents in the United States, and has been engaged to provide services to bankruptcy estates in some of the largest complex chapter 11 cases in U.S. history, in cases all across the country.

5.    This miscellaneous proceeding (the "***Case***") was opened on August 25, 2022, following Epiq's proactive disclosure of its business relationship with XClaim Inc. ("***Xclaim***") in the chapter 11 proceedings of *In re Madison Square Boys & Girls Club, Inc.*, Case No 22-10910 (SHL) (the "***Madison Square Case***"). The Court entered an order in this Case on August 25, 2022 (the "***August 25 Order***") directing all Approved Claims Agents (including Epiq) to file a notice on the docket of this Case disclosing information regarding each Approved Claims Agent's business dealings with Xclaim, as well as any other similar business arrangements with third parties. *See* (Dkt. 1).

6.    Epiq timely complied with the August 25 Order, submitting the Epiq Response on September 16, 2022. (Dkt. 12). On November 23, 2022, Epiq filed the Supplement which further disclosed that Epiq did not share any claims information in the Madison Square Case with Xclaim during period the period beginning July 29, 2022 and ending August 17, 2022. *See* (Dkt. 48).

2

7.    At a hearing in this Case held on November 17, 2022, the United States Trustee (the "**UST**") requested that claims agents make additional disclosures. In response to this request, the Court entered the Scheduling Order requiring Responsible Claims Agents (as defined in the Scheduling Order) to make the Additional Disclosures set forth in the Scheduling Order. *See* (Dkt. 49).

**B.  ADDITIONAL DISCLOSURES**

8.    As required by the Scheduling Order, Epiq makes the following Additional Disclosures and responses:

### *(1) Summary of Pending Case Schedule & Accounting of Amounts Received by Epiq*

9.    Attached here as **Schedule A** (the "***Pending Case Schedule***") is a schedule of all cases in which Epiq was employed under 28 U.S.C. § 156(c) or §§ 327 or 1104 of the Bankruptcy Code pending as of October 3, 2019, the effective date of the Prior Agreement[1] between Epiq and Xclaim, including a notation regarding the district in which each case is (or was) pending.

10.    Epiq has been in business for over thirty years, and is one of the largest and most well-established claims and noticing agents in its industry, with a track record of being employed to provide services to bankruptcy estates in some of the largest bankruptcy matters in U.S. history in jurisdictions across the country. As such, Epiq undertook considerable efforts to compile and provide the information sought by the UST under the Scheduling Order. As described below, in some instances historical accounting information is no longer available to Epiq, or cannot otherwise be recreated at a reasonable cost to Epiq, and these amounts are not set forth on the Pending Case Schedule.

---

[1]    Except as noted otherwise in this Declaration, capitalized terms used but not defined in this Declaration bear the meanings given to them in the Epiq Response.

3

11.     The Pending Case Schedule contains an accounting of the fees, costs, and reimbursements received, or approved by the applicable bankruptcy court to be received, by Epiq in connection with its retention under 28 U.S.C. § 156(c), or Bankruptcy Code §§ 327 or 1104 for each case listed.

12.     The amounts reported on the Pending Case Schedule are tracked separately depending on the timeframe during which fees, costs, or reimbursements were received. The first period reported for these cases shows the fees, costs, and reimbursements received prior to Epiq entering into the Prior Agreement (defined in the Epiq Response) with Xclaim in October 2019. The second period reported for these cases shows the fees, costs, and reimbursements received for the time period during which the Xclaim Agreements were in effect, from approximately October 3, 2019 through September 9, 2022.

13.     The Pending Case Schedule separately reflects the categories of Epiq's fees based on the nature of its retention in each case (*i.e.*, fees attributable to § 156(c) services are listed separately from services provided under Bankruptcy Code §§ 327 and 1104). Additionally, Epiq's costs and reimbursable expenses are listed separately according to the category under which they were billed. Costs (which include printing, postage, data storage charges, and other costs) are separately scheduled from reimbursable expenses (which generally include expenses associated with travel, meals, and lodging for matters like attending hearings) on the Pending Case Schedule.[2]

14.     In certain instances, the amounts stated in the Pending Case Schedule are more than the amounts Epiq actually received on account of its services, because Epiq's internal accounting

---

[2]     In the case of *In re Energy Future Holdings Corp.*, Case No. 14-10979 (Bankr. D. Del.), amounts listed as expenses on the Pending Case Schedule are attributable to the cost of providing court-approved eDiscovery services to the estate, tracked as expenses in Epiq's internal accounting system, and approved as expenses of the debtor's estate in that case.

4

system tracks only amounts billed for services provided and expenses incurred, and does not account for amounts that were (a) not allowed by the relevant bankruptcy court; or (b) were unpaid by the relevant estate.

15.     Prior to disclosing the Xclaim Agreements in its application to be retained as claims and noticing agent in the Madison Square Case, Epiq did not disclose the Xclaim Agreements in the cases listed on the Pending Case Schedule.

16.     For cases listed on the Pending Case Schedule in which Epiq received compensation prior to approximately April 2011, the accounting does not capture such amounts, because Epiq lacks the data—and the ability to recreate the data—necessary to produce this information. In 2011, Epiq changed its internal accounting system, switching to a new system. Since making this change over a decade ago, Epiq's former accounting system is no longer available, and Epiq is unable to recreate its internal accounting records to provide itemized lists of fees, costs, and reimbursements received for cases in which Epiq was compensated prior to April 2011. Epiq is therefore substantially burdened by the UST's request for accounting information for amounts Epiq received prior to April 2011.[3] There are 16 such cases listed in the Pending Case Schedule, identified with a double asterisk (**) next to the name of the estate.

17.     Additionally, Epiq notes that effective June 18, 2018, it acquired another claims and noticing agent—Garden City Group ("**GCG**"). Following its acquisition of GCG, fees, costs, and expenses for cases in which GCG was employed under 28 U.S.C. § 156(c) or Bankruptcy Code §§ 327 or 1104 continued to be tracked through GCG's accounting system for cases that were winding down, substantially completed, or otherwise immaterial. Epiq no longer has access

---

[3]    Epiq has notified the UST regarding its challenges in producing accounting information for cases listed on the Pending Case Schedule where it received compensation prior to 2011, and is working to resolve them informally.

to GCG's accounting system, and Epiq is unable to recreate these records to provide itemized lists of fees, costs, and reimbursements received for these cases. Epiq did migrate approximately 5 GCG cases into its own accounting system which are reported on the Pending Case Schedule, identified with an asterisk (*) next to the name of the estate.

