# AGREEMENT

This Agreement (the "Agreement") is made and entered into by and among (i) William K. Harrington, United States Trustee for Region 2 (the "United States Trustee"), and the Executive Office for United States Trustees (together with the United States Trustee, the "USTP"), and (ii) Stretto, Inc. ("Stretto"). The USTP and Stretto are referred to herein collectively as the "Parties," and each a "Party."

## Recitation

WHEREAS, the Clerk of the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") has approved Stretto to be retained in bankruptcy cases to act as the Clerk's agent for the purpose of assisting with certain administrative tasks pertaining to providing notices to parties and processing proofs of claim;

WHEREAS, the retention of claims agents is governed by 28 U.S.C. § 156(c), the Bankruptcy Court's Local Bankruptcy Rule 5075-1, and the Bankruptcy Court's *Protocol for the Employment of Claims and Noticing Agents Under 28 U.S.C. § 156(c) for the Bankruptcy Court for the Southern District of New York* ("SDNY Protocol");

WHEREAS, on November 23, 2020, Stretto entered into an agreement (the "Exclusive Synchronization Agreement") with Xclaim, Inc. ("Xclaim"), pursuant to which Stretto agreed to provide Xclaim with access to bankruptcy claims data in a certain synchronized format to facilitate claims trading on Xclaim's platform (and not to provide certain data by programmatic or other electronic means to any other party that operates a claims trading platform, unless required by law) in exchange for a commission equal to 10% of the value of every consummated claim traded over Xclaim's platform in those bankruptcy cases where Stretto acted as a court-appointed claims agent pursuant to 28 U.S.C. § 156(c);

WHEREAS, on August 18, 2022, in the chapter 11 case of *In re Madison Square Boys & Girls Club, Inc.*, Case No. 22-10910-SHL, the Bankruptcy Court held that another approved claims agent's exclusive synchronization agreement with Xclaim was inconsistent with the agent's obligations and duties under 28 U.S.C. § 156(c), the SDNY Protocol and the Code of Conduct for Judicial Employees. *In re Madison Square Boys & Girls Club, Inc.*, 642 B.R. 487 (Bankr. S.D.N.Y. 2022), *appeal dismissed*, Case No. 22-CV-07575-KPF (U.S. District Court for the Southern District of New York), Dkt. No. 17;

WHERAS, on August 25, 2022, the Bankruptcy Court commenced the miscellaneous proceeding styled *In re Matter of Claims and Noticing Agents Receipt of Fees in Connection with Unauthorized Arrangements with Xclaim Inc.*, Misc. Pro. No. 22-00401-MG (the "Miscellaneous Proceeding"), wherein the Bankruptcy Court ordered (i) those certain claims agents approved to be retained in bankruptcy cases to act as claims and noticing agents, including Stretto, to file a notice disclosing, *inter alia*, (a) an accounting of any and all fees, costs, and reimbursements received, or due to be received, from Xclaim through the filing of the notice, and (b) a list of all bankruptcy cases in which the approved claims agent served as a court-approved claims and noticing agent and Xclaim facilitated at least one claims trade from which that approved claims agent received or would receive a fee; and (ii) parties in interest, including the United States

Trustee, to file briefs outlining what sanctions, if any, should be imposed on those approved claims agents that were a party to an agreement with Xclaim. *See* Misc. Proc. No. 22-00401-MG, Dkt. Nos. 1 & 19;

WHEREAS, on September 6, 2022, Stretto terminated its Exclusive Synchronization Agreement with Xclaim;

WHEREAS, the USTP alleges that Stretto should have disclosed its Exclusive Synchronization Agreement with Xclaim as a relevant connection in its retention applications or supplemental affidavits filed in those bankruptcy cases (the "Subject Bankruptcy Cases") in which Stretto was employed as a court-approved claims and noticing agent pursuant to 28 U.S.C. § 156(c) and/or other estate professional pursuant to 11 U.S.C. §§ 327 or 1103 from the date on which Stretto entered into the Exclusive Synchronization Agreement, to the date on which Stretto terminated such agreement, and that such disclosure was relevant to evaluating Stretto's disinterestedness in connection with Stretto's employment as claims agent and/or estate professional in the Subject Bankruptcy Cases;

WHEREAS, Stretto acknowledges that while disclosure of its Exclusive Synchronization Agreement with Xclaim would have been a "best practice," whether or not required by Bankruptcy Rule 2014 or the SDNY Protocol, Stretto maintains that disclosure was not required by 28 U.S.C. § 156, the SDNY Protocol, or Bankruptcy Rule 2014 (collectively, the "Rules"), that Stretto did not violate the Rules, and that it is not liable for any nondisclosure of its Exclusive Synchronization Agreement with Xclaim. Stretto maintains that to the extent, if any, that Stretto violated any of the Rules, the violation was in good faith and without any intent to violate any of the Rules;

WHEREAS, the Parties wish to resolve their dispute to avoid cost and expense associated with further litigation related to Xclaim or the Exclusive Synchronization Agreement in the Miscellaneous Proceeding or in any other proceeding in any other jurisdiction, without prejudice to either Party's position in the underlying matter and without any admission of liability, violation, or wrongdoing by Stretto.

