# SETTLEMENT AGREEMENT

This Settlement Agreement (the "Settlement Agreement") is made and entered into by and among (i) William K. Harrington, United States Trustee for Region 2 (the "United States Trustee"), and the Executive Office for United States Trustees (together with the United States Trustee, the "USTP"), and (ii) Epiq Corporate Restructuring, LLC ("Epiq"). The USTP and Epiq are referred to herein collectively as the "Parties," and each a "Party."

## Recitation

WHEREAS, the Clerk of the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") has approved Epiq to be retained in bankruptcy cases to act as a claims and noticing agent for the purpose of assisting with certain administrative tasks pertaining to providing notices to parties and processing proofs of claim;

WHEREAS, the retention of claims agents is governed by 28 U.S.C. § 156(c), the Bankruptcy Court's Local Bankruptcy Rule 5075-1, and the Bankruptcy Court's *Protocol for the Employment of Claims and Noticing Agents Under 28 U.S.C. § 156(c) for the Bankruptcy Court for the Southern District of New York* ("SDNY Protocol");

WHEREAS, Epiq was party to two successive agreements with Xclaim, the first dated October 3, 2019 (the "Exclusive Synchronization Agreement"), which was later amended and superseded by a subsequent agreement with Xclaim dated June 24, 2022 (the "Subsequent Synchronization Agreement," and together with the Exclusive Synchronization Agreement, the "Synchronization Agreements"), pursuant to which Epiq agreed to provide Xclaim with access to bankruptcy claims data[1] in a certain synchronized format to facilitate claims trading on Xclaim's platform in exchange for a commission equal to 0.1% of the face value of each claim traded over Xclaim's platform in those bankruptcy cases where Epiq acted as a court-appointed claims agent pursuant to 28 U.S.C. § 156(c);

WHEREAS, on August 18, 2022, in the chapter 11 case of *In re Madison Square Boys & Girls Club, Inc.*, Case No. 22-10910-SHL, the Bankruptcy Court held that Epiq's entry into the Synchronization Agreements with Xclaim was inconsistent with its obligations and duties under 28 U.S.C. § 156(c), the SDNY Protocol and the Code of Conduct for Judicial Employees. *See In re Madison Square Boys & Girls Club, Inc.*, 642 B.R. 487 (Bankr. S.D.N.Y. 2022), *appeal dismissed*, Case No. 22-CV-07575-KPF (U.S. District Court for the Southern District of New York), Dkt. No. 17;

WHERAS, on August 25, 2022, the Bankruptcy Court commenced the miscellaneous proceeding styled *In re Matter of Claims and Noticing Agents Receipt of Fees in Connection with Unauthorized Arrangements with Xclaim Inc.*, Misc. Pro. No. 22-00401-MG (the "Miscellaneous Proceeding"), wherein the Bankruptcy Court ordered (i) those certain claims agents approved to be retained in bankruptcy cases to act as administrative claims and noticing agents, including Epiq, to file a notice disclosing, *inter alia*, (a) an accounting of any and all fees, costs, and

---

[1] The terms of the Exclusive Synchronization Agreement called for Xclaim being granted exclusive access to this data. The Subsequent Synchronization Agreement was amended specifically to remove this exclusive language.

reimbursements received, or would have, from Xclaim through the filing of the notice, and (b) a list of all bankruptcy cases in which the approved claims agent served as a court-approved claims and noticing agent and Xclaim facilitated at least one claims trade from which that approved claims agent received or would receive a fee; and (ii) parties in interest, including the United States Trustee, to file briefs outlining what sanctions, if any, should be imposed on those approved claims agents that were a party to a synchronization agreement with Xclaim. *See* Misc. Proc. No. 22-00401-MG, Dkt. Nos. 1 & 19;

WHEREAS, on September 9, 2022, Epiq terminated its Subsequent Synchronization Agreement with Xclaim;