18.    Prior to disclosing the Xclaim Agreements in its application to be retained as claims and noticing agent in the Madison Square Case, Epiq did not disclose the Xclaim Agreements in the cases listed on the Pending Case Schedule.

### (2) Summary of Subsequent Case Schedule & Accounting of Amounts Received by Epiq

19.    Attached here as **Schedule B** (the "***Subsequent Case Schedule***") is a schedule of all cases in which Epiq was approved by a bankruptcy court to be retained as a (i) noticing and claims agent pursuant to 28 U.S.C. § 156(c); and/or (ii) consultant, agent, advisor or other professional pursuant to §§ 327 or 1104 of the Bankruptcy Code, from October 3, 2019 through September 9, 2022, when Epiq and Xclaim mutually agreed to terminate the Access Agreement.

20.    The Subsequent Case Schedule contains an accounting of the fees, costs, and reimbursements received, or approved by the applicable bankruptcy court to be received, by Epiq in connection with its retention under 28 U.S.C. § 156(c), or Bankruptcy Code §§ 327 or 1104 for each case listed.

21.    The Subsequent Case Schedule separately reflects the categories of Epiq's fees based on the nature of its retention in each case (*i.e.*, fees attributable to § 156(c) services are listed separately from services provided under Bankruptcy Code §§ 327 and 1104). Additionally, Epiq's costs and reimbursable expenses are listed separately according to the category under which they were billed. Costs (which include printing, postage, data storage charges, and other costs) are separately scheduled from reimbursable expenses (which generally include expenses associated

6

with travel, meals, and lodging for matters like attending hearings) on the Subsequent Case Schedule.

22.     Prior to disclosing the Xclaim Agreements in its application to be retained as claims and noticing agent in the Madison Square Case, Epiq did not disclose the Xclaim Agreements in the cases listed on the Subsequent Case Schedule. Following its disclosure of the Xclaim Agreements in the Madison Square Case, Epiq has disclosed its relationship with Xclaim in its applications to be retained under 28 U.S.C. § 156(c), and/or (ii) consultant, agent, advisor or other professional pursuant to section 327 or 1104 of the Bankruptcy Code.[4]

### (3) Designated Person

23.     I have been designated by Epiq as its Designated Person under the Scheduling Order.

### (4) Email Correspondence

Epiq is conducting a review of its email communications and/or other documentation for communications or documents from or with Xclaim or other third-parties offering a similar service concerning the disclosure of any Synchronization Agreement (as defined in the Scheduling Order) or other similar business arrangement or connection between Xclaim or any other third-party and Epiq, in any application for Epiq to be retained as (i) noticing and claims agent pursuant to 28 U.S.C. § 156(c), and/or (ii) consultant, agent, advisor or other professional pursuant to section 327 or 1104 of the Bankruptcy Code. Epiq will produce any such email correspondence or other

---

[4]     The cases listed on the Subsequent Case Schedule in which Epi has disclosed its relationship with Xclaim in its employment applications are: Pipeline Health System, LLC (Bankr. S.D. Tex.); Compute North Holdings, Inc. (Bankr. S.D. Tex.); Lumileds Holding B.V. (Bankr. S.D.N.Y.); Packable Holdings, LLC f/k/a Entourage Commerce, LLC (Bankr. D. Del.); ExpressJet Airlines LLC (Bankr. D. Del.); Gissing North America LLC (Bankr. E.D. Mich.); and FSPH, Inc. (Bankr. D. Del.).

documents to production to the UST by December 12, 2022, as required under the Scheduling Order.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my information, knowledge, and belief.

Date:   December 8, 2022                /s/  Brad Tuttle
                                       Brad Tuttle
                                       Senior Managing Director and General Manager
                                       Epiq Corporate Restructuring, LLC

## CERTIFICATE OF SERVICE

I, Jack O'Connor, the undersigned attorney, hereby certify that on December 8, 2022, I caused the ***Declaration of Brad Tuttle of Epiq Corporate Restructuring, LLC in Response to December 7, 2022, Order Requiring Additional Disclosures*** to be filed electronically via the Court's CM/ECF system and served upon the parties listed on the Service List below through the CM/ECF system.

/s/ Jack O'Connor

## SERVICE LIST

John Douglas Beck on behalf of Interested Party XCLAIM Inc.
john.beck@hoganlovells.com, tracy.southwell@hoganlovells.com;john-beck-8795@ecf.pacerpro.com

William Clareman on behalf of Interested Party Omni Agent Solutions, Inc.
wclareman@paulweiss.com,
awoolverton@paulweiss.com;tzelinger@paulweiss.com;mmelvin@paulweiss.com

Isaac Gelbfish on behalf of Interested Party Donlin, Recano & Company, Inc.
isaacgelbfish@gmail.com, ecf.ct.papers@davispolk.com

Richard B. Levin on behalf of Interested Party Stretto
rlevin@jenner.com

Elliot Moskowitz on behalf of Interested Party Donlin, Recano & Company, Inc.
elliot.moskowitz@dpw.com, ecf.ct.papers@davispolk.com

Steven P Ordaz on behalf of Interested Party BMC Group, Inc
sordaz@bmcgroup.com

Sara Maresa Posner on behalf of Interested Party XCLAIM Inc.
sara.posner@hoganlovells.com

Robert A. Rich on behalf of Interested Party American Legal Claim Services LLC
rrich2@huntonak.com, candonian@huntonak.com

United States Trustee
USTPRegion02.NYECF@USDOJ.GOV

Elizabeth B. Vandesteeg on behalf of Interested Party Epiq Corporate Restructuring, LLC
evandesteeg@lplegal.com,
nbailey@lplegal.com,ikropiewnicka@lplegal.com,bdroca@lplegal.com

Ilana Volkov on behalf of Interested Party Logan & Company, Inc.
ivolkov@mcgrailbensinger.com, ivolkov@mcgrailbensinger.com

Annie Wells on behalf of U.S. Trustee United States Trustee
annie.wells@usdoj.gov