NOW, THEREFORE, it is hereby agreed to by and among the Parties:

## Agreement

### Article I – Jurisdiction and Venue

1. The Bankruptcy Court has jurisdiction over the Parties' dispute and authority to approve this Agreement.

### Article II – Settlement Payment

2. The Parties have agreed that Stretto shall make one or more payments in the total aggregate amount of $175,000 (the "Payment"), to those certain debtors selected by Stretto (and identified on the table annexed hereto as <u>Exhibit 1</u>), whose cases are still active and pending in the Bankruptcy Court for the Southern District of New York. The Payment shall be funded and fully disbursed to such debtors within 90 days after the Effective Date (as defined below).

2

### Article III – Release Provisions

3.     Upon the Effective Date, the USTP hereby releases all claims against Stretto related to, in connection with, arising under, or pertaining to Xclaim or the Exclusive Synchronization Agreement, in cases in any jurisdiction where Stretto was employed as a court-approved claims and noticing agent pursuant to 28 U.S.C. § 156(c) and/or other estate professional pursuant to 11 U.S.C. §§ 327 or 1103 and shall refrain from instituting, directing, or maintaining any motion, objection, contested matter, adversary proceeding, or miscellaneous proceeding against Stretto in any jurisdiction, seeking disqualification, disgorgement, or other sanctions, penalties, further disclosures, or action of, by, or against Stretto based on anything relating to Xclaim or the Exclusive Synchronization Agreement.

4.     Upon the Effective Date, Stretto hereby releases all claims against the USTP and all of its current and former employees, including all claims under the Equal Access to Justice Act, 28 U.S.C. § 2412, based on the USTP's participation in the Miscellaneous Proceeding.

5.     This Agreement does not bind or prejudice any rights or claims of any non-party, including the United States, the U.S. Department of Justice (except for the USTP), and/or other governmental agencies; *provided* that Stretto's obligation to pay the Payment hereunder shall be null and void if any governmental entity, including the Bankruptcy Court, seeks in any forum to impose any monetary sanction or penalty in any civil proceeding on Stretto in connection with Xclaim or the Exclusive Synchronization Agreement.

### Article IV – Miscellaneous Provisions

6.     The Parties shall file a joint motion in the Miscellaneous Proceeding, pursuant to 11 U.S.C. §§ 105(a), 327 and 1103, and Rule 2014 of the Federal Rules of Bankruptcy Procedure, seeking Bankruptcy Court approval of this Agreement on notice to all applicable parties in interest, or through such other procedures as may be permitted by the Bankruptcy Court.  The Parties hereto agree to use their reasonable best efforts to achieve approval of this Agreement through such motion or other procedures and obtain the entry of a mutually acceptable Bankruptcy Court order approving this Settlement Agreement (the "Order").

7.     This Settlement Agreement shall become effective and binding on each of the Parties upon execution by the Parties, entry of the Order approving this Agreement without material modification, and entry of an order dismissing Stretto from the Miscellaneous Proceeding with prejudice without further consequences imposed against Stretto by the Bankruptcy Court regarding any past Stretto engagement or agreement with Xclaim (the date such conditions are satisfied, the "Effective Date").

8.     The Bankruptcy Court shall retain exclusive jurisdiction over all matters subject to this Agreement and the Order, including disputes arising under this Agreement or the Order, and over the construction, interpretation, modification, and enforcement of the Agreement and Order, and shall retain exclusive jurisdiction to hear any motions or proceedings related to this Agreement and the Order.

9.     This Agreement and the Order (and their contents) are not and shall not be used as an admission of liability, violation, or wrongdoing by Stretto, or any of its agents, directors, officers, attorneys and employees acting on its behalf, solely with respect to actions taken in the

course or their duties with Stretto, to any person or entity or on any legal or equitable theory. This Agreement is made, and the Order shall be entered, without trial or adjudication or any issue of fact or law as to the claims released in Article III. Nothing in this paragraph reduces Stretto's obligations under this Agreement and the Order or affects the USTP's authority to enforce any rights under the Agreement and Order.

10. This Agreement constitutes the entire agreement between the Parties relating to the subject matter reflected herein and may not be modified except: (i) in writing executed and delivered by the Parties, or (ii) pursuant to mutually acceptable terms incorporated in the Order.

11. This Agreement may be executed by the Parties in one or more counterparts, or via facsimile or electronically scanned signatures, each of which shall be deemed an original, all of which together shall constitute one and the same instrument.

12. The Parties waive any right to seek reconsideration of or to appeal from the Order if the Order is entered as submitted in a form mutually acceptable to the Parties.

13. If either Party determines that this Agreement or Order has been violated, it shall notify the other Party of the violation and allow ten (10) days to cure or otherwise purge the conduct deemed to violate the Agreement or Order before filing any motion or commencing any proceeding to enforce this Agreement or the Order with the Bankruptcy Court, unless more time is agreed to in writing by the Parties.

14. Where any time period in this Agreement is stated in days, the applicable time period shall be calculated pursuant to Federal Rule of Bankruptcy Procedure 9006(a)(1).

**AGREED TO:**

Dated: March ___, 2023    By: _____
Ramona D. Elliott
Deputy Director/General Counsel
Executive Office for United States Trustees

Dated: March ___, 2023    By: */s/ William K. Harrington*
William K. Harrington
United States Trustee, Region 2

Dated: March 24, 2023    By: */s/ Christopher Updike*
Christopher Updike
General Counsel
Stretto, Inc.

# EXHIBIT 1

| Debtor | Case No. | Payment |
|---|---|---|
| ABC Home Furnishings, Inc. | 21-11592 | $10,000.00 |
| Celsius Network Ltd. | 22-10964 | $75,000.00 |
| Voyager Digital Holdings, Inc. | 22-10943 | $90,000.00 |
| **Total** | | **$175,000.00** |