WHEREAS, the USTP alleges that Epiq should have disclosed its Synchronization Agreements with Xclaim as a relevant connection in its retention applications or supplemental affidavits filed in those bankruptcy cases (the "Subject Bankruptcy Cases") in which Epiq was employed as a court-approved claims and noticing agent pursuant to 28 U.S.C. § 156(c) and/or other estate professional pursuant to 11 U.S.C. §§ 327 or 1103 from the date on which Epiq entered into the first Exclusive Synchronization Agreement to the date on which Epiq terminated the Subsequent Synchronization Agreement, and that such disclosure was relevant to evaluating Epiq's disinterestedness in connection with Epiq's employment as claims agent and/or estate professional in the Subject Bankruptcy Cases;

WHEREAS, Epiq acknowledges that disclosure of the Synchronization Agreements between Epiq and Xclaim would have been a "best practice," whether or not required by Bankruptcy Rule 2014 or the SDNY Protocol. Epiq alleges and maintains that disclosure was not required by 28 U.S.C. § 156, the SDNY Protocol, or Bankruptcy Rule 2014 (collectively, the "Rules"), that Epiq did not violate the Rules, and that it is not liable for any nondisclosure of its Synchronization Agreements with Xclaim. Epiq maintains that to the extent, if any, Epiq violated any of the Rules, the violation was in good faith and without any intent to violate any of the Rules;

WHEREAS, the Parties wish to resolve their dispute to avoid the cost and expense associated with further litigation related to Xclaim or the Synchronization Agreements in the Miscellaneous Proceeding or in any other proceeding in any other jurisdiction, without prejudice to either Party's position in the underlying matter and without any admission of liability, violation, or wrongdoing by Epiq.

NOW, THEREFORE, it is hereby agreed to by and among the Parties:

### Agreement

### Article I – Jurisdiction and Venue

1.      The Bankruptcy Court has subject matter jurisdiction over the Parties' dispute and this Settlement Agreement pursuant to 28 U.S.C. § 1334. The Miscellaneous Proceeding and proceedings attendant to the Bankruptcy Court's approval of this Settlement Agreement are core proceedings under 28 U.S.C. § 157(b)(2). Venue in the Bankruptcy Court is proper pursuant to

28 U.S.C. § 1409(a).

## Article II – Settlement Payment

2. The Parties have agreed that Epiq shall make a payment in the total aggregate amount of $500,000 (the "Settlement Payment") to the debtors, reorganized debtors, and/or a representative, designee, or successor of the debtors or the debtors' estate, as applicable, in each of the Subject Bankruptcy Cases (collectively, the "Debtors"). On or after the Effective Date (defined below), Epiq will use reasonable efforts to contact the Debtors in writing (with e-mail being sufficient) regarding the Settlement Agreement, the Settlement Payment, and the Order (defined below), and requesting payment information for each Debtor. Debtors shall have 30 days from the entry of the Order to respond to Epiq with payment information. As soon as reasonably practicable after receiving payment information from each Debtor, Epiq will pay each Debtor a *pro rata* portion of the Settlement Payment, and will file a schedule in the Miscellaneous Proceeding (agreed to between the Parties) of the Debtors to receive payments (and their allocated portions) within 30 days of the entry of the Order. The Settlement Payment shall be fully funded, and disbursed by Epiq within 90 days of the Effective Date. To the extent that any portion of the Settlement Payment remains outstanding at the conclusion of the 90 day period Epiq shall make *pro rata* distributions of the remaining Settlement Payment amount to those Debtors that timely provided payment information to Epiq.

## Article III – Release Provisions

3. Upon the Effective Date, the USTP hereby releases all claims against Epiq related to, in connection with, arising under, or pertaining to Xclaim or the Synchronization Agreements, in cases in any jurisdiction where Epiq was employed as a court-approved claims and noticing agent pursuant to 28 U.S.C. § 156(c) and/or other estate professional pursuant to 11 U.S.C. §§ 327 or 1103 and shall refrain from instituting, directing, or maintaining any motion, objection, contested matter, adversary proceeding, or miscellaneous proceeding against Epiq in any jurisdiction, seeking disqualification, disgorgement, or other sanctions, penalties, further disclosures, or action of, by, or against Epiq based on anything relating to Xclaim or the Synchronization Agreements.