9

# Schedule A

## *Pending Case Schedule*

## Schedule A

| Estate | Case Number | District | Amounts from Case filing to 10/2019 | | | | Amounts from 10/2019 through 09/2022 | | | | TOTAL |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | 156© Hourly Fees | 327 Hourly Fees | Other Costs | Reimbursable Expenses | 156© Hourly Fees | 327 Hourly Fees | Other Costs | Reimbursable Expenses | |
| 1 Global Capital LLC | 18-19121 | Florida - Southern District | $464,286.72 | | $189,505.36 | $1,598.94 | $1,236,390.44 | | $153,174.96 | $153.05 | $2,044,956.42 |
| Adelphia Communications Corp.** | 02-41729 | New York - Southern District | $289,169.61 | | $427,700.67 | $839.81 | $87,149.50 | | $36,647.14 | | $841,506.73 |
| ADI Liquidation, Inc. (f/k/a AWI Delaware, Inc.) | 14-12092 | Delaware | $789,889.30 | $112,850.63 | $1,037,038.79 | $6,176.56 | $11,140.50 | | $71,406.89 | | $2,028,502.67 |
| ADPT DFW Holdings LLC (Adeptus Health) | 17-31432 | Texas - Northern District | $554,834.15 | | $735,396.01 | $4,429.37 | $54,819.90 | | $252,321.87 | | $1,601,801.30 |
| Advance Watch Company, Ltd. | 15-12690 | New York - Southern District | $116,351.80 | $4,778.80 | $56,138.15 | $1,437.68 | $3,634.80 | | $13,693.05 | | $196,034.28 |
| Aegean Marine Petroleum Network Inc. | 18-13374 | New York - Southern District | $348,225.28 | $92,167.94 | $375,505.84 | $3,716.66 | $82,283.05 | | $20,962.13 | | $922,860.90 |
| Aequitas Enterprise Services, LLC | 16-cv-00438 | Oregon | $144,822.60 | | $19,508.32 | $0.00 | $121,341.95 | | $35,261.50 | | $320,934.37 |
| American Airlines* | 11-15463 | New York - Southern District | | | | | $125,158.25 | | $262,880.48 | $49,771.00 | $388,038.73 |
| American Business Financial Services, Inc.** | 05-10203 | Delaware | $2,203,243.37 | | $261,158.92 | $162.88 | $549,286.70 | | $148,421.37 | | $3,162,273.24 |
| American Business Financial Services, Inc.** | 05-10203 | Delaware | $2,453,955.40 | | $264,320.89 | $10,949.29 | | | | | $2,729,225.58 |
| Arcadia Group (USA) Limited | 19-11650 | New York - Southern District | $30,262.50 | | $16,457.97 | $55.97 | $322.20 | | $46.17 | | $47,144.81 |
| Arcapita Bank B.S.C.* | 12-11076 | New York - Southern District | | | | | $12,510.65 | | $16,840.02 | | $29,350.67 |
| Avadel Specialty Pharmaceuticals LLC | 19-10248 | Delaware | $74,248.23 | $6,955.54 | $14,843.54 | $42.57 | $29,537.20 | $6,248.85 | $5,572.38 | $22.50 | $137,448.31 |
| Billnat Corporation | 17-54357 | Michigan - Eastern District | $102,456.30 | | $21,135.96 | $335.20 | $49.40 | | $92.34 | | $124,069.20 |
| Cambrian Holding Company, Inc. | 19-51200 | Kentucky - Eastern District | $151,864.00 | $32,721.00 | $57,407.13 | $730.49 | $113,708.90 | $9,828.60 | $138,125.46 | $165.00 | $504,385.58 |
| Caribbean Commercial Investment Bank, Ltd | 16-13311 | New York - Southern District | $64,784.60 | $12,152.50 | $13,047.38 | $246.77 | $3,104.60 | | $1,066.82 | | $94,402.67 |
| China Fishery Group Limited (Cayman) | 16-11895 | New York - Southern District | $475,211.10 | $20,824.00 | $297,245.42 | $3,073.07 | $658,076.00 | | $561,012.95 | $108.49 | $2,015,442.54 |
| CM Wind Down Topco Inc. (f/k/a/ Cumulus Media Inc.) | 17-13381 | New York - Southern District | $948,766.98 | $243,924.16 | $820,700.13 | $7,400.96 | $107,022.16 | | $173,044.65 | | $2,300,859.04 |
| Color Spot Holdings, Inc. | 18-11272 | Delaware | $244,639.89 | $22,563.45 | $104,467.97 | $879.48 | $97,946.01 | | $58,000.95 | | $528,497.75 |
| Financial Oversight and Management Board for Puerto Rico | 17-BK3283 | Puerto Rico | $114,722.50 | | $3,401.40 | $0.00 | $178,174.00 | | $18,389.82 | | $314,687.72 |
| Directory Distributing Associates, Inc. | 16-47428 | Missouri - Eastern District | $62,887.50 | | $87,474.15 | $311.57 | $476,712.99 | $153,439.19 | $182,204.40 | $495.89 | $963,029.80 |
| Ditech Holding Corporation | 19-10412 | New York - Southern District | $3,482,124.66 | | $7,965,166.28 | $6,643.76 | $2,569,347.09 | $49,158.00 | $2,387,785.28 | $942.81 | $16,460,225.07 |