4. Upon the Effective Date, Epiq hereby releases all claims against the USTP and all of its current and former employees, including all claims under the Equal Access to Justice Act, 28 U.S.C. § 2412, based on the USTP's participation in the Miscellaneous Proceeding.

5. This Settlement Agreement does not bind or prejudice any rights or claims of any non-party, including the United States, the U.S. Department of Justice (except for the USTP), and/or other governmental agencies; provided that Epiq's obligation to pay the Settlement Payment hereunder shall be null and void if any governmental entity seeks in any forum to impose any monetary sanction or penalty in any civil proceeding on Epiq in connection with Xclaim or the Synchronization Agreements.

## Article IV – Miscellaneous Provisions

6. The Parties agree to submit a joint motion to the Bankruptcy Court, to be filed in the Miscellaneous Proceeding, pursuant to 11 U.S.C. §§ 105(a), 327 and 1103, and Rule 2014 of

3

the Federal Rules of Bankruptcy Procedure, seeking Bankruptcy Court approval of the Settlement Agreement on notice to all applicable parties in interest in the Miscellaneous Proceeding, or through such other procedures as may be permitted by the Bankruptcy Court. The Parties hereto agree to use their reasonable best efforts to seek approval of this Settlement Agreement through such motion or other procedures and obtain the entry of a mutually acceptable order of the Bankruptcy Court approving this Settlement Agreement (the "Order").

7. This Settlement Agreement shall become effective and binding on each of the Parties upon entry of the Order approving its terms without material modification and without imposing sanctions or other consequences against Epiq in the Miscellaneous Proceeding (the "Effective Date").

8. The Bankruptcy Court shall retain exclusive jurisdiction over all matters subject to this Settlement Agreement and the Order, including disputes arising under this Settlement Agreement and the Order, and over the construction, interpretation, modification, and enforcement of the Settlement Agreement and Order, and shall retain exclusive jurisdiction to hear any motions or proceedings related to this Settlement Agreement and the Order.

9. This Settlement Agreement and the Order (and their contents) are not and shall not be used as an admission of liability, violation, or wrongdoing by Epiq, and all of its agents, directors, officers, attorneys and employees acting on its behalf, solely with respect to actions taken in the course or their duties with Epiq, to any person or entity or on any legal or equitable theory.  This Settlement Agreement is made, and the Order shall be entered, without trial or adjudication or any issue of fact or law as to the claims released in Article III.  Nothing in this paragraph reduces Epiq's obligations under this Settlement Agreement and the Order or affects the USTP's authority to enforce any rights under the Settlement Agreement and Order.

10. This Settlement Agreement constitutes the entire agreement between the Parties relating to the subject matter reflected herein and may not be modified except: (i) in writing executed and delivered by the Parties, or (ii) pursuant to mutually acceptable terms incorporated in the Order.

11. This Settlement Agreement may be executed by the Parties in one or more counterparts, or via facsimile or electronically scanned signatures, each of which shall be deemed an original, all of which together shall constitute one and the same instrument.

12. The Parties waive any right to seek reconsideration of or to appeal from the Order if the Order is entered as submitted in a form mutually acceptable to the Parties.

13. If either Party determines that this Settlement Agreement or Order has been violated, it shall notify the other Party of the violation and allow ten (10) days to cure or otherwise purge the conduct deemed to violate the Settlement Agreement or Order before filing any motion or commencing any proceeding to enforce this Settlement Agreement and the Order with the Bankruptcy Court, unless more time is agreed to in writing by the Parties.

14. Where any time period in this Settlement Agreement is stated in days, the applicable time period shall be calculated pursuant to Federal Rule of Bankruptcy Procedure 9006(a)(1).

**AGREED TO:**

| | |
|---|---|
| Dated: April ___, 2023 | By: _____<br>Ramona D. Elliott<br>Deputy Director/General Counsel<br>Executive Office for United States Trustees |
| Dated: April 3, 2023 | By: */s/ William K. Harrington*<br>William K. Harrington<br>United States Trustee, Region 2 |
| Dated: March 24, 2023 | By: */s/ Jason Juranek*<br>Jason Juranek<br>Chief Financial Officer<br>Epiq Corporate Restructuring, LLC |