\* Former Garden City Group cases

\** Case filed prior to 04/2011

## Schedule A

| Estate | Case Number | District | Amounts from Case filing to 10/2019 | | | | Amounts from 10/2019 through 09/2022 | | | | TOTAL |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | 156© Hourly Fees | 327 Hourly Fees | Other Costs | Reimbursable Expenses | 156© Hourly Fees | 327 Hourly Fees | Other Costs | Reimbursable Expenses | |
| Doral Financial Corporation* | 15-10573 | New York - Southern District | | | | | $35,386.00 | | $6,874.24 | | $42,260.24 |
| Energy Future Holdings Corp. | 14-10979 | Delaware | $15,351,395.36 | $868,487.24 | $32,081,802.41 | $3,538,460.23 | $989,420.37 | | $1,030,860.32 | $20,326.97 | $53,860,425.93 |
| EPIC Companies, LLC | 19-34752 | Texas - Southern District | $135,036.47 | | $24,946.89 | $1,174.91 | $243,182.80 | | $141,169.80 | $3,138.29 | $545,510.87 |
| ERG Intermediate Holdings, LLC | 15-31858 | Texas - Southern District | $153,270.64 | $73,733.40 | $55,858.87 | $6,966.66 | $1,588.00 | | $2,939.20 | | $294,356.77 |
| ESML Holdings Inc. (Essar Steel) | 16-11626 | Delaware | $227,873.51 | $48,992.98 | $139,237.64 | $2,828.95 | $37,600.02 | | $7,544.14 | | $464,077.24 |
| EXCO Resources, Inc. | 18-30155 | Texas - Southern District | | $126,206.91 | | | | $320,360.60 | | | $446,567.51 |
| F+W Media, Inc. | 19-10479 | Delaware | $205,254.45 | | $155,211.89 | $1,090.69 | $3,298.50 | | $2,601.27 | | $367,456.80 |
| FBI Wind Down, Inc. (f/k/a Furniture Brands International, Inc.) | 13-12329 | Delaware | $1,222,559.41 | $122,891.75 | $1,673,028.72 | $18,877.25 | $33,584.80 | | $126,033.83 | | $3,196,975.76 |
| Frank W. Kerr Company | 16-51724 | Michigan - Eastern District | $126,139.70 | | $63,451.51 | $539.76 | $3,956.20 | | $3,102.21 | | $197,189.38 |
| Fred's Inc. | 19-11984 | Delaware | $249,919.00 | | $114,947.48 | $2,704.35 | $550,884.00 | $74,124.20 | $709,112.75 | $1,359.48 | $1,701,691.78 |
| Fresh & Easy, LLC | 15-12220 | Delaware | $725,360.15 | $82,192.13 | $351,746.05 | $5,622.97 | $19,321.37 | $12,891.87 | $13,607.84 | | $1,210,742.38 |
| Friendly's Ice Cream Corporation | 11-13167 | Delaware | $53,605.40 | | $210,814.92 | | $12,769.30 | | $68,319.98 | | $345,509.60 |
| GenOn Energy, Inc. | 17-33695 | Texas - Southern District | $2,143,064.60 | $61,847.50 | $1,420,055.97 | $22,179.84 | $53,876.03 | $13,075.09 | $81,539.12 | $40.00 | $3,795,638.15 |
| Government Development Bank for Puerto Rico | 18-01561 | Puerto Rico | $192,825.90 | | $487,724.57 | $1,063.78 | $1,057.60 | | $32.00 | | $682,703.85 |
| Gramercy Group, Inc. | 19-73622 | New York - Eastern District | $60,198.75 | | $17,479.81 | $109.15 | $72,255.87 | $14,405.70 | $37,354.69 | $1,000.00 | $201,803.97 |
| GSC Group, Inc. (f/k/a Greenwich Street Capital Partners, Inc.)** | 10-14653 | New York - Southern District | $345,540.80 | $30,121.30 | $389,114.77 | $5,301.26 | $3,732.20 | | $5,084.78 | | $778,895.11 |
| GST AutoLeather, Inc. | 17-12100 | Delaware | $247,598.96 | $27,997.97 | $176,056.54 | $10,117.65 | $21,680.00 | | $3,563.20 | | $487,014.32 |
| HDR Holding, Inc. | 19-11396 | Delaware | $62,995.50 | | $27,857.09 | $0.00 | $38,144.60 | $18,803.50 | $3,903.98 | $22.50 | $151,704.67 |
| Herald Media Holdings, Inc. (HMH Media) | 17-12881 | Delaware | $218,260.95 | $37,605.27 | $71,556.49 | $2,976.20 | $4,403.80 | | $3,555.01 | | $338,357.72 |
| Hooper Holmes, Inc. | 18-23302 | New York - Southern District | $296,413.39 | $35,302.18 | $205,897.12 | $2,112.18 | $61,189.49 | | $77,370.20 | | $678,284.56 |
| HVI Cat Canyon, Inc. | 19-12417 | New York - Southern District | $63,262.45 | | $9,367.77 | | $8,835.85 | | $1,122.23 | | $82,588.30 |
| Ignite Restaurant Group, Inc.* | 17-33550 | Texas - Southern District | | | | | $10,831.90 | | $12,250.07 | | $23,081.97 |
| Insys Therapeutic Inc | 19-11292 | Delaware | $573,604.43 | $38,163.60 | $1,127,684.08 | $6,390.94 | $554,193.92 | $101,643.28 | $481,418.13 | $1,269.91 | $2,883,098.38 |
| Inverness Village | 19-11510 | Oklahoma - Northern District | $75,322.80 | | $20,590.49 | $272.05 | $30,525.93 | $5,590.90 | $8,822.54 | $149.15 | $141,124.71 |

\* Former Garden City Group cases

\*\* Case filed prior to 04/2011

## Schedule A

| Estate | Case Number | District | Amounts from Case filing to 10/2019 | | | | Amounts from 10/2019 through 09/2022 | | | | TOTAL |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | 156© Hourly Fees | 327 Hourly Fees | Other Costs | Reimbursable Expenses | 156© Hourly Fees | 327 Hourly Fees | Other Costs | Reimbursable Expenses | |
| Joerns WoundCo Holdings, Inc. | 19-11401 | Delaware | $164,865.65 | $6,345.06 | $82,096.87 | $34,034.66 | $11,218.33 | | $8,114.73 | $55.97 | $306,675.30 |
| Jones Energy Inc | 19-32112 | Texas - Southern District | $349,200.50 | | $301,602.02 | $6,363.93 | $5,556.50 | | $3,889.98 | | $666,612.93 |
| Kona Grill, Inc. | 19-10953 | Delaware | $139,695.53 | | $118,575.75 | $979.81 | $88,598.67 | $15,328.72 | $52,895.98 | $55.97 | $416,074.46 |
| La Paloma Generating Company, LLC | 16-12700 | Delaware | $276,305.45 | $28,403.10 | $175,176.68 | $2,494.01 | $18,474.40 | | $5,883.65 | $45.39 | $506,737.27 |
| LBI Media, Inc. | 18-12655 | Delaware | $387,574.20 | $41,537.56 | $343,648.34 | $3,662.28 | $106,105.95 | $6,519.69 | $47,945.29 | $236.86 | $936,993.31 |
| Lehman Brothers Holdings Inc.** | 08-13555 | New York - Southern District | $28,818,475.05 | $990,357.31 | $10,809,270.92 | $394,552.70 | $2,936,991.39 | | $865,846.58 | $59,291.58 | $44,815,493.95 |
| Lehman Brothers, Inc.** | 08-01420 | New York - Southern District | $12,427,190.05 | $81,021.53 | $8,282,992.11 | $10,419.33 | $2,192,894.60 | $123,195.21 | $3,261,449.47 | $3,174.42 | $26,379,162.30 |
| LMI Legacy Holdings Inc. (f/k/a Landauer Healthcare Holdings, Inc.) | 13-12098 | Delaware | $205,562.26 | $40,245.52 | $290,056.95 | $4,974.99 | $10,574.80 | | $25,223.06 | | $576,637.58 |
| Mattress Firm, Inc. | 18-12241 | Delaware | $396,495.95 | | $685,036.45 | $1,425.32 | $26,951.80 | | $70,984.82 | $45.39 | $1,180,894.34 |
| Maurice Sporting Goods, Inc. | 17-12481 | Delaware | $167,836.62 | $10,441.20 | $341,724.23 | $1,221.43 | $49,117.95 | $738.92 | $34,428.83 | | $605,509.18 |
| MF Global | 11-15059 | New York - Southern District | $10,909,775.82 | | $2,528,804.92 | $27,340.48 | $11,850.10 | | $1,290.40 | | $13,479,061.72 |
| Midway Gold US Inc. | 15-16835 | Colorado | $288,981.40 | | $198,935.92 | $1,993.15 | $1,242.20 | | $49.98 | | $491,202.65 |
| National Bank of Anguilla (Private Banking & Trust) Ltd. | 16-11806 | New York - Southern District | $51,948.10 | $11,650.20 | $19,716.32 | $20.00 | $1,618.90 | | $1,483.74 | | $86,437.26 |
| NextWave Personal Communications, Inc. (a/k/a Personal Communications Devices, LLC) | 13-74303 | New York - Eastern District | $139,502.00 | | $113,860.65 | $1,121.03 | $38,226.30 | | $9,248.39 | | $301,958.37 |
| Nortel Networks Inc.** | 09-10138 | Delaware | $4,535,546.90 | $395.00 | $5,602,660.52 | $27,081.66 | $151,020.79 | | $875,548.87 | | $11,192,253.74 |
| ONE Aviation Corporation | 18-12309 | Delaware | $224,814.24 | $11,640.96 | $127,463.76 | $999.83 | $88,731.72 | $6,452.46 | $33,285.58 | $55.66 | $493,388.55 |
| Orion Healthcorp, Inc. (Constellation Health) | 18-71748 | New York - Eastern District | $569,371.54 | $35,647.65 | $284,102.42 | $5,950.64 | $116,793.81 | | $53,024.03 | | $1,064,890.09 |
| Our Alchemy, LLC | 16-11596 | Delaware | $17,760.50 | | $15,670.39 | $200.31 | $6,693.60 | | $12,097.18 | | $52,421.98 |
| PetroQuest Energy, Inc. | 18-36322 | Texas - Southern District | $355,550.97 | | $385,469.67 | $4,995.21 | $11,884.00 | $133.00 | $68,933.99 | $20.00 | $826,966.84 |
| PG&E Corporation and Pacific Gas and Electric Company Creditors Committee | 19-30088 | California - Northern District | $68,309.61 | $35,486.82 | $21,473.30 | $1,470.33 | $68,686.40 | $6,970.90 | $38,638.06 | $164.75 | $241,035.42 |
| PG&E National Energy Group (National Energy & Gas Transmission)** | 03-30459 | Maryland | $22,867.90 | | $73,000.57 | | $2,511.90 | | $24,844.70 | | $123,225.07 |
| PGHC Holdings, Inc. (Papa Gino's) | 18-12537 | Delaware | $127,509.36 | $15,464.35 | $83,177.52 | $887.31 | $25,098.66 | $1,118.20 | $4,994.41 | $55.97 | $258,249.81 |
| Puerto Rico (ERS/HTA) | | Puerto Rico | | $3,470,597.41 | | | | $5,344,086.10 | | | $8,814,683.51 |
| Puerto Rico Electric Power Authority ("PREPA") T VI | | Puerto Rico | $68,194.30 | | $191,583.54 | $25,531.00 | $16,015.70 | | $126,883.99 | | $428,208.53 |
| Puerto Rico Electric Power Authority ("PREPA") Title III | 17-4780 | Puerto Rico | $450,698.20 | $10,150.04 | $369,204.57 | $23,049.44 | $278,956.50 | | $87,183.37 | | $1,219,242.08 |
| RAIT Funding, LLC | 19-11915 | Delaware | $99,699.50 | | $28,267.58 | $39.45 | $249,862.50 | $23,437.30 | $370,797.69 | $3,478.01 | $772,104.02 |

\* Former Garden City Group cases

\*\* Case filed prior to 04/2011

## Schedule A

| Estate | Case Number | District | Amounts from Case filing to 10/2019 | | | | Amounts from 10/2019 through 09/2022 | | | | TOTAL |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | 156© Hourly Fees | 327 Hourly Fees | Other Costs | Reimbursable Expenses | 156© Hourly Fees | 327 Hourly Fees | Other Costs | Reimbursable Expenses | |
| Regional Care Services Corporation (d/b/a Casa Grande Regional Medical Center) | 14-01383 | Arizona | $187,695.30 | | $80,483.88 | $1,646.49 | $3,778.14 | | $8,158.65 | | $281,762.46 |
| RUI Holding Corp (Restaurants Unlimited) | 19-11509 | Delaware | $73,130.00 | $13,835.60 | $52,757.12 | $436.25 | $119,009.20 | $18,181.92 | $141,802.15 | $79.69 | $419,152.24 |
| Sea Island Company** | 10-21034 | Georgia - Southern District | $453,393.20 | | $286,109.40 | $1,153.79 | $7,794.54 | | $4,611.43 | | $753,062.36 |
| Sienna Biopharmaceuticals, Inc. | 19-12051 | Delaware | $97,386.50 | | $6,607.50 | $118.34 | $112,897.20 | $23,288.50 | $88,898.74 | $87.00 | $329,196.78 |
| SQLC Senior Living Center at Corpus Christie, Inc. d/b/a Mirador | 19-20063 | Texas - Southern District | $187,407.80 | | $92,966.21 | $2,016.95 | $3,046.90 | | $1,269.09 | | $286,706.95 |
| SS Body Armor I, Inc. (f/k/a Point Blank Solutions, Inc.)** | 10-11255 | Delaware | $319,086.03 | | $294,519.15 | $18,123.41 | $75,138.00 | | $41,076.99 | | $747,943.58 |
| St. Vincents Medical Centers** | 10-11963 | New York - Southern District | $5,723,687.41 | | $109,478.38 | $11,179.50 | $572,891.17 | | $3,259.95 | | $6,420,496.41 |
| Stone & Webster Asbestos Trust** | 00-02042 | Delaware | $219,365.11 | | $98,446.34 | $46.40 | $61,592.50 | | $2,060.45 | | $381,510.80 |
| TaxMasters, Inc. and TMIRS Enterprises, Ltd. | 12-32065 | Texas - Southern District | $408,175.00 | | $138,130.25 | $1,687.82 | $27,113.95 | | $3,449.14 | | $578,556.16 |
| The NORDAM Group, Inc. | 18-11699 | Delaware | $268,037.95 | $28,565.85 | $241,186.81 | $691.23 | $290.87 | | $2,310.48 | | $541,083.19 |
| The Weinstein Company | 18-10601 | Delaware | $1,358,881.56 | $178,460.45 | $700,974.19 | $25,016.62 | $586,066.91 | $34,024.72 | $566,724.87 | $56.74 | $3,450,149.32 |
| THG Holdings, LLC | 19-11689 | Delaware | $405,710.45 | | $539,234.56 | $290.05 | $151,487.66 | $15,830.00 | $308,924.06 | $243.58 | $1,421,476.78 |
| TMST, Inc. (f/k/a Thornburg Mortgage, Inc.)** | 09-17787 | Maryland | $319,748.20 | | $129,050.74 | $629.06 | $489,363.00 | | $170,136.48 | | $1,108,927.48 |
| Tops Holding II Corporation | 18-22279 | New York - Southern District | $666,110.37 | $127,627.71 | $727,856.83 | $5,856.84 | $14,771.44 | | $155,720.66 | | $1,697,943.85 |
| Traffic Monsoon Receivership | 2:16-cv-00832 | Utah | $120,199.10 | $26,950.00 | $306,648.82 | $0.00 | $1,164,562.87 | | $1,199,094.67 | | $2,817,455.46 |
| Tribune Media Company (f/k/a Tribune Company)** | 08-13141 | Delaware | $3,103,060.10 | | $4,430,238.83 | $48,397.04 | $188,132.30 | | $898,391.50 | | $8,668,219.77 |
| Trident Holding Company, LLC | 19-10384 | New York - Southern District | $695,548.48 | $132,355.52 | $706,596.51 | $5,751.54 | $281,094.21 | | $253,789.42 | $298.25 | $2,075,135.68 |
| Ultra Petroleum Corp. | 16-32202 | Texas - Southern District | $572,867.97 | | $1,261,034.48 | $30,122.78 | $458,403.90 | | $26,483.44 | | $2,348,912.57 |
| Victory Medical Center Mid-Cities, LP | 15-42373 | Texas - Northern District | $234,686.40 | | $243,307.98 | $3,476.08 | $6,326.00 | | $43,031.54 | | $530,828.00 |
| Weatherly Oil and Gas, LLC | 19-31087 | Texas - Southern District | $357,372.00 | | $158,527.61 | $2,496.35 | $58,296.90 | | $42,192.35 | $55.97 | $618,885.21 |
| WMC Mortgage, LLC | 19-10879 | Delaware | $102,494.25 | $9,582.03 | $68,659.32 | $866.53 | $32,634.74 | $11,965.43 | $10,387.18 | $95.66 | $236,589.48 |
| Woodbridge Group of Companies* | 17-12560 | Delaware | | | | | $332,196.43 | | $171,502.38 | | $503,698.81 |

\* Former Garden City Group cases
\*\* Case filed prior to 04/2011

# Schedule B

## *Subsequent Case Schedule*

## Schedule B

| Estate | Case Number | District | 156c Hourly Fees | 327 Hourly Fees | Other Costs | Reimbursable Expenses | Total |
|---|---|---|---|---|---|---|---|
| Advantage Holdco, Inc. | 20-11259 | Delaware | $363,018.19 | $28,764.45 | $190,203.71 | $83.50 | $582,069.85 |
| Alamo Drafthouse Cinemas Holdings, LLC | 21-10474 | Delaware | $403,363.14 | $45,478.04 | $180,015.56 | | $628,856.74 |
| Aldo Group Inc., The | 20-11060 | Delaware | $55,410.70 | | $127,874.34 | | $183,285.04 |
| Aluminum Shapes | 21-16520 | New Jersey | $232,713.64 | $19,243.80 | $80,434.42 | $100.00 | $332,491.86 |
| American Blue Ribbon Holdings, LLC | 20-10160 | Delaware | $683,298.81 | $40,133.25 | $321,148.21 | $430.57 | $1,045,010.84 |
| American Eagle Delaware Holding Company LLC, et al. | 22-10028 | Delaware | $309,977.51 | $49,737.50 | $281,122.46 | | $640,837.47 |
| Andrade Gutierrez Engenharia S.A. | 22-11425 | New York - Southern District | $44,648.50 | | $2,419.15 | | $47,067.65 |
| Approach Resources Inc. | 19-36444 | Texas - Southern District | $226,917.60 | | $324,407.48 | $482.19 | $551,807.27 |
| Armstrong Flooring, Inc. | 22-10426 | Delaware | $634,863.60 | | $416,239.41 | $830.50 | $1,051,933.51 |
| BC Hospitality Group Inc. | 20-13103 | Delaware | $134,123.04 | $26,825.85 | $58,749.96 | $27.75 | $219,726.60 |
| BHCosmetics Holdings, LLC, et al. | 22-10050 | Delaware | $115,605.00 | $20,830.80 | $30,111.65 | | $166,547.45 |
| BL Restaurants Holding, LLC (a/k/a Bar Louie) | 20-10156 | Delaware | $397,464.14 | $41,640.36 | $651,307.43 | $1,061.63 | $1,091,473.56 |
| Broadvision, Inc. | 20-10701 | Delaware | $86,044.35 | $968.40 | $146,307.12 | | $233,319.87 |
| California Resources Corporation | 20-33568 | Texas - Southern District | $643,035.84 | | $1,362,214.53 | $840.00 | $2,006,090.37 |
| Carbo Ceramics, Inc. | 20-31973 | Texas - Southern District | $360,294.03 | | $258,457.73 | $2,006.16 | $620,757.92 |
| CBL & Associates Properties, Inc. | 20-35226 | Texas - Southern District | $1,611,219.75 | | $2,173,307.87 | | $3,784,527.62 |

| Estate | Case Number | District | 156c Hourly Fees | 327 Hourly Fees | Other Costs | Reimbursable Expenses | Total |
|---|---|---|---|---|---|---|---|
| Chesapeake Energy Corporation | 20-33233 | Texas - Southern District | $3,146,456.26 | | $11,183,282.45 | $3,566.41 | $14,333,305.12 |
| Christian Care Centers, Inc. | 22-80000 | Texas - Northern District | $178,691.00 | | $67,847.58 | | $246,538.58 |
| Compute North Holdings, Inc. | 22-90273 | Texas - Southern District | $58,015.50 | | $9,660.14 | | $67,675.64 |
| Consolidated Wealth Holdings, Inc. | 22-90013 | Texas - Southern District | $197,384.91 | | $68,131.11 | | $265,516.02 |
| Country Fresh Holding Company, Inc. | 21-30574 | Texas - Southern District | $275,915.28 | | $101,749.09 | | $377,664.37 |
| Creative Hairdressers, Inc. | 20-14583 | Maryland | $156,234.31 | | $140,037.50 | | $296,271.81 |
| CX Reinsurance Company Limited | 20-12156 | New York - Southern District | $29,964.42 | | $26,909.97 | | $56,874.39 |
| DBMP LLC | 20-30080 | North Carolina - Western District | $821,038.01 | | $1,592,812.38 | $292.73 | $2,414,143.12 |
| Denbury Resources Inc. | 20-33801 | Texas - Southern District | $297,157.30 | | $1,270,825.03 | | $1,567,982.33 |
| Digicel Group One Limited | 20-11207 | New York - Southern District | $186,425.00 | $40,999.67 | $1,667.44 | $15,400.00 | $244,492.11 |
| Earthfare, Inc. | 20-10256 | Delaware | $367,681.97 | $20,985.66 | $229,234.05 | $242.64 | $618,144.32 |
| Energy Alloys Holdings, LLC | 20-12088 | Delaware | $283,874.76 | $28,652.87 | $194,166.54 | | $506,694.17 |
| Enjoy S.A. | 20-11411 | New York - Southern District | $31,327.00 | | $1,289.39 | | $32,616.39 |
| ExpressJet Airlines LLC | 22-10787 | Delaware | $82,931.40 | | $42,957.54 | | $125,888.94 |
| EYP Group Holdings, Inc. | 22-10367 | Delaware | $383,665.00 | | $472,448.27 | | $856,113.27 |
| Fairport Baptist Homes | 22-20220 | New York - Western District | $91,985.50 | | $15,856.42 | | $107,841.92 |

| Estate | Case Number | District | 156c Hourly Fees | 327 Hourly Fees | Other Costs | Reimbursable Expenses | Total |
|---|---|---|---|---|---|---|---|
| FSPH, Inc. | 22-10575 | Delaware | $39,039.70 | | $18,181.97 | | $57,221.67 |
| FTS International, Inc. | 20-34622 | Texas - Southern District | $212,580.54 | | $202,701.66 | | $415,282.20 |
| Gavilan Resources, LLC | 20-32656 | Texas - Southern District | $146,338.65 | | $88,584.24 | | $234,922.89 |
| GenCanna Global USA, Inc. | 20-50133 | Kentucky - Eastern District | $316,977.93 | | $245,821.97 | $208.11 | $563,008.01 |
| Gissing North America LLC | 22-46160 | Michigan - Eastern District | $167,607.50 | | $71,463.68 | | $239,071.18 |
| Granite City Food & Brewery Ltd | 19-43756 | Minnesota | $107,720.19 | | $217,851.46 | $236.32 | $325,807.97 |
| Grupo Aeromexico, S.A.B. de C.V. | 20-11563 | New York - Southern District | $4,084,317.90 | $147,169.58 | $18,388,334.49 | $17,985.22 | $22,637,807.19 |
| Grupo Famsa, S.A.B. de C.V. | 20-11505 | New York - Southern District | $58,198.50 | | $25,581.87 | | $83,780.37 |
| Gulf Coast Health Care, LLC | 21-11336 | Delaware | $759,128.70 | $58,537.50 | $587,078.39 | | $1,404,744.59 |
| Gulfport Energy Corporation | 20-35562 | Texas - Southern District | $1,387,173.10 | | $1,078,777.65 | | $2,465,950.75 |
| Highpoint Resources Corporation | 21-10565 | Delaware | $261,151.43 | $54,833.78 | $274,800.86 | | $590,786.07 |
| Home Products International, Inc. | 22-06276 | Illinois - Northern District | $86,177.50 | | $51,231.35 | | $137,408.85 |
| Hopedale Mining LLC | 20-12043 | Ohio - Southern District | $277,968.08 | $26,714.40 | $208,504.77 | | $513,187.25 |
| ION Geophysical Corporation | 22-30987 | Texas - Southern District | $425,011.00 | | $748,768.20 | | $1,173,779.20 |
| Jason Industries, Inc. | 20-22766 | New York - Southern District | $203,656.22 | $7,705.00 | $224,987.39 | $120.00 | $436,468.61 |
| LRGHealthcare (a/k/a HGRL) | 20-10892 | New Hampshire | $65,157.01 | | $60,362.29 | | $125,519.30 |
| LTL Management LLC | 21-30589 | New Jersey | $821,700.00 | | $802,198.41 | $132.60 | $1,624,031.01 |

| Estate | Case Number | District | 156c Hourly Fees | 327 Hourly Fees | Other Costs | Reimbursable Expenses | Total |
|---|---|---|---|---|---|---|---|
| Luckin Coffee Inc. | 21-10228 | New York - Southern District | $285,943.70 | | $114,572.19 | | $400,515.89 |
| Lucky Brand Dungarees, LLC | 20-11769 | Delaware | $480,562.69 | $21,788.84 | $577,332.66 | | $1,079,684.19 |
| Lumileds Holding B.V. | 22-11155 | New York - Southern District | $274,519.00 | | $398,470.39 | | $672,989.39 |
| Madison Square Boys & Girls Club, Inc. | 22-10910 | New York - Southern District | $101,621.50 | | $20,904.64 | | $122,526.14 |
| Mercy Hospital and Medical Center | 21-01805 | Illinois - Northern District | $120,333.93 | | $56,871.55 | | $177,205.48 |
| Noble Corporation plc | 20-33826 | Texas - Southern District | $814,287.49 | | $860,284.04 | $1,220.00 | $1,675,791.53 |
| Nordic Aviation Capital Designated Activity Company | 21-33693 | Virginia - Eastern District | $1,834,603.30 | $231,876.00 | | | $2,066,479.30 |
| Nordic Aviation Capital Designated Activity Company | 20-11410 | New York - Southern District | $65,593.80 | | $24,468.52 | | $90,062.32 |
| NPC International, Inc. | 20-33353 | Texas - Southern District | $2,165,046.34 | | $3,610,176.05 | $140.00 | $5,775,362.39 |
| ON Marine Services Company LLC | 20-20007 | Pennsylvania - Western District | $111,908.25 | | $3,990.92 | | $115,899.17 |
| OptiScan Biomedical Corporation | 20-11465 | Delaware | $59,349.60 | | $21,807.66 | | $81,157.26 |
| Packable Holdings, LLC f/k/a Entourage Commerce, LLC | 22-10797 | Delaware | $95,843.00 | | $17,928.21 | | $113,771.21 |
| Paper Source, Inc. | 21-30660 | Virginia - Eastern District | $400,944.37 | $15,802.77 | $130,764.04 | | $547,511.18 |
| Permian Holdco 1, Inc. | 20-11822 | Delaware | $191,875.68 | $36,817.89 | $78,041.17 | | $306,734.74 |

## Schedule B

| Estate | Case Number | District | 156c Hourly Fees | 327 Hourly Fees | Other Costs | Reimbursable Expenses | Total |
|---|---|---|---|---|---|---|---|
| Pier 1 Imports, Inc. | 20-30805 | Virginia - Eastern District | $1,396,719.29 | $35,194.95 | $1,687,436.43 | $7,043.79 | $3,126,394.46 |
| Pioneer Energy Service | 20-31425 | Texas - Southern District | $249,198.17 | | $400,104.72 | $4,000.00 | $653,302.89 |
| Pipeline Health System, LLC | 22-90291 | Texas - Southern District | $83,136.00 | | $8.08 | | $83,144.08 |
| Prysm, Inc. | 20-11924 | Delaware | $55,418.30 | | $43,383.17 | | $98,801.47 |
| Quorum Health Corporation | 20-10766 | Delaware | $732,763.80 | | $3,311,880.44 | $99.48 | $4,044,743.72 |
| Randolph Health | 20-10247 | North Carolina - Middle District | $492,932.61 | $48,371.61 | $1,827,261.19 | | $2,368,565.41 |
| Red Rose, Inc. d/b/a Petersen-Dean | 20-12814 | Nevada | $777,462.74 | | $509,457.50 | $40.00 | $1,286,960.24 |
| RGN-Group Holdings, LLC | 20-11961 | Delaware | $1,298,929.08 | $23,186.48 | $821,411.76 | $40.00 | $2,143,567.32 |
| RM Bakery LLC | 20-11422 | New York - Southern District | $72,375.43 | | $18,679.07 | | $91,054.50 |
| Rochester Drug Cooperative | 20-20230 | New York - Western District | $319,376.42 | $24,684.51 | $343,615.55 | $275.28 | $687,951.76 |
| Rockdale Marcellus Holdings, LLC | 21-22080 | Pennsylvania - Western District | $512,665.80 | $35,809.12 | $136,403.53 | $1,261.26 | $686,139.71 |
| Roman Catholic Diocese of Harrisburg | 20-00599 | Pennsylvania - Middle District | $293,146.70 | | $141,324.48 | $91.05 | $434,562.23 |
| Roman Catholic Diocese of Rockville Centre, New York | 20-12345 | New York - Southern District | $829,584.18 | | $399,845.24 | $847.92 | $1,230,277.34 |
| Rosehill Resources Inc. | 20-33695 | Texas - Southern District | $172,277.84 | | $189,683.03 | | $361,960.87 |
| RTI Holding Company, LLC (Ruby Tuesday) | 20-12456 | Delaware | $863,580.32 | $60,588.72 | $1,016,221.96 | $27.75 | $1,940,418.75 |

| Estate | Case Number | District | 156c Hourly Fees | 327 Hourly Fees | Other Costs | Reimbursable Expenses | Total |
|---|---|---|---|---|---|---|---|
| SAExploration Holdings, Inc. | 20-34306 | Texas - Southern District | $219,849.20 | | $239,787.93 | $609.00 | $460,246.13 |
| Sanchez Energy Corporation Creditors Committee | 19-34508 | Texas - Southern District | $22,888.60 | | $18,375.08 | | $41,263.68 |
| Seisenbacher | 21-20022 | New York - Western District | $89,032.40 | | $10,818.51 | | $99,850.91 |
| Sklar Exploration Company, LLC | 20-12377 | Colorado | $136,915.29 | $81,975.06 | $97,333.87 | $40.00 | $316,264.22 |
| Southern Foods Group, LLC d/b/a Dean Foods | 19-36313 | Texas - Southern District | $2,373,503.13 | | $2,097,190.66 | $4,796.40 | $4,475,490.19 |
| Southland Royalty Company, LLC | 20-10158 | Delaware | $2,303,957.23 | $66,060.11 | $804,541.97 | $6,391.45 | $3,180,950.76 |
| Strike, LLC | 21-90054 | Texas - Southern District | $653,574.20 | | $725,570.62 | | $1,379,144.82 |
| Talen Energy Supply, LLC, et al., Creditors' Commitee | 22-90054 | Texas - Southern District | $15,443.23 | | $11,042.40 | | $26,485.63 |
| Tarrant County Senior Living Center, Inc. d/b/a The Stayton at Museum Way | 19-33756 | Texas - Northern District | $75,780.09 | | $43,633.57 | $1,306.32 | $120,719.98 |
| Techniplas, LLC | 20-11049 | Delaware | $359,230.32 | $30,464.40 | $377,928.52 | $1,152.64 | $768,775.88 |
| The Aliera Companies, Inc. d/b/a Aliera Healthcare, Inc. | 21-11548 | Delaware | $118,281.00 | | $9,944.43 | | $128,225.43 |
| The Collected Group | 21-10663 | Delaware | $156,624.12 | | $82,041.95 | | $238,666.07 |
| The Norwich Roman Catholic Diocesan Corporation | 21-20687 | Connecticut | $267,134.39 | | $369,508.38 | $195.00 | $636,837.77 |

## Schedule B

| Estate | Case Number | District | 156c Hourly Fees | 327 Hourly Fees | Other Costs | Reimbursable Expenses | Total |
|---|---|---|---|---|---|---|---|
| Tilden Marcellus, LLC | 22-20212 | Pennsylvania - Western District | $234,111.80 | | $93,194.63 | | $327,306.43 |
| Tonopah Solar Energy, LLC | 20-11884 | Delaware | $142,135.36 | $3,587.20 | $51,227.18 | | $196,949.74 |
| Town Sports International, LLC | 20-12168 | Delaware | $463,663.60 | $73,774.00 | $3,097,288.87 | $60.00 | $3,634,786.47 |
| Tuesday Morning Corporation | 20-31476 | Texas - Northern District | $882,175.86 | | $1,234,732.50 | $140.00 | $2,117,048.36 |
| Vector Launch, Inc. | 19-12670 | Delaware | $269,257.35 | $21,142.06 | $57,932.10 | | $348,331.51 |
| VJGJ, Inc. (f/k/a Teligent, Inc.) | 21-11332 | Delaware | $346,458.67 | $48,273.54 | $330,535.12 | | $725,267.33 |
| Volunteer Energy Services, Inc. | 22-50804 | Ohio - Southern District | $403,213.63 | $12,709.83 | $802,250.90 | | $1,218,174.36 |
| Walker County Hospital Corporation d/b/a Huntsville Memorial Hospital | 19-36300 | Texas - Southern District | $332,603.31 | | $258,849.07 | $781.69 | $592,234.07 |
| Yueting Jia | 19-24804 | California - Central District | $361,931.31 | | $83,467.06 | $3,360.60 | $448,758.97